FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP **3 0** 2016

JAMES W. McCORMACK, CLERK
By:_____
                    DEP CLERK

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS**

CHARLES DADE, NAKITA LEWIS, NIKKI
PETREE, LEE ANDREW ROBERTSON, and
PHILIP AXELROTH, individually and on behalf
of all others similarly situated,

                          Plaintiffs,

v.

CITY OF SHERWOOD, ARKANSAS, PULASKI
COUNTY, ARKANSAS, LARRY JEGLEY in his
official capacity, AND HONORABLE MILAS H.
HALE, III, in his official and individual capacities,

                          Defendants.

Case No. 4:16-cv-00602-JM

**FIRST AMENDED COMPLAINT --
CLASS ACTION**

## INTRODUCTION

1.     A state may not punish an individual just because he or she is poor. This enduring

principle is a bedrock of the Due Process and Equal Protection Clauses of the Constitution of the

United States and Article 2, Section 16, of the Constitution of the State of Arkansas of 1874 (the

"Arkansas Constitution"). These fundamental constitutional rights ensure that an individual, even

if convicted of a crime and sentenced to pay a fine, may not then be re-arrested and sent to jail

simply because of his or her inability to pay. [1]

2.     In recent years, however, these fundamental rights have been slowly and

insidiously eroded. Local courts and municipalities throughout Arkansas have used the threat and

reality of incarceration to trap their poorest citizens in a never-ending spiral of repetitive court

proceedings and ever-increasing debt. Faced with opposition to increased taxes, municipalities

---

[1] The allegations in this First Amended Complaint are made as of the date of the filing of the initial complaint in this
action on August 23, 2016, including facts as they existed on that date relating to each named Plaintiff and to the
Defendants. This First Amended Complaint serves to add, and is for the purpose of adding, Larry Jegley in his
official capacity as a Defendant to this action.

have turned to creating a system of debtors' prisons to fuel the demand for increased public revenue from the pockets of their poorest and most vulnerable citizens.

3.    Nowhere has this been truer than in the small, suburban City of Sherwood ("Sherwood"), located in Pulaski County, Arkansas ("Pulaski County"). There, the local district court has become notorious throughout the community for zealously prosecuting misdemeanor violations of the Arkansas Hot Check law, creating a system used by local officials to criminalize those who do not have enough money to cover bounced checks. Through a labyrinthine—and lucrative—system, a single check for $15 returned for insufficient funds can be leveraged into many thousands of dollars in court costs, fines, and fees owed to Sherwood and Pulaski County. These costs are often borne by the poorest and most disadvantaged citizens in the community, including Plaintiffs and others like them, who find themselves caught in a never-ending cycle of court proceedings they do not understand, arrests they cannot avoid, payments they cannot afford, and, all too often, weeks or months behind bars because they cannot pay for their freedom.

4.    Under an informal agreement entered into in the mid-1970s among the cities within Pulaski County, the City of Sherwood District Court (the "Sherwood District Court") has a virtual monopoly on the prosecution of misdemeanor hot check violations that occur within the county. This local court has been used by Sherwood and Pulaski County to prosecute thousands upon thousands of cases brought against those who are often the local community's most vulnerable citizens. More importantly, the Sherwood District Court, working with Sherwood and Pulaski County law enforcement personnel, has used the threat and reality of arrest and incarceration as a powerful tool to coerce payments by those who are simply unable, through no fault of their own, to pay court costs, fines, and fees.

2

5.      Sherwood relies on the court costs, fines, and fees collected from individuals processed and prosecuted by the Sherwood District Court to fund a substantial portion of Sherwood's and the Sherwood District Court's annual budget. To meet this need, the Sherwood District Court, the local District Court Judge Milas H. Hale, III, and the Pulaski County Prosecutor have built over many years a debt enforcement and collection scheme that results in widespread arrests and jailing, duplicative criminal prosecutions for failure to appear at "review hearings" and/or for late payment of court costs, fines, and fees, and the denial of due process for a steady stream of local citizens. This scheme is effected through proceedings shrouded in secrecy, accomplished by closing the Sherwood District Court courtroom to the public and the media and by requiring defendants to waive their right to counsel before they enter the court to be heard.

6.      Sherwood and the Sherwood District Court Judge, in cooperation with and with the active assistance of Larry Jegley (the "Pulaski County Prosecutor") and Pulaski County (collectively the "Defendants"), imprison citizens who have been sentenced to pay court costs, fines, and fees without making any inquiry into whether they are able to pay and/or notwithstanding their inability to pay. This action challenges these constitutional violations by Sherwood, the Pulaski County Prosecutor, Pulaski County, the Sherwood District Court Judge, and various city and county officials, which have resulted a long-standing and insidious system of charging, arresting, and jailing individuals due to and notwithstanding their poverty.

7.      Defendants are also misusing and misapplying public funds received from taxes paid by Plaintiff Philip Axelroth and other taxpayers in Sherwood by arresting and incarcerating individuals in the Pulaski County Regional Detention Center (the "Pulaski County Jail") who have been sentenced to pay court costs, fines, and fees without Sherwood or the Sherwood

3

District Court Judge making any inquiry into whether those individuals are able to pay and/or notwithstanding their inability to pay. Defendants are also misusing and misapplying public funds received from taxes paid by Mr. Axelroth and others similarly situated by engaging in the further unconstitutional and unlawful conduct set forth in this Complaint. This misuse and misapplication of public funds constitute illegal exactions under the Arkansas Constitution.

8.    This action challenges constitutional violations by Defendants and certain of their officials in effecting and perpetuating this illegal and unjust scheme.

9.    Plaintiffs seek class-wide declaratory, injunctive, and equitable relief, as stated below.

## NATURE OF THE ACTION

10.    It is the policy, practice, and custom of Sherwood and the Pulaski County Prosecutor and/or Pulaski County, acting through various officials, including the Sherwood District Court Judge, acting in both his official capacity and his individual capacity, officers of the Sherwood Police Department, court clerks, and other administrative personnel, to arrest, prosecute, and imprison persons who have been previously sentenced to pay court costs, fines, and fees—but who have not done so because they cannot afford to pay—without making a proper inquiry into whether those persons are able to pay and without considering alternatives to imprisonment, in violation of the U.S. and Arkansas Constitutions.

11.    It is the policy, practice, and custom of Sherwood and the Pulaski County Prosecutor and/or Pulaski County, acting through various officials, including the Sherwood District Court Judge, acting in both his official capacity and his individual capacity, court clerks, and other administrative personnel, to jail indigent persons for failing to pay monetary debts for court costs, fines, and fees that they cannot pay, without informing those persons of their right to

4

counsel, without providing adequate counsel to represent them, and without obtaining a
knowing, intelligent, and voluntary waiver of the right to counsel, in violation of the U.S. and
Arkansas Constitutions.

12.     It is the policy, practice, and custom of Sherwood and the Pulaski County
Prosecutor and/or Pulaski County, acting through various officials, including the Sherwood
District Court Judge, acting in both his official capacity and his individual capacity, court clerks,
and other administrative personnel, to deny the minimum procedural safeguards of due process
before charging, convicting, sentencing, and imprisoning persons who have been previously
sentenced to pay court costs, fines, and fees but who have not done so because they cannot afford
to pay, in violation of the U.S. and Arkansas Constitution. Such safeguards may include, but are
not limited to:  notice that "ability to pay" is a critical issue; providing an adequate opportunity
to be heard on this issue; and requiring the State to meet its burden of proof on this issue.

13.     It is the policy, practice, and custom of Sherwood, acting through various
officials, including the Sherwood District Court Judge, acting in both his official capacity and his
individual capacity, officers of the Sherwood Police, court clerks, and other administrative
personnel, to seek, issue, and execute unlawful arrest warrants, in violation of the Fourteenth
Amendment to the U.S. Constitution, against persons who have been previously sentenced to pay
court costs, fines, and fees—but who have not done so because they cannot afford to pay—
without any inquiry into whether those persons are able to pay.

14.     It is the policy, practice, and custom of Sherwood, acting through various
officials, including the Sherwood District Court Judge, acting in both his official capacity and his
individual capacity, officers of the Sherwood Police Department, court clerks, and other
administrative personnel, to violate the equal protection clause of the Fourteenth Amendment by

5

subjecting persons who have been previously sentenced to pay monetary debts consisting of court costs, fines, and fees—but who have not done so because they cannot afford to pay—to arbitrary and discriminatory treatment compared to those owing monetary debts to a private creditor.

15.     Each of these constitutional violations constitutes an illegal exaction under Article 16, section 13, of the Arkansas Constitution by Sherwood and Pulaski County when public funds are used to accomplish the violation.

## JURISDICTION AND VENUE

16.     This is a civil rights action arising under 42 U.S.C. §§ 1983 and 1988, 28 U.S.C. § 2201 *et seq.*, and the Sixth and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367, including those claims arising under Ark. Code § 16-123-105 and the Arkansas Constitution.

17.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

### i.     Plaintiffs

18.     **Charles Dade** is a 58-year-old black man. He has resided in Pulaski County since 2005. In late 2008 and 2009, Mr. Dade wrote six checks that were returned for insufficient funds, totaling about $360. Over the last seven years, Mr. Dade has been arrested many times by Sherwood as a result of these returned checks; has been ordered by the Sherwood District Court to pay about $4000 in court costs, fines, and fees he could not afford; and has been jailed for well over 100 days. Mr. Dade is currently incarcerated in the Pulaski County Jail because he was unable to pay his monetary debt for court costs, fines, and fees imposed by the Hot Check

Division of the Sherwood District Court. Despite Mr. Dade's inability to pay, he still faces hundreds of dollars in unpaid costs, fines, and fees and the likelihood that he will be incarcerated again in the future.

19.     **Nakita Rochelle Lewis** is a 36-year-old black woman who resides in Pulaski County, Arkansas. Her problems with the Hot Check Division of the Sherwood District Court began in 2006, when she wrote a series of checks that bounced owing to insufficient funds. For this, Ms. Lewis was charged and later convicted for hot check misdemeanors by Judge Hale. Since 2006, Ms. Lewis has been the subject of multiple arrest warrants, has paid or had paid for her hundreds of dollars to cover court costs, fines, and fees she could not afford, and has been jailed by the Sherwood District Court for almost 80 days. Ms. Lewis was recently incarcerated in the Pulaski County Jail because she cannot pay nearly $4,892.80 in court costs, fines, and fees imposed by the Hot Check Division of the Sherwood District Court. Despite Ms. Lewis's inability to pay, she still faces thousands of dollars in unpaid costs, fines, and fees and the likelihood that she will be incarcerated again in the future.

20.     **Nikki Rachelle Petree** is a 40-year-old white woman who resides in White County, Arkansas. In September 2011, Ms. Petree wrote a single check for $28.93 that was returned for insufficient funds. Over the next six years, Ms. Petree was arrested at least seven times as a result of this returned check, paid Sherwood at least $640 she could not afford to pay to cover court costs, fines, and fees, and has been jailed for over 25 days. Ms. Petree is currently incarcerated in the Pulaski County Jail because she was unable to pay $2656.93 in court costs, fines, and fees imposed by the Hot Check Division of the Sherwood District Court. Despite Ms. Petree's inability to pay, she still faces thousands of dollars in unpaid costs, fines, and fees and the likelihood that she will be incarcerated again in the future.

ny-1247322

21.     **Lee Andrew Robertson** is a 44-year-old black man who resides in Pulaski County, Arkansas. His problems with the Hot Check Division of the Sherwood District Court began in late 2009, when he wrote 11 checks over a two-week period to stores near his home for amounts ranging from $5 to $41, and totaling about $200, that were returned for insufficient funds. Since then, Robertson has been arrested seven times as a result of these returned checks, has spent several weeks in jail, and still owes over $2,600 in court costs, fines, and fees. Mr. Robertson was recently jailed in the Pulaski County Jail because he cannot pay his $3,054 debt owed to Sherwood. Despite Mr. Robertson's inability to pay, he still faces thousands of dollars in unpaid costs, fines, and fees and the likelihood that he will be incarcerated again in the future.

22.     Plaintiffs Charles Dade, Nakita Lewis, Nikki Petree, and Lee Andrew Robertson are referred to below as the "Class Plaintiffs."

23.     **Philip Axelroth** is 68 years old and a veteran of the United States Air Force. He has been a full-time resident of Sherwood and Pulaski County since 1990. In every year since 1984, Mr. Axelroth has paid city and county sales taxes on goods that were purchased in Sherwood and Pulaski County. In every year since 1987, Mr. Axelroth has paid property taxes on the private home he owns in Sherwood. As a taxpaying resident of Sherwood and Pulaski County, Mr. Axelroth brings an illegal exaction claim under the Arkansas Constitution for Defendants' misuse and misapplication of taxpayer funds, including by Defendants' engaging in the unlawful conduct described in this Complaint in violation of the U.S. and Arkansas Constitutions. Under Arkansas law, Mr. Axelroth's illegal exaction claim states a class action claim for relief on behalf of all taxpaying residents of Sherwood and Pulaski County.

### ii.    Defendants

24.     **Sherwood** is an incorporated city of the first class, organized under the laws of the State of Arkansas that: (a) funds, operates, and creates policies, practices, and/or customs

8

followed by the Sherwood District Court and its Hot Check Division and the Sherwood Police Department (including paying the salary of Sherwood District Court Judge Hale, the public defender in the Sherwood District Court, and court clerks and other administrative staff); (b) funds and operates Sherwood's hot check department and processing service (including paying the salary of its director and the director's staff); (c) seeks, issues, and executes warrants arising out of hot check convictions and other related criminal proceedings; (d) collects debts from unpaid court costs, fines, and fees arising out of hot check convictions and other related criminal proceedings in the Sherwood District Court; and (e) contributes funds to the Pulaski County Jail, in part, to pay for the incarceration of hot check defendants sent by the Sherwood District Court. Defendant Sherwood is sued herein for declaratory, injunctive, and equitable relief (including costs and attorneys' fees).

25.     **Pulaski County** funds, operates, and oversees the Pulaski County Prosecutors Office, the Pulaski County Jail, and the Pulaski County Sheriff's Department. The Pulaski County Sheriff in his official capacity has custody, rule, and charge of the Pulaski County Jail and all prisoners committed to that facility, including those imprisoned for failure to pay court costs, fines, and fees arising out of hot check convictions and other related criminal proceedings in the Sherwood District Court. Pulaski County also funds the Pulaski County Prosecutors Office.  Defendant Pulaski County is sued herein for declaratory, injunctive, and equitable relief (including costs and attorneys' fees).

26.     **Larry Jegley** is the Prosecuting Attorney for the Sixth Judicial District of the State of Arkansas, which includes Pulaski County. Under his direction and control, the Office of the Prosecuting Attorney for the Sixth Judicial District of the State of Arkansas ("Pulaski County Prosecutors Office") maintains a "General Jurisdiction Crimes Unit" that is responsible for

9

prosecuting and handling hot check cases, and prosecutors from the Pulaski County Prosecutors Office appear in hot check cases in the Sherwood District Court. The Pulaski County Prosecutors Office maintains a dedicated "Hot Check Program" or "Hot Checks Unit," purporting to "serve[] merchants throughout the district in the prosecution and collection of hot checks, forged checks and related matters [and] educate[] merchants on prevention of hot check offenses and on effective prosecution or collection of hot checks." (http://pulaskipa.org/administration/.) Mr. Jegley is sued herein as a Defendant in his official capacity for declaratory and injunctive relief.

27.     **Judge Milas H. Hale, III**, is and has been the local District Court Judge presiding in Sherwood District Court since he was first elected to that position almost 20 years ago.  He is sued herein as a Defendant in his official capacity as an employee of Sherwood and in his individual capacity for declaratory relief only.

## FACTUAL BACKGROUND[2]

**Defendants' Unconstitutional Policies, Practices, and Customs**

**i.      Policy, Practice, and Custom of Closing Criminal Proceedings in the Sherwood District Court to the Public**

28.     Defendants Sherwood and the Pulaski County Prosecutor and/or Pulaski County maintain a policy, practice, and custom of systematically closing proceedings occurring in the Sherwood District Court to the public, thereby creating an atmosphere of confusion and intimidation. Defendant Judge Hale, acting in both his official capacity and his individual capacity, court clerks, and other administrative personnel set, further, and facilitate these policies, practices, and customs.

29.     The Sherwood District Court holds "Hot Check Court" every Thursday. Starting before 7 a.m., individuals form a line that winds through the hallway of the small courthouse,

---

[2] Plaintiffs base the allegations in this Complaint on personal knowledge for matters in which they have had personal involvement, on investigation by their counsel, and on information and belief as to all other matters.

waiting to enter the sole courtroom. Some of these individuals face new "hot check" misdemeanor charges, while others appear for "review hearings," which are hearings in which the Sherwood District Court monitors their progress in making payments on court costs, fines, and fees previously imposed by the Court.

30.     Prior to opening the courtroom, the court bailiffs announce to the individuals in line that the courtroom is not open to the public and that only a hot check defendant and his or her counsel, if any, may enter the courtroom. If they request to enter, family members and friends of individuals appearing for hot check proceedings and other members of the general public are told specifically that they are not allowed to enter the courtroom.

31.     The Sherwood District Court holds no hearing on the closure of the criminal proceedings to the public and does not consider the effect of the closure on a defendant's right to a public trial as required by the United States Constitution. No recordings of the proceedings are prepared and no transcript is made available to the public. Court clerks do not even post a list of the individuals who are appearing that day in court. The secrecy shrouding proceedings in Sherwood District Court also ensures that violations of hot check defendants' constitutional rights, as alleged in this complaint, go unchecked and unchallenged.

32.     As a result of these practices, members of the public, including family members and friends of individuals appearing in the Sherwood District Court on hot check and other criminal charges, are excluded from the courtroom and these proceedings occur in secret. This policy, pattern, and custom of secret court proceedings violates the rights of both hot check defendants and the public and facilitates the other unconstitutional conduct alleged in this Complaint. Closed court proceedings in which most hot check defendants are forced to appear alone and without counsel create an atmosphere of intimidation and desperation. Because the

11

only persons allowed in the courtroom are the judge, court clerks, prosecutors, court bailiffs, a

probation officer, and a public defense attorney who does not actually represent the hot check

defendants, the hot check defendants do not have a single advocate to whom to turn to

understand and assert their rights.

### ii. Policy, Practice, and Custom of Obtaining Invalid Waivers of Counsel and Otherwise Violating the Right to Counsel

33.     Defendant Sherwood maintains a policy, practice, and custom of jailing indigent

hot check defendants—such as Mr. Dade, Ms. Lewis, Ms. Petree, and Mr. Robertson—following

proceedings at which these hot check defendants did not have the benefit of counsel and did not

knowingly, intelligently, and voluntarily waive the right to representation by counsel. Defendant

Judge Hale, acting in both his official capacity and his individual capacity, court clerks, and

other administrative personnel set, further, and facilitate these policies, practices, and customs.

34.     While hot check defendants wait in line to enter into the Sherwood District Court

courtroom, they are presented with a "Waiver of Counsel" form and a form requiring them to fill

out their personal information. Such hot check defendants are told that they must fill out these

forms in order to be allowed into the courtroom. Although the "Waiver of Counsel" form refers

only to hot check charges, court officials will often proceed as if anyone who fills out the form

has waived his or her right to counsel for all purposes, even if the person is appearing on other

types of charges or for other purposes.

35.     Such hot check defendants are not, at any time, by any person, adequately

informed of their right to counsel or of the significance of signing the waiver form. Sherwood

District Court personnel do not inform hot check defendants of the benefits of counsel, do not

inquire into a hot check defendant's indigency for purposes of eliciting the need for public

defender, and do not routinely elicit any on-the-record waivers of counsel. Sherwood District

12

Court personnel do not adequately inform indigent hot check defendants and other indigent defendants of their right to counsel and do not otherwise obtain knowing, intelligent, and voluntary waivers of counsel from hot check defendants prior to proceedings in Sherwood District Court.

36.    As a result, indigent hot check defendants, such as Plaintiffs, regularly face prosecution, plead guilty, and are sentenced to jail, suspended jail terms, probation, and fines, without the benefit of counsel. Whether such prosecutions, pleas, and sentencings occur under the Arkansas hot check statute, the Arkansas fine collection statute, the Arkansas criminal contempt statute, the Arkansas failure to appear statute, or otherwise, many of the proceedings in the Sherwood District Court take place without the assistance of counsel and without a knowing, intelligent, and voluntary waiver of the right to counsel.

37.    The Pulaski County Public Defender's Office does not represent criminal defendants in the Sherwood District Court. Instead, Sherwood contracts with a private attorney to provide defense services to indigent defendants charged with crimes in Sherwood District Court ("Sherwood's Public Defender"). Due, in part, to policies, practices and customs described above of obtaining invalid waivers of counsel, however, Sherwood's Public Defender actually appears for few, if any, of the defendants in Sherwood District Court in connection with hot check and other non-felony charges.

38.    Sherwood's Public Defender rarely speaks with defendants and makes no effort to inform defendants of the benefits of her legal counsel or the consequences of waiving their right to counsel. As a result, the vast majority of defendants, including indigent defendants, charged with crimes in the Sherwood District Court are not represented by counsel during any of their court proceedings.

13

39.     Lack of legal representation creates confusion and disillusion among defendants in the Sherwood District Court and, in part, allows Defendants to perpetuate their illegal collection scheme without legal challenge or scrutiny. Many defendants have no idea how much money they owe to the Sherwood District Court or that their inability to pay court-imposed costs, fines, and fees may be a relevant issue in their case.

### iii.     The Nature of Proceedings in the Hot Check Division of the Sherwood District Court

40.     The Sherwood District Court holds several different types of hearings in connection with proceedings in its Hot Check Division, including a "jail docket" (held via videoconference), in-person arraignments and plea proceedings, misdemeanor trials, probation review hearings, and post-conviction "review hearings." Post-conviction review hearings are used, *inter alia*, by the Sherwood District Court to monitor the compliance by a hot check defendant previously convicted of a hot check violation and sentenced to pay a fine, pay restitution, and/or comply with probation.

41.     In many instances, the Sherwood District Court performs arraignments and enters guilty pleas of individuals on the same day. The jail docket consists of individuals who appear (a) in person because they had been arrested the previous night and held in Sherwood's short-term holding cells, and (b) by videoconference from the Pulaski County Jail for those held there in connection with hot check and other related warrants and/or orders issued by the Sherwood District Court. These individuals are routinely not represented by counsel.

42.     If an individual on the jail docket pleads guilty, the Sherwood District Court often sentences the person to pay a specified amount of court costs, fines, and fees and directs the person to begin making monthly payments.

14

43.    Proceedings in the Hot Check Division of the Sherwood District Court are perfunctory and operate like an assembly line. A typical hearing lasts less than one or two minutes.  As individual hot check defendants are allowed into the courtroom a few at a time, they are directed by court bailiffs either to form a line along a wall, or, if they have been previously assigned to probation, to line up before a probation officer. The Court Clerk and other administrative staff take care of the administrative functions of the court. As each hot check defendant in line gets to the front of the courtroom, the hot check defendant tells the court clerk his or her name, and the clerk then pulls that person's paperwork from a file and hands it to Judge Hale. Such hot check defendants routinely stand alone and uncounseled immediately in front of the Judge's bench when their case is called.

44.    The Pulaski County Assistant Prosecutors are present for all proceedings but rarely, if ever, participate or speak in open court. Sherwood's Public Defender is present for all proceedings but rarely, if ever, speaks with hot check defendants, enters an appearance on the record, or speaks during the hearings.

### iv.    Initial Assessment of Court Costs, Fines, and Fees

45.    Individuals appearing on original hot check charges are routinely convicted of the charges in hearings devoid of due process protections. Defendant Judge Hale presents a hot check defendant with a copy of the allegedly fraudulent check and asks the individual if he or she wrote the check. If the individual admits to writing the check, Defendant Judge Hale records that the hot check defendant pled guilty to the charge. If a hot check defendant attempts to deny that he or she wrote the alleged hot check, Judge Hale will often compare the hot check defendant's signature on the "Waiver of Counsel" form, which the hot check defendant had signed to enter the courtroom, to the hot check defendant's signature on the underlying, returned

15

check. If the signatures appear similar, Defendant Judge Hale presents this to the hot check defendant and attempts to elicit an admission of guilt based on this evidence.

46.     Defendant Judge Hale often does not afford hot check defendants any meaningful opportunity to be heard on their charges and routinely fails to notify hot check defendants of their right to plead not guilty, the privilege against self-incrimination, the right to a trial, the right to present evidence in their defense, and their right to appeal their conviction to the Pulaski County Circuit Court for a trial *de novo*.

47.     Upon entering a conviction for a hot check misdemeanor, Judge Hale typically sentences the individual to probation and to pay the following amounts:  restitution in at least the amount of the unpaid check, a $165 fine, $100 in court costs, a $25 Prosecuting Attorney Hot Check Fee, a $30 Restitution Fee, a $50 Warrant Fee, a $20 City Jail Fee, and a $20 County Jail Fee. Thus the court costs, fines, and fees associated with a hot check conviction, regardless of the amount of the unpaid check, exceed $400.

48.     Payment of court costs, fines, and fees is due immediately upon conviction, but if the person cannot afford to pay these large sums on the spot—as is the case for many hot check defendants—he or she is directed to the Hot Check Division clerks to be put on a payment plan. Payment plans are imposed by the Sherwood District Court arbitrarily and court personnel fail to make an adequate inquiry into the person's income, assets, other financial obligations, or other considerations relevant to the person's ability to pay.

49.     In addition, any hot check defendant who does not immediately pay the full amount of any imposed court costs, fines, and fees immediately is scheduled for a "review hearing" one to three months in the future. The Sherwood District Court uses "review hearings" as a tool to ensure that hot check defendants are making payments according to the court-

imposed payment plans and to threaten jail to coerce payment from any of these hot check defendants who fall behind on their payment plan.

50.     In assessing the amount of any court costs, fines, and fees, the Sherwood District Court makes no inquiry into a hot check defendant's ability to pay the total amounts ordered by the court or to pay the periodic amounts set under a payment plan. As a matter of policy, practice, and custom, the Sherwood District Court also does not inform hot check defendants that, if they are unable to pay, there may be alternatives to payment, such as performing community service and/or attending educational classes.

### v.     Illegal Collections Scheme

51.     Over 20 years ago, Arkansas enacted a fines collection law intended to set out the procedures to be followed for collecting fines imposed by courts, codified at Arkansas Code Annotated, Title 16, Subtitle 2, Chapter 13, Subchapter 7: "[t]he procedures established by this subchapter shall apply to the assessment and collection of all monetary fines, however, designated, imposed by . . . district courts for criminal convictions . . . ." Those procedures specifically require a court to take into account a defendant's ability to pay when imposing fines in the first instance and when addressing a defendant's failure to make payments previously ordered by the court.

52.     Defendants, however, do not follow these procedures when seeking to enforce court costs, fines, and fees imposed by the Hot Check Division of the Sherwood District Court. Instead Sherwood, the Sherwood District Court, and Judge Hale, working with the Pulaski County Prosecutors Office, have put in place a collection scheme that is designed to maximize the amount of court costs, fines, and fees imposed on individuals and that uses the threat and reality of incarceration to coerce individuals to pay these amounts, notwithstanding the inability to do so.

17

53.     Following a hot check conviction, Defendants treat each review hearing based on this prior conviction as an opportunity to open a new, separate, stand-alone criminal case, thereby purportedly authorizing the court to impose new and duplicative court costs, fines, and fees on the same hot check defendant. Specifically, Defendants maintain a policy, practice, and custom of seeking, issuing, and executing new, separate post-conviction arrest warrants whenever a defendant fails to make a payment of court costs, fines, and fees or fails to appear at a review hearing. Defendants treat each of these new arrest warrants as a separate "charging document" associated with a new, stand-alone criminal matter under a separate case number, with a whole new set of associated court costs, fines, and fees. These warrants often bear the signature of the clerk of court and are not supported by oath or affirmation that would establish probable cause for a crime. The Sherwood District Court also assesses over $300 in new and additional fees and costs on a hot check defendant with each new warrant of arrest.

54.     Thus, if an individual fails to appear at a "review hearing," the Sherwood District Court will issue an arrest warrant and the Court's records will reflect a new, separately numbered criminal prosecution for "Failure to Appear."   Similarly, if an individual misses a period payment under a payment plan, the Sherwood District Court will issue an arrest warrant and the Court's records will reflect a new, separately numbered criminal prosecution for "Failure to Pay–Contempt of Court."  By treating each of these proceedings as a new criminal proceeding, the Sherwood District Court can circumvent the limits on court costs, fines, and fees that can be imposed on a single hot check conviction.

55.     Hot check defendants before the Sherwood District Court, however, are afforded little to no due process for these new "prosecutions."  The previously convicted and sentenced hot check defendants are often not notified that they now face a new, separate criminal charge or

charges, given an opportunity to defend themselves from the charges, afforded counsel, and/or notified of their right to appeal. Any hearings on these new and separate "charges" are often perfunctory and are resolved in assembly-line fashion.

56.    Even when such hot check defendants assert or raise with the Sherwood District Court that they are unable to pay the outstanding amounts of court costs, fines, and fees, the court does not inquire further as to the hot check defendant's ability to pay, require that the State meet its burden of proof of demonstrating that the hot check defendant can pay, or make specific factual findings and a determination that the hot check defendant can or cannot pay the amounts due. Pulaski County prosecutors sit silently at the prosecution table and fail to meet their burden of proof in the face of evidence that the person cannot pay.

57.    Once Defendant Judge Hale determines that an individual is "guilty" of these new charges, the Sherwood District Court will order that individual to pay new and additional court costs, fines, and fees, thereby using this procedure to leverage the amount of court costs, fines, and fees imposed on a single person. The Sherwood District Court then imposes a new, revised payment plan, schedules a new "review hearing," and effectively starts the original post-conviction procedures all over again, albeit with higher court costs, fines, and fees.

58.    If an individual who appears in the Sherwood District Court at any time after an original hot check conviction has not made all of his or her payments, the Sherwood District Court Judge threatens to jail the person if he or she does not make the payments and directs the person either to arrange for payment or to contact family members who can make the payment on the person's behalf. If the Sherwood District Court Judge decides to send the individual to jail in order to coerce payment, he will direct that the hot check defendant be handcuffed and

19

transported to the Pulaski County Jail for a specific period of time (often 60, 90, or 120 days) or until the individual's outstanding court costs, fines, and fees are paid.

59.     If the Sherwood District Court orders that a criminal defendant be incarcerated in the Pulaski County Jail, it will issue a "Speed Letter."  The form used to prepare the Speed Letter has various blanks that can be filled in, including the defendant's name, the relevant case number, the charges, and the time of commitment ordered by the Court. Speed Letters that order the commitment of an individual who has failed to pay often include only:  the person's name; "FTP" (an abbreviation for "failure to pay"); and the sentence containing a number of days or payment of the amount owed, for example, "90 days or $1,000."

60.     Defendants systematically jail individual hot check defendants for failure to pay outstanding court costs, fines, and fees ordered by the court without making an inquiry into the hot check defendant's ability to pay and/or despite the fact that the hot check defendant is, in fact, unable to pay those amounts.

61.     Plaintiffs' experiences are representative of hundreds of other poor individuals living in Pulaski County.

62.     Through these byzantine procedures, many indigent defendants find themselves caught in a cycle of ever-increasing court costs, fines, and fees owed to Sherwood that are beyond their ability to pay. As a result of these procedures and practices, hot check defendants convicted under the Hot Check law for passing a bad check for a minimal amount, sometimes under $10 to $15, often find themselves owing the Sherwood District Court thousands and thousands of dollars in outstanding court costs, fines, and fees.

### vi.     Sherwood's Involvement in the Scheme

63.     Pursuant to the Sherwood Municipal Code, Sherwood established the Sherwood District Court and gave the court's district court judge his powers, jurisdiction, functions, and

duties. Sherwood established the position of Chief Deputy Court Clerk and, by ordinance, named the holder of that office as the Director of Sherwood's Hot Checks Department and also established Deputy Court Clerk positions in both the Sherwood District Court and the City of Sherwood's Hot Checks Department.

64.     The Sherwood District Court is served by one local district court judge, Defendant Judge Hale, who is elected by the residents of Pulaski County. Judge Hale's salary is determined by and paid by Defendant Sherwood. The court clerk and other court administrative staff operate, and facilitate other administrative functions of, the Sherwood District Court. All of the salaries and operational expenses of the Sherwood District Court are paid by Sherwood out of its general fund. Judge Hale works part-time as the judge of the Sherwood District Court and has held that position for almost 20 years. Prior to his election, his father was the judge for the City of Sherwood for approximately 25 years, until 1996.

65.     Defendant Judge Hale, court clerks, and other court administrative staff have authority over and knowledge of the Sherwood District Court's operations and the court's collection scheme.

66.     Other policymakers in Sherwood, including members of the City Council, condone, enable, and encourage the practices described above. The City of Sherwood provides the majority of the funding for the Sherwood District Court and its Hot Check Division, the Sherwood District Court employees, and the Sherwood Police Department. Sherwood policymakers, through annual budgets reviewed and approved by the Sherwood City Council, have repeatedly authorized these expenditures and have augmented departmental budgets and positions for the express purpose of increasing revenue received by Sherwood through the Sherwood District Court's collections scheme.

21

67.     In 1975, the then-Judicial District Prosecuting Attorney and the then-municipal judges in Pulaski County agreed that all misdemeanor cases brought under the Arkansas Hot Check statute in Pulaski County would be channeled through the local Sherwood Municipal Court, now the Sherwood District Court. To facilitate this arrangement, the Hot Check Division of the Sherwood Municipal Court was established in Sherwood in 1975 and is currently a separately designated division of the Sherwood District Court, which is a department of the Pulaski County district court. The Hot Check Division is physically located in a separate building and has its own budget passed separately by the Sherwood City Council. On its website, Sherwood characterizes the Hot Check Division of the Sherwood District Court as a Department of Sherwood. The individuals who oversee and operate the Hot Check Division of the Sherwood District Court, except for the Pulaski County assistant prosecutors, are all employees of and are paid by Sherwood.

68.     Sherwood and the Sherwood District Court aggressively advertise and promote the operations of the Sherwood District Court Hot Check Division to the local business community and the general public throughout Pulaski County. Sherwood lists the "Hot Check Division of the Sherwood District Court" as a "department" of Sherwood on its public website. That website contains the following description of the goals and activities of the Hot Check Division:

>   The Hot Check Division of the Sherwood District Court prosecutes individuals and businesses that write checks that cannot be cashed due to closed accounts or insufficient funds. This service is available to merchants and individual victims within Pulaski County. If you own a business that accepts a large amount of checks for payment of goods or services, you have experienced the problem of receiving bad checks. Our hot check processing service boast an 85% collection rate for all cases handled. We can work to see that you receive the money you are owed, and there is no cost to you or your business. Our service is free of charge as part of our

22

> many efforts to create and maintain a business friendly environment here in Sherwood.
>
> Small businesses, which make up the largest group in our business community, are particularly vulnerable to the problem of bad checks. Our goal is to stamp out this impediment to doing business. It is a crime under Arkansas Statute 5-37-302 to write a bad check in the State of Arkansas. The Sherwood Hot Check Division issues over 35,000 warrants annually on charges related to bad checks.
>
> Our hot check processing service is often a last resort for individuals, businesses, and collection agencies. If you or your business is experiencing a problem with bad checks, call us first. We can help. . . . .

Making it plain that Sherwood's and the Sherwood District Court's interests in operating this enterprise are both fiscal and punitive toward hot check defendants, they expressly describe the local business community as "our clients" for which they work hard to create an effective service that provides healthy financial returns.

69.     The prosecution in the Sherwood District Court of hot check criminal actions and the corresponding imposition of court costs, fines, and fees result in substantial revenue for Sherwood.

70.     Over the last five years, the Sherwood District Court has collected nearly $12 million in court costs, fines, and fees assessed from defendants, money that is deposited directly into the Sherwood's general fund. Each year, the Sherwood District Court claims to handle 22,000 to 25,000 cases. For the 2015 fiscal year, the combined receipts from court fines and forfeitures and from the City Administration Justice Fund were estimated to be at least $2,312,500, which is equal to 11.4% of the total revenues received by Sherwood into its General Fund and the third-highest revenue source after city and county sales taxes.

71.     This revenue, generated in part by the Hot Check Division of the Sherwood District Court, is possible only by leveraging each hot check case into an astounding number of collateral criminal cases for "failure to pay" and "failure to appear." For example, on information and belief, as of March of 2011, there were over 49,000 active hot check cases in the Sherwood District Court's criminal division, which is approximately one hot check-related criminal case for every eight citizens—men, women, and children—living in Pulaski County at that time. According to the Sherwood website, currently the Hot Check Division of the Sherwood District Court issues over 35,000 warrants annually on charges related to hot check prosecutions, which is approximately an average of 96 warrants a day, 365 days a year.

72.     These funds, along with tax receipts from city sales and property tax and other monies held in the general fund, in turn, are used by Sherwood to fund and operate various citywide departments through which the Sherwood District Court and its Hot Check Division operate.

73.     Court costs, fines, and fees, tax receipts, and other monies held in the general fund are also used by Sherwood to pay its obligations to fund the Pulaski County Jail pursuant to an inter-local agreement entered into by Sherwood and other communities within Pulaski County (the "Inter-Local Agreement").

74.     The Sherwood Police Department is physically adjacent to the Sherwood District Court. It operates temporary holding cells to hold individuals arrested by Sherwood Police Department officers for up to roughly 24 to 48 hours, including those awaiting transfer to the Pulaski County Jail. Any defendant who is jailed by the Sherwood District Court for more than a couple of days must be held in the Pulaski County Jail. By ordinance passed by the City Council,

Sherwood has designated the Sherwood Police Department to be the agency that is primarily responsible for the collection of fines imposed by the Sherwood District Court.

75.    The Sherwood Police Department functions as an extension of the court's collections scheme. Each year, officers of the Sherwood Police Department arrest hundreds or thousands of individuals on arrest warrants issued by the Sherwood District Court across Pulaski County.

76.    It is the policy, pattern, and custom of Sherwood Police Department to serve and execute arrest warrants for "failure to pay," "failure to appear," and "failure to comply with probation" issued by the Sherwood District Court that bear the signature of the clerk of court and are not supported by oath or affirmation attesting to probable cause that a crime has been committed.

77.    Sherwood police officers track down individuals who owe money to the court at their homes. The officers tell the individual that they will arrest them on a warrant issued by Sherwood District Court unless the individual can make a payment, in amounts ranging from $50 to hundreds of dollars, on the spot. If the individual can afford to pay, the officers will give them a court date instead of arresting the individual. An individual who does not have enough cash to pay is given the "opportunity" to call the Hot Check Division directly and give a credit card number over the phone. The poorest individuals, who cannot pay, are arrested and brought to jail. According to Sherwood Police Department records, arrests on "failure to pay" warrants are conducted pursuant to Arkansas statute, Ark. Code Ann. § 5-4-203, which was repealed in 2009.

78.    Sherwood City Council meeting minutes further demonstrate that the Sherwood District Court Hot Check Division, the Sherwood Police Department, and the Sherwood City Council work together strategically to fund Sherwood's departments in order to increase revenue

through the collection scheme, without regard for the constitutional rights of Plaintiffs and others similarly situated.

79.     For example, on March 26, 2012, the Sherwood City Council considered Ordinance No. 1933, entitled, "AN ORDINANCE CREATING ONE ADDITIONAL WARRANT CLERK POSITION IN THE CITY OF SHERWOOD POLICE DEPARTMENT." The meeting minutes reflects that the warrant clerk position was requested by Judge Hale at a Sherwood City Council budget committee meeting. At this Council meeting, Sherwood Police Chief Bedwell spoke to the City Council and justified adding the position, asserting that the extra clerk "would be helpful in serving the warrants to get revenue coming in." In urging the Sherwood City Council to pass the ordinance, Mayor Virginia Hillman Young stated that "if the position does not prove to pay for itself and bring in additional revenue it will be removed." The ordinance passed unanimously.

> **vii.     Pulaski County's and the Pulaski County Prosecutor's Involvement in the Scheme**

80.     Pulaski County and/or the Pulaski County Prosecutor condone, enable, and encourage the practices described above by and through the Pulaski County Prosecutor Office, its dedicated Hot Check Program/Hot Check Unit, and its participation in Sherwood's and the Sherwood District Court's practices described above. Pursuant to the agreement entered into by Pulaski County in the 1970s, the Pulaski County Prosecutor actively channels misdemeanor hot check cases throughout the county to the Sherwood District Court. Pulaski County and/or the Pulaski County Prosecutor have chosen to continue this practice notwithstanding the constitutional violations described herein.

81.     Each week, at least one assistant prosecutor, but more often two assistant prosecutors, are present for Sherwood District Court hot check proceedings. As a matter of

26

Pulaski County and/or the Pulaski County Prosecutor policy, practice, and custom, prosecutors have, by all appearances, abdicated many of their prosecutorial duties in the Hot Check Division of the Sherwood District Court to Judge Hale and court personnel in a manner that is inconsistent with the adversarial system of justice. Pulaski County prosecutors rarely make a formal appearance, present any evidence, or even speak in open court during hot check court proceedings.

82.     Further to Pulaski County's and the Pulaski County Prosecutor's policy, practice, and custom, it appears to be the Sherwood District Court, its court clerks, and its administrative personnel, rather than the Pulaski County Prosecutor, that exercise prosecutorial discretion in deciding to bring "failure to pay – contempt of court," "failure to appear," and "failure to comply with probation" charges in the Hot Check Division. Hot check prosecutors do not present the evidence for these charges in open court. Moreover, if and when an individual hot check defendant raises his or her inability to pay on their own, thereby shifting the burden of proof to the State under Arkansas law, Pulaski County prosecutors do not acknowledge that ability to pay is a critical issue and, with the acquiescence of the Sherwood District Court, simply ignore the State's obligation to meet this burden.

83.     Under the Pulaski County Municipal Code, Pulaski County directs the Sherwood District Court to impose certain additional fees on hot check defendants for misdemeanor hot check convictions, and it directs the Sherwood District Court to collect and remit those fees to the Pulaski County Treasurer. In the Hot Check Division of the Sherwood District Court, on information and belief, those fees currently are a $25 Prosecuting Attorney Hot Check Fee and a $20 County Jail Fee.  Therefore, Pulaski County and the Pulaski County Prosecutor have a vested economic interest in the successful prosecution of cases in the Sherwood District Court.

84.    The cost of operating and maintaining the Pulaski County Jail and the housing of prisoners is paid, in substantial part, by Pulaski County and is funded by Pulaski County tax receipts, made up of both property taxes and county sales taxes, and by payments received by Pulaski County pursuant to the Inter-Local Agreement entered into among Sherwood and other communities within Pulaski County. For the fiscal year 2015, Sherwood estimated that it would pay $135,000 out of its general fund toward operation of the Pulaski County Jail under this Inter-Local Agreement.

**Application of Defendants' Unconstitutional Collection Scheme to Class Plaintiffs**

### i.    Plaintiff Charles Dade

85.    Charles Dade lives in poverty. He is a former truck driver who operated Soil Master Carpet Cleaning Service ("Soil Master") after moving to Pulaski County in 2005. Soil Master provided janitorial services and previously allowed Mr. Dade to make a modest living, despite an injury that has permanently damaged his right hand. By 2011, Soil Master had lost key accounts and its business had effectively collapsed, and Mr. Dade was having additional financial difficulties that were exacerbated by hot check issues in Sherwood, as described below. He currently relies on disability and social security benefits amounting to $743 per month, and sporadic ad hoc janitorial work, to pay a $535 per month rent and otherwise to try to get by, although he has taken steps to renew his truck driving job if he can escape from the unconstitutional fines, fees, and court costs and stints in jail imposed on him by the Sherwood District Court.

86.    Mr. Dade has been caught in the Sherwood District Court's debt creation and collection hot check scheme since at least 2009. He was originally charged with writing six "hot checks," five to grocery stores and one to a muffler shop in 2008 and 2009. The checks ranged

from $17.28 to $172, for a total of $362.47.  Mr. Dade has not written another alleged hot check since then.

87.     The Sherwood District Court issued arrest warrants in 2008 and 2009 for Mr. Dade to appear for arraignment on the hot check charges. By the time Mr. Dade signed a recognizance bond appearance agreement on May 24, 2009, he already owed Sherwood $1226.47 in restitution and Sherwood fines, fees, and court costs. When Mr. Dade failed to appear for a July 16, 2009 arraignment, Judge Hale suspended his driver's license without advance notice and assessed additional fines, fees, and court costs to Mr. Dade.

88.     Mr. Dade was arrested on January 3, 2011. He was arraigned the next day before Judge Hale on the jail docket via video conference from the Pulaski County Jail. He pled "not guilty" to all counts, and was scheduled for an in-person bench trial on March 24, 2011. Despite his "not guilty" pleas, the Sherwood District Court ordered Mr. Dade to pay hundreds of dollars in additional fines, fees and court costs, bringing his total debt to Sherwood to $2173.47. Mr. Dade was then held in the Pulaski County Jail before trial because he could not pay a $2500 surety bond.

89.     In March 2011, Pulaski County failed to bring Mr. Dade to his first trial date, and the trial was rescheduled for May 26, 2011. Yet, Mr. Dade was still not released from custody pending his trial. Instead, Judge Hale continued to hold Mr. Dade in the Pulaski County on the $2500 surety bond that he could not pay, without any assessment by Defendant Judge Hale of Mr. Dade's ability to pay the bond or the $2173.47 balance owed to Sherwood in restitution, fines, fees, and court costs.

ny-1247322

90.     On May 26, 2011, without the assistance of counsel and appearing by video conference on the jail docket, Mr. Dade pled guilty to the hot check charges but was unable to pay the amount owed in fines, fees, and court costs.

91.     Since that time, Mr. Dade has been the subject of many additional arrest warrants in the Sherwood District Court for, and found guilty by Judge Hale of, "failure to pay," "failure to appear" and "failure to comply with probation."   Upon information and belief, Judge Hale and the clerks of the Sherwood District Court sought, signed, and issued each arrest warrant not supported by oath or affirmation, or any inquiry into Mr. Dade's ability to pay. Mr. Dade has repeatedly been sentenced to imprisonment and assessed additional fines, fees, and court costs.

92.     Mr. Dade has been jailed on several other occasions by the Sherwood District Court. For example, on May 6, 2013, Mr. Dade was arrested under a warrant for "failure to pay" and appeared before Judge Hale on the jail docket. At the time he owed $2853.47 to Sherwood in restitution, fines, fees, and court costs that he was unable to pay. Judge Hale ordered Mr. Dade to serve 60 days in jail with a $1000 cash bond that Mr. Dade could not pay. Judge Hale made no assessment of whether Mr. Dade could pay the $2853.47 debt to Sherwood or the $1000 cash bond.

93.     On October 3, 2013, having failed to satisfy a $100 per month payment plan imposed by Sherwood and the Sherwood District Court, Mr. Dade was arrested under a warrant for failure to appear for a review hearing. He appeared before Judge Hale on the jail docket. At the time he owed $4488.47 to Sherwood in restitution, fines, fees, and court costs. Judge Hale ordered Mr. Dade to serve 120 days in jail with a $3000 cash bond that Mr. Dade could not afford to pay. Judge Hale ordered him into custody without making any assessment of whether Mr. Dade could pay the $4488.47 debt to Sherwood or the $3000 cash bond. Mr. Dade served 47

30

days in jail at that time and was credited for that time against his Sherwood fines, fees, and court costs at a rate of $40 per day.

94.     On July 21, 2016, Judge Hale held what was styled an arraignment hearing on outstanding failure to appear and failure to pay charges against Mr. Dade. Judge Hale sentenced him to 90 days in jail or payment of his $1253.47 debt to Sherwood in restitution, fines, fees, and court costs without Judge Hale making any assessment of whether Mr. Dade could pay the $1253.47 debt. Mr. Dade attempted to raise his inability to pay, but Judge Hale would not let him speak. The hearing lasted all of two to three minutes. Mr. Dade did not receive the assistance of counsel, nor did he waive the right to counsel. Mr. Dade could not pay and was thus committed to the custody of the Pulaski County Jail.

95.     Mr. Dade is currently incarcerated in the Pulaski County Jail. When he leaves the Pulaski County Jail, he still expects to owe a $523.47 restitution debt and $730 in Sherwood fines, fees, and court costs that he cannot afford to pay.

### ii.     Plaintiff Nakita Lewis

96.     Nakita Lewis lives in poverty. She is the sole caregiver for her infirm and blind mother, for which she earns a part-time minimum wage income from a home health service company. She has no assets and often depends on money her sister sends to pay rent and utility bills, and buy food, clothing, and other necessities for herself and her mother. Since 2014, when she quit her regular job to care for her mother, Ms. Lewis has estimated that she has lived on less than $8 per day.

97.     Ms. Lewis has been caught in the Sherwood District Court's hot check scheme for the last ten years. She was originally charged with writing a series of "hot checks" to local grocery stores and fast food restaurants in 2006 and early 2007.

98.    Ms. Lewis appeared in the Hot Check Division of the Sherwood District Court,

pled guilty to four hot check charges, and was assessed hundreds of dollars in fines, fees, and

court costs.[3]

99.    The Sherwood District Court put Ms. Lewis on a payment plan without any

inquiry into her ability to pay. This plan required her to pay $100 per month to the Hot Check

Division of the Sherwood District Court, which Ms. Lewis could not afford to pay.

100.    For the next three years, Ms. Lewis paid the Sherwood District Court when she

could scrape up enough money from her limited income as a home assistant, but it was not

enough. At a review hearing in 2007, Judge Hale ordered that Ms. Lewis be jailed for

"contempt" for 90 days for failure to pay court costs, fees, and fines to Sherwood. After taking

her into custody, a Sherwood Police Department deputy told her that he would release her if she

could come up with $350. She did not have the money but called friends and family members,

who agreed to buy her freedom.

101.    In May 2016, an officer from the Sherwood Police Department came to Ms.

Lewis's home. The officer told her that he would have to arrest her unless she could immediately

pay him $50 to be assigned a future court date. Terrified to leave her mother, Ms. Lewis called

the Sherwood Hot Check Department and gave it her credit card number over the phone. The

Sherwood Hot Check Department charged the $50 to her credit card.

102.    Two weeks later, on June 2, 2016, Ms. Lewis appeared for her court date. Judge

Hale told her she had to pay $4500 or he would send her to jail. Ms. Lewis attempted to explain

---

[3] Court records show that three of the four charges were for hot check "felonies," over which Sherwood District Court would not have jurisdiction. Upon information and belief, the records are inaccurate, and misdemeanor charges against Ms. Lewis were designated felonies in the court's records improperly by combining small amounts from several checks.

to Judge Hale that she could not afford to pay, but he committed her to jail for 180 days or $4892 anyway. The entire hearing lasted no more than three minutes.

103.    When Ms. Lewis has attended various court proceedings in the Sherwood District, she has been told by court bailiffs that only she, and not her family or friends, is allowed to enter the courtroom. When Ms. Lewis has attended various court hearings in Sherwood District Court, she has not been informed in open court by anyone associated with the Sherwood District Court of her right to counsel and, instead, has been presented with a "Waiver of Counsel" form which she was required to complete in order to enter the courtroom.

104.    Ms. Lewis and her family members have tried everything they could think of to get her out of jail. Three weeks after Judge Hale ordered her to jail, Ms. Lewis's aunt sent a letter to the court, addressed to the judge. The letter informed Judge Hale about Ms. Lewis's ailing mother and told him that they "know she owes money to the Hot Check Division of the Sherwood District Court of Sherwood, Arkansas but unfortunately we are unable to pay the total amount at this time." Ms. Lewis's aunt requested that Ms. Lewis be put on a payment plan and offered to help Ms. Lewis make her payments. Sherwood District Court officials denied this request and told Ms. Lewis' family that they would have to pay at least $3,000 in order for Ms. Lewis to be released from jail.

105.    Ms. Lewis spent 79 days in jail because she cannot afford her outstanding debt of fines, fees, and court costs owed to Sherwood. Ms. Lewis has never been to jail before, and due to the trauma of being incarcerated, she has developed severe headaches and exacerbated hypertension.

### iii.    Plaintiff Nikki Petree

106.    Nikki Petree lives in poverty. She is unemployed and acts as the sole caregiver for her elderly and infirm father with whom she lives in Romance, Arkansas. She has no assets and

often depends on her father to share money he draws from social security to meet her most basic needs.

107.    Ms. Petree was snared by Sherwood's Hot Check Division in September 2011. She had recently left her job at a hotel in Little Rock and expected her final paycheck to be deposited directly into her checking account, as her paychecks had been in the past. The paycheck, however, was not deposited, and Ms. Petree overdrew on her account. Over the span of about a week, Ms. Petree bounced approximately six checks. She quickly realized her account was overdrawn, contacted her former employer to get her final paycheck, and resolved the bounced checks directly with the payees—all except for one. One check for $28.93 went unpaid, and so a warrant was sworn out of the Sherwood District Court's Hot Check Division for her arrest.

108.    Ms. Petree eventually heard about the warrant, and in February 2012 she visited the Sherwood Police Department to investigate, where she was promptly arrested. She was released on her own recognizance after paying $40 and ordered to appear for arraignment in May 2012. Because of health issues, however, Ms. Petree missed her court date. Judge Hale ordered her driver's license suspended and issued another warrant for her arrest for failure to appear.

109.    Ms. Petree was arraigned on her hot check charge in October 2012. On her hearing date, waiting in line at the Sherwood District Court, Ms. Petree signed what she believed to be a sign-in form that bailiffs told her was required to be admitted to the courtroom. That form was, in fact, a waiver of counsel form that purported to waive Ms. Petree's right to counsel on the hot check charge. The form said nothing about the additional criminal charges for failure to appear on which Ms. Petree was also arraigned that day. Sherwood District Court records reflect that Ms. Petree purportedly waived her right to counsel on both hot check and failure to appear

charges. She pled guilty, and was assigned to a payment plan. The Sherwood District Court assessed Ms. Petree over $700 in restitution and court costs, fines, and fees. It did not assess Ms. Petree's ability to pay those amounts.

110.    Around this time, Ms. Petree was working part-time for minimum wage at Waffle House. Her take-home pay was approximately $800 per month and she paid about $165 per week to live in a hotel near the restaurant, leaving her about $150 per month for food, gas, and other necessities. At the time she supported her then-teenage daughter, who lived with her at the hotel. Ms. Petree's ability to earn a living was also hampered by severe medical issues. She suffers from hepatitis C and chronic pancreatitis, for which she has been hospitalized multiple times. Eventually, sometime around early 2014, in part due to her chronic health issues, Ms. Petree lost her job.

111.    Because she was so strapped for cash, Ms. Petree missed court-ordered payments to the Hot Check Division and, in part because she was hospitalized multiple times, she missed "review hearings" before Judge Hale. As a result, Ms. Petree's court-imposed debt to Sherwood spiraled out of control as Judge Hale charged Ms. Petree with further criminal charges for failure to pay and failure to appear, assessing her hundreds of dollars in additional court costs, fines, and fees.

112.    The Hot Check Division and the Sherwood Police Department have ultimately arrested Ms. Petree at least seven times for the underlying hot check charge and related failure-to-pay and failure-to-appear charges. Each time they arrested Ms. Petree, the Hot Check Division and the Sherwood Police demanded that Ms. Petree pay them in order to be released from custody and receive a court date—all without assessing her ability to pay. Ms. Petree often complied by asking family members or friends to bring money to the Sherwood Police

Department to pay for her release because she did not have any money. After years of this catch and release pattern, according to Sherwood District Court records, Ms. Petree—and others on her behalf—has paid at least $640 to the Hot Check Division.

113.    In one instance, in September 2013, Ms. Petree was scheduled for a hearing before Judge Hale. Ms. Petree, however, was incarcerated at the time in White County Detention Center in Searcy, Arkansas, on unrelated charges. Ms. Petree's family called the Sherwood District Court clerk's office, and Ms. Petree wrote the Sherwood District Court, to explain that she was not able to attend her hearing because she was incarcerated elsewhere. She asked that Judge Hale schedule a new court date and not enter new charges against her for failure to appear. Judge Hale denied the request. Instead, when Ms. Petree was released from White County jail, the Hot Check Division executed a warrant for Ms. Petree's arrest for "failure to appear – contempt of court" that had been issued in April 2013. It appears that this was a warrant that had already been executed once before, when Ms. Petree voluntarily appeared at the Hot Check Division offices and paid money to secure the September 2013 court date. Ms. Petree thus re-appeared on the April 2013 warrant in October 2013 to be charged with "failure to appear – contempt of court."

114.    At the October 2013 arraignment, court bailiffs told Ms. Petree to sign a waiver of counsel form that purported to waive her right to counsel for the charge of "hot checks"—but not for failure-to-appear or failure-to-pay charges—in order to enter the courtroom. At the hearing, despite Ms. Petree's poor financial situation, Judge Hale *increased* the amount due on Ms. Petree's monthly payment plan; imposed hundreds of dollars of additional court costs, fines, and fees; sentenced Ms. Petree to a suspended jail sentence of 90 days; and ordered another "review

hearing" to monitor Ms. Petree's payments. Ms. Petree was not able to pay and Judge Hale did not inquire into her ability to pay.

115.    On July 21, 2016, after Ms. Petree's court-imposed debt to Sherwood had ballooned even further, Ms. Petree appeared before Judge Hale in the Sherwood District Court. He ordered Ms. Petree to pay the full amount of her balance owed to Sherwood—$2656.93—or be sentenced to 90 days "flat time" in the Pulaski County Jail. Ms. Petree has neither been employed, nor received a regular income, since sometime in 2014. She attempted to raise her inability to pay, but Judge Hale would not listen. The hearing lasted two or three minutes. Judge Hale ordered Ms. Petree committed to the Pulaski County Jail.

116.    Ms. Petree has been imprisoned at the Pulaski County Jail for over 25 days because she is too poor to pay the $2656.93 that Judge Hale demands.

### iv.    Plaintiff Lee Andrew Robertson

117.    Lee Andrew Robertson lives in poverty. Although he worked several years ago as a truck driver, he has battled pancreatic cancer, and has been unable to work in recent years. He has depended on friends and family to meet his basic needs. Mr. Robertson has been trapped in Sherwood's cycle of debt, arrest, and jailing since late 2009 when checks totaling about $200 that he wrote to various local stores in Pulaski County were returned for insufficient funds. Six years later, Mr. Robertson has been arrested seven times, has spent several weeks in jail, and still owes over $2,600 in court costs, fines, and fees.

118.    Mr. Robertson's trouble with the Hot Check Division of the Sherwood District Court began in December 2009 as he was undergoing his first stint of chemotherapy. Over the course of two weeks, he wrote 11 checks in amounts from $5 to $41 to stores near his home. He did not realize that his bank account did not have sufficient funds to cover the checks, and the

checks were returned for insufficient funds. For this Mr. Robertson was charged with 11 hot check misdemeanors in the Sherwood District Court—one for each bounced check—and a warrant was issued for his arrest.

119.     Mr. Robertson was arrested on this warrant over two and a half years later, in June 2012. Four days after his arrest, he pled guilty to the 11 misdemeanors from jail via video conference. He was not notified of and did not waive his right to counsel. Judge Hale sentenced him to pay restitution, fines, fees, and court costs totaling $2,407.01. No one inquired into Mr. Robertson's ability to pay or considered his life-threatening illness.

120.     In and out of the hospital since then, and unable to make the monthly payments, Mr. Robertson was the subject of seven additional arrest warrants, and ultimately convictions, for "failure to pay," "failure to appear," and "failure to comply with probation." Upon information and belief, Judge Hale and clerks of the Sherwood District Court sought, signed, and issued each warrant not supported by oath or affirmation, or any inquiry into Mr. Robertson's ability to pay, and sometimes in complete disregard for evidence of his indigency.

121.     As a matter of policy, practice, and custom, the warrants functioned as charging documents for misdemeanor charges for failure to appear, failure to pay/contempt of court, and failure to comply with probation. Mr. Robertson was ordered to pay additional fines for these criminal charges but was not afforded adequate notice and an opportunity to defend himself. His driver's license was suspended without advance notice or a hearing.

122.     Mr. Robertson made futile attempts to raise his inability to pay on multiple occasions during hearings before Judge Hale. Each time, Judge Hale would not let him speak and would not allow him to make a showing of his inability to pay. For instance, in January 2013, Mr. Robertson attended a review hearing in Sherwood District Court. He had previously been

unable to make his monthly payments and brought his medical records and evidence of his income in order to demonstrate his inability to pay and ask for lower monthly payments. Judge Hale refused to look at Mr. Robertson's papers and in fact raised Mr. Robertson's monthly payments by changing his sentence to probation with a private probation company, ProTrac, which charges $35 per month on top of the payments owed to Sherwood District Court. On at least one other occasion, when Mr. Roberts attended a hearing at the Sherwood District Court, court bailiffs would not allow Mr. Robertson to bring papers into the courtroom with him— papers Mr. Robertson had specifically assembled to demonstrate his inability to pay.

123.    When Mr. Robertson has attended various court proceedings in the Sherwood District, he has been told by court bailiffs that only he, and not his family or friends, is allowed to enter the courtroom. When Mr. Robertson has attended various court hearings in Sherwood District Court, he has not been informed in open court by anyone associated with the Sherwood District Court of his right to counsel and, instead, has been presented with a "Waiver of Counsel" form which he was required to complete in order to enter the courtroom.

124.    On several occasions, Sherwood police officers came to Mr. Robertson's home and, upon threat of arrest, required him to pay small amounts of money to avoid being arrested. The Sherwood police officers knocked on his door with an arrest warrant for "failure to pay" or "failure to appear," and told Mr. Robertson that they would arrest him unless he could come up with $50 or $100 to be assigned a future court date. Each time, Mr. Robertson called friends and family for cash or gave the Hot Check Division a credit card number over the phone in order to avoid being arrested.

ny-1247322

125.    Mr. Robertson has been sentenced to jail twice, notwithstanding that he is too poor to pay the court costs, fines, and fees owed to Sherwood. The first time was in February 2014, when Judge Hale committed Mr. Robertson to jail for 60 days or $2000 cash.

126.    Recently, Mr. Robertson found himself in the Pulaski County Jail because he could not afford to pay fines, fees, and court costs to Sherwood. On July 7, 2016, Mr. Robertson appeared in front of Judge Hale in the Sherwood District Court. Judge Hale demanded that he pay $300, but Mr. Robertson did not have the money. Mr. Robertson asked Judge Hale to accept $100, but Judge Hale refused and committed him to jail for 90 days or release upon payment of $3054.51.

127.    Mr. Robertson was imprisoned at the Pulaski County Jail for over 35 days because he is unable to pay the $3054.51 as ordered by Judge Hale. His cancer currently in remission, he still suffers from pancreatitis and high blood pressure, and he did not appear to be receiving the medication he needs while he was in prison.

## CLASS ACTION ALLEGATIONS

128.    The named Plaintiffs bring this action, on behalf of themselves and all others similarly situated, for the purpose of asserting the claims alleged in this Complaint on a common basis.

129.    This action is brought and may properly be maintained as a Class action under Rule 23(a)(1)–(4) and Rule 23(b)(2) of the Federal Rules of Civil Procedure.

130.    The Plaintiffs will seek to certify two classes:

(a)     a class that seeks declaratory and injunctive relief against Defendants Sherwood, Pulaski County, and the Pulaski County Prosecutor and declaratory relief only against Defendant Judge Hale (the "Declaratory and Injunctive Class") on behalf of all individuals who

40

are currently or who will be sentenced to be held and/or are held in the custody of Sherwood and/or Pulaski County as a result of their failure to pay a monetary debt for court costs, fines, and fees despite their inability to pay; and

(b)     a class that seeks declaratory and injunctive relief and a refund of public funds, against Defendants Sherwood and Pulaski County under the Arkansas Constitution (the "Illegal Exaction Class") on behalf of all Arkansas citizens who have paid city or county sales taxes and/or who have paid city or county property taxes in Sherwood and/or Pulaski County within the past three years.

131.     The Class Plaintiffs are the proposed representatives of the Declaratory and Injunctive Class.  Plaintiff Axelroth is the taxpayer representative of the Illegal Exaction Class.

132.     All four requirements of Rule 23(a) are satisfied.

(a)     *Numerosity*:  Joinder of all class members is impracticable because of the size of the class. On information and belief, thousands of persons in hot check and related cases are subject to arrest warrants and prosecuted by Sherwood and the Sherwood District Court; are unable to pay their monetary debt for court costs, fines, and fees; and thus are confronted with owing a monetary debt they cannot pay or going to jail. Hundreds of thousands of individuals are current or future members of the Declaratory and Injunctive Class based on the sheer number of hot check cases initiated and prosecuted in the Sherwood District Court every year. There are tens of thousands of class members in the Illegal Exaction Class based on the number of taxpayers in Sherwood and/or Pulaski County.

(b)     *Commonality*:  There are questions of law and fact common to all members of each class, including, but not limited to:

(i)      whether Defendants have a policy, practice, or custom of failing to inquire as to the ability of individual hot check defendants to pay a monetary debt for court costs, fines, and fees before incarcerating them and whether such policies, practices, and procedures violate the Due Process and Equal Protection Clauses of the U.S. and Arkansas Constitutions;

(ii)     whether Defendants have a policy, practice, or custom of incarcerating individuals owing a monetary debt for court costs, fines, and fees despite their inability to pay those costs, fines, and fees and whether such a policy violates the Due Process and Equal Protection Clauses of the U.S. and Arkansas Constitutions;

(iii)    whether Sherwood and Judge Hale obtain a meaningful knowing, intelligent, and voluntary waiver of the right to counsel for those indigent hot check defendants appearing in Sherwood District Court without counsel on hot check and related charges and whether the failure to do so violates the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 2, Section 10, of the Arkansas Constitution; and

(iv)    whether Sherwood's and Pulaski County's use of public funds as described herein constitutes an illegal exaction under the Arkansas Constitution.

(c)      *Typicality*:  The named Plaintiffs' claims are typical of the claims of the other members of each Class, and they have the same interests in this case as all other members of the respective Classes that they represent. The legal theories under which the named Plaintiffs seek declaratory and injunctive relief are the same or similar to those on which all members of the class will rely, and the harms suffered by the named Plaintiffs are typical of the harms suffered by all members of the classes.

(d)      *Adequacy*:  The named Plaintiffs are adequate representatives of the respective Classes that they represent because their interests in the vindication of the legal claims

42

that they raise are entirely aligned with the interests of the other Class members. Plaintiffs are members of the Classes, and their interests coincide with, and are not antagonistic to, those of the other Class members. There are no known conflicts of interest among members of the proposed Classes, all of whom have a similar interest in vindicating their constitutional rights in the face of their unlawful treatment by their local government. The Plaintiffs are represented by Class counsel from the Lawyers' Committee for Civil Rights Under Law, Morrison & Foerster LLP, and Bettina E. Brownstein Law Firm, all of whom are experienced in litigating complex civil rights matters and class action lawsuits in federal court.

133.   This action is properly maintainable as a class action under Rule 23(b)(1)(A) of the Federal Rules of Civil Procedure because prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that would be inconsistent or varying and, thus, establish incompatible standards of conduct for the parties opposing class treatment. The answer to whether Defendants' policies, practices, and customs—and the conduct of Judge Hale—are unconstitutional will determine the claims of the named Plaintiffs and every other Class member. If the named Plaintiffs succeed in the claim that Defendants' policies, practices, and customs—and the conduct of Judge Hale—concerning the treatment of persons who fail to pay a monetary debt for court costs, fines, and fees despite their inability to pay violate Plaintiffs' constitutional rights, that ruling will likewise benefit every other member of the Class.

134.   This action is properly maintainable as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants have acted and/or refused to act on grounds generally applicable to the Classes, thereby rendering final relief appropriate with respect to the Named Plaintiffs and the Classes as a whole. These claims focus on whether

43

Defendants' policies, practices, and customs, and the conduct of Judge Hale in his individual

capacity, are unconstitutional. Therefore, these claims can be proven on a class-wide basis.

Because these claims challenge Defendants' policies, practices, and customs, Defendants are

unlikely to assert individualized defenses. Further, the same state and federal laws apply to all

Class members' claims.

## CLAIMS FOR RELIEF

### COUNT ONE

(All Defendants – 42 U.S.C. § 1983
Violation of Plaintiffs' U.S. Constitutional Rights by
Imprisoning Plaintiffs for Non-Payment of Debts Despite Their Inability to Pay)

135.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every

allegation stated in paragraphs 1–133 above.

136.     The Fourteenth Amendment's due process and equal protection clauses prohibit

the government from imprisoning a person for failure to pay a monetary debt if the person is, in

fact, unable to pay. Defendants violated Class Plaintiffs' rights under the Fourteenth Amendment

when they imprisoned Class Plaintiffs in the Pulaski County Jail despite their inability to pay a

monetary debt for court costs, fines, and fees arising out of hot check convictions and other

related proceedings in the Sherwood District Court. Pulaski County and/or the Pulaski County

Prosecutor actively channel misdemeanor hot check cases throughout the county to the

Sherwood District Court and have chosen to continue this practice notwithstanding these

constitutional violations.

137.     Defendants' policy, practice, and/or custom of channeling prosecutions to this

court and imprisoning people in the Pulaski County Jail, as exemplified by imprisoning

Plaintiffs, for failure to pay monetary debts for court costs, fines, and fees arising from hot check

convictions and other related proceedings in the Sherwood District Court when such people,

44

including Class Plaintiffs, could not afford to pay those debts violates the Class Plaintiffs' due

process and equal protection rights under the U.S. Constitution.

## COUNT TWO

(All Defendants – 42 U.S.C. § 1983
Violation of Plaintiffs' U.S. Constitutional Rights
by Imprisoning Plaintiffs for Non-Payment of Debts
Without Any Inquiry into Their Inability to Pay the Debts)

138.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every

allegation stated in paragraphs 1–133 above.

139.    The Fourteenth Amendment's due process and equal protection clauses prohibit

local and/or state government from imprisoning a person for failure to pay a monetary debt if the

government does not make an inquiry, findings of fact, and/or a determination as to whether that

person is unable to pay the imposed monetary debt. Defendants violated Class Plaintiffs' rights

under the Fourteenth Amendment when they imprisoned Class Plaintiffs in the Pulaski County

Jail despite Defendants' failure to inquire, make findings of fact, or determine whether Class

Plaintiffs were able to pay a monetary debt for court costs, fines, and fees arising out of hot

check convictions and other related proceedings in the Sherwood District Court when Class

Plaintiffs, in fact, were not able to pay.

140.    Defendants' policy, practice, and/or custom of imprisoning people in the Pulaski

County Jail, as exemplified by imprisoning Class Plaintiffs, for failure to pay monetary debts or

court costs, fines, and fees arising from hot check convictions and other related proceedings in

the Sherwood District Court without inquiring, making findings of fact, or determining whether

people could afford to pay those monetary debts, and channeling prosecutions to this court

notwithstanding these constitutional violations, violates Class Plaintiffs' due process and equal

protection rights under the U.S. Constitution for those people who, in fact, are unable to pay.

## COUNT THREE

(Defendant Sherwood, Defendant Pulaski County, and Defendant Judge Hale –
Ark. Code § 16-123-105 and 28 U.S.C. § 1367
Violation of Plaintiffs' Arkansas Constitutional Rights by Imprisoning Plaintiffs for Non-
Payment of Debts Despite Their Inability to Pay)

141.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every

allegation stated in paragraphs 1–133 above.

142.    Article 2, Sections 8 and 16, of the Arkansas Constitution prohibit Arkansas local

and/or state government from imprisoning a person for failure to pay a monetary debt if the

person is, in fact, unable to pay. Sherwood, Pulaski County, and Judge Hale violated Class

Plaintiffs' rights under Article 2, Sections 8 and 16, of the Arkansas Constitution when they

imprisoned Class Plaintiffs in the Pulaski County Jail despite their inability to pay a monetary

debt due for court costs, fines, and fees arising out of hot check convictions and other related

proceedings in the Sherwood District Court. Pulaski County actively channels misdemeanor hot

check cases throughout the county to the Sherwood District Court and has chosen to continue

this practice notwithstanding these constitutional violations.

143.    Sherwood's, Pulaski County's, and Judge Hale's policy, practice, and/or custom

of channeling prosecutions to this court and imprisoning people in the Pulaski County Jail, as

exemplified by imprisoning Class Plaintiffs, for failure to pay monetary debts arising from hot

check convictions and other related proceedings in the Sherwood District Court when such

people, including Class Plaintiffs, could not afford to pay those monetary debts violates the Class

Plaintiffs' rights under Article 2, Sections 8 and 16, of the Arkansas Constitution.

## COUNT FOUR

(Defendant Sherwood, Defendant Pulaski County, and Defendant Judge Hale –
Ark. Code § 16-123-105 and 28 U.S.C. § 1367
Violation of Plaintiffs' Rights Under the Arkansas Constitution by
Imprisoning Plaintiffs for Non-Payment of Debts
Without Any Inquiry into Their Inability to Pay the Debts)

144.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every

allegation stated in paragraphs 1–133 above.

145.    Article 2, Sections 8 and 16, of the Arkansas Constitution prohibit local and/or

state government from imprisoning a person for failure to pay a monetary debt if the government

does not make an inquiry, findings of fact, and/or a determination as to whether that person is

unable to pay, and therefore excused from paying, the imposed monetary debt. Defendants

Sherwood, Pulaski County, and District Court Judge Hale violated Class Plaintiffs' rights under

Article 2, Sections 8 and 16, of the Arkansas Constitution when they imprisoned Class Plaintiffs

in the Pulaski County Jail despite these Defendants' failure to inquire, make findings of fact, or

determine whether Class Plaintiffs were able to pay a monetary debt for court costs, fines, and

fees arising out of hot check convictions and other related proceedings in the Sherwood District

Court. Pulaski County actively channels misdemeanor hot check cases throughout the county to

the Sherwood District Court and has chosen to continue this practice notwithstanding these

constitutional violations.

146.    Sherwood's, Pulaski County's, and Judge Hale's policy, practice, and/or custom

of channeling prosecutions to this court and imprisoning people in the Pulaski County Jail, as

exemplified by imprisoning Class Plaintiffs, for failure to pay monetary debts arising from hot

check convictions and other related proceedings in the Sherwood District Court without

inquiring, determining, or making findings of fact as to whether Class Plaintiffs could afford to

pay those monetary debts violates the Class Plaintiffs' rights under Article 2, Sections 8 and 16, of the Arkansas Constitution.

## COUNT FIVE

(All Defendants – 42 U.S.C. § 1983
Violation of Plaintiffs' U.S. Constitutional Rights by
Imprisoning Plaintiffs for Non-Payment of Debts Without Appointing Adequate Counsel or
Securing a Knowing and Intelligent Waiver of Counsel)

147.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation stated in paragraphs 1–133 above.

148.    The Sixth and Fourteenth Amendments of the U.S. Constitution guarantee the right of effective assistance of counsel, including for proceedings leading to a sentence of imprisonment. This is true whether or not such a sentence is suspended, subject to probation, or otherwise not carried out in full or part. Any waiver of the right to counsel must be knowing, intelligent, and voluntary.

149.    Defendants have violated Class Plaintiffs' right to counsel under the U.S. Constitution in connection with the illegal collection scheme described herein. Defendants Sherwood and District Court Judge Hale failed to adequately inform Class Plaintiffs of their right to counsel prior to legal proceedings in the Sherwood District Court arising out of hot check prosecutions that led to a sentence of imprisonment. Defendants Sherwood and District Court Judge Hale failed to obtain knowing, intelligent, and voluntary waivers of counsel from Class Plaintiffs prior to proceedings in the Sherwood District Court arising out of hot check prosecutions that led to a sentence of imprisonment. Pulaski County and/or the Pulaski County Prosecutor actively channel misdemeanor hot check cases throughout the county to the Sherwood District Court and have chosen to continue this practice notwithstanding these violations of the right to counsel. Defendants carried out legal proceedings as described herein

48

leading to the sentences of imprisonment against Class Plaintiffs and actual imprisonment of

Class Plaintiffs in the Pulaski County Jail without Class Plaintiffs having any representation by

counsel, without providing adequate representation by counsel as required under the U.S.

Constitution, and without securing knowing, intelligent, and voluntary waivers of counsel.

150.     Defendants' policies, practices, and/or customs—of channeling prosecutions to

this court and sentencing to imprisonment and imprisoning people in the Pulaski County Jail,

without providing adequate representation by counsel and without a knowing, intelligent, and

voluntary waiver of counsel—violate the Sixth and Fourteenth Amendments of the U.S.

Constitution.

**COUNT SIX**

(Defendant Sherwood, Defendant Pulaski County, and Defendant Judge Hale –
Ark. Code § 16-123-105 and 28 U.S.C. § 1367
Violation of Plaintiffs' Rights Under the Arkansas Constitution by
Imprisoning Plaintiffs for Non-Payment of Debts Without Appointing Adequate Counsel or
Securing a Knowing and Intelligent Waiver of Counsel)

151.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every

allegation stated in paragraphs 1–133 above.

152.     Article 2, Section 10, of the Arkansas Constitution guarantees the right of

effective assistance of counsel, including for proceedings leading to a sentence of imprisonment.

This is true whether or not such a sentence is suspended, subject to probation, or otherwise not

carried out in full or part. Any waiver of the right to counsel must be knowing, intelligent, and

voluntary.

153.     Sherwood, Pulaski County, and Judge Hale violated Class Plaintiffs' right to

counsel under Article 2, Section 10, of the Arkansas Constitution in connection with the illegal

collection scheme described herein. Defendants Sherwood and District Court Judge Hale failed

to adequately inform Class Plaintiffs of their right to counsel prior to legal proceedings in the

49

Sherwood District Court arising out of hot check prosecutions that led to a sentence of imprisonment. Defendants Sherwood and District Court Judge Hale failed to obtain knowing, intelligent, and voluntary waivers of counsel from Class Plaintiffs prior to proceedings in the Sherwood District Court arising out of hot check prosecutions that led to a sentence of imprisonment. Pulaski County actively channels misdemeanor hot check cases throughout the county to the Sherwood District Court and has chosen to continue this practice notwithstanding these violations of the right to counsel. Defendants carried out legal proceedings as described herein leading to the sentences of imprisonment against Class Plaintiffs and the imprisonment of Class Plaintiffs in the Pulaski County Jail without Class Plaintiffs having any representation by counsel, without providing adequate representation by counsel as required under Article 2, Section 10, of the Arkansas Constitution, and without securing knowing, intelligent, and voluntary waivers of counsel.

154.    Sherwood's, Pulaski County's, and Judge Hale's policies, practices, and/or customs—of channeling prosecutions to this court and sentencing to imprisonment and imprisoning people in the Pulaski County Jail, without providing adequate representation by counsel and without a knowing, intelligent, and voluntary waiver of counsel—violate the Article 2, Section 10, of the Arkansas Constitution.

## COUNT SEVEN

(All Defendants – 42 U.S.C. § 1983
Violation of Plaintiffs' U.S. Constitutional Rights by Imprisoning Plaintiffs for Non-Payment of
Debts Without Satisfying the Minimum Requirements of Due Process)

155.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every

allegation stated in paragraphs 1–133 above.

156.    The Fourteenth Amendment guarantees due process to a defendant, including a

minimum degree of procedural safeguards to protect the rights of people who are prosecuted and

sentenced to prison for non-payment of debts despite an inability to pay those debts.

157.    Defendants failed to provide the minimum degree of constitutionally required

procedural safeguards to Class Plaintiffs, who were prosecuted and sentenced to prison for

non-payment of debts despite an inability to pay those debts, in violation of the Fourteenth

Amendment. Such procedural safeguards may include, but are not limited to, notice to the

defendant that his or her ability to pay is a critical issue in the proceeding, the use of a form (or

equivalent process) to elicit relevant financial information, an opportunity at the hearing for the

defendant to respond to statements and questions about the defendant's financial status (e.g.,

those triggered by the responses on the form), an express finding by the court that the defendant

has the ability to pay, and/or the right to state-appointed counsel.

158.    Defendants' policies, practices, and/or customs—of channeling prosecutions to

this court and sentencing people to prison under the Arkansas hot check statute, the Arkansas

fine collection statute, the Arkansas criminal contempt statute, the Arkansas failure to appear

statute, and/or otherwise for non-payment of monetary debts despite an inability to pay—violate

the Fourteenth Amendment of the U.S. Constitution by failing to provide the minimum degree of

procedural safeguards that are due.

## COUNT EIGHT

(Defendant Sherwood, Defendant Pulaski County, and Defendant Judge Hale –
Ark. Code § 16-123-105 and 28 U.S.C. § 1367
Violation of Plaintiffs' Arkansas Constitutional Rights by Imprisoning Plaintiffs for Non-
Payment of Debts Without Satisfying the Minimum Requirements of Due Process)

159.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every

allegation stated in paragraphs 1–133 above.

160.    Article 2, Section 8, of the Arkansas Constitution guarantees due process to a

defendant, including without limitation a minimum degree of procedural safeguards to protect

the rights of people who are prosecuted and sentenced to prison for non-payment of debts despite

an inability to pay those debts.

161.    Defendants Sherwood, Pulaski County, and Judge Hale failed to provide the

minimum degree of constitutionally required procedural safeguards to Class Plaintiffs, who were

prosecuted and sentenced to prison for non-payment of debts despite an inability to pay those

debts, in violation of Article 2, Section 8, of the Arkansas Constitution. Such procedural

safeguards may include, but are not limited to, notice to the defendant that his or her ability to

pay is a critical issue in the proceeding, the use of a form (or equivalent process) to elicit relevant

financial information, an opportunity at the hearing for the defendant to respond to statements

and questions about the defendant's financial status (e.g., those triggered by the responses on the

form), an express finding by the court that the defendant has the ability to pay, and/or the right of

indigent defendants to state-appointed counsel.

162.    Sherwood's, Pulaski County's, and Judge Hale's policies, practices, and/or

customs—of sentencing people to prison under the Arkansas hot check statute, the Arkansas fine

collection statute, the Arkansas criminal contempt statute, the Arkansas failure to appear statute,

and/or otherwise for non-payment of monetary debts despite an inability to pay—violate Article

52

2, Section 8, of the Arkansas Constitution by failing to provide the minimum degree of

procedural safeguards that are due.

## COUNT NINE

(Defendant Sherwood and Defendant Judge Hale – 42 U.S.C. § 1983
Violation of Plaintiffs' Due Process and Equal Protection Rights Under the
U.S. Constitution by Seeking, Issuing, Serving, and Enforcing Warrants
Based on a Person's Failure to Make a Timely Money Payment
Without Considering the Person's Inability to Pay)

163.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every

allegation stated in paragraphs 1–133 above.

164.    The United States Constitution prohibits the jailing of indigent individuals due to

their poverty.

165.    Sherwood and District Court Judge Hale have sought, issued, and, with the active

assistance of the Sherwood Police Department, executed illegal arrest warrants against Class

Plaintiffs in violation of Class Plaintiffs' rights under the Fourteenth Amendment of the U.S.

Constitution. These arrest warrants were issued for a failure to pay previously imposed court

costs, fines, and fees despite Class Plaintiffs' inability to pay and without any meaningful inquiry

prior to the issuance of the arrest warrants as to Class Plaintiffs' ability or inability to pay. No

summons and opportunity to appear before the Sherwood District Court, to raise their inability to

pay, was afforded to Class Plaintiffs before the arrest warrants were issued. Class Plaintiffs were

served with warrants at their homes and arrested on those warrants because they could not pay a

sum of money to be released on their own recognizance pending a future court date.

166.    Sherwood's and Judge Hale's policy, practice, and/or custom is to issue and

execute thousands of arrest warrants each year for individuals, including Class Plaintiffs, based

on a failure to make a timely payment to the Sherwood District Court for previously imposed

court costs, fines, and fees. Sherwood's and the Sherwood District Court's policy, custom, and

practice is to issue these warrants prior to any judicial inquiry into each individual's ability to make the payment, or to a court finding that the individual willfully refused to make the court-ordered payment and that no alternatives to payment would fulfill the government's interest. Based on their policy, practice, and/or custom of issuing an arrest warrant instead of issuing a summons that directs an individual to appear for proceedings before the Sherwood District Court on non-payment, Sherwood and the Sherwood District Court also imposed additional fees and costs on individuals, including Class Plaintiffs.

167.    Sherwood's and the Sherwood District Court's policy, practice, and/or custom has been that individuals, including Class Plaintiffs, who could not make payment on previously imposed court costs, fines, and fees are not given notice that their ability or inability to pay is a critical issue standing between their freedom and incarceration. Sherwood's and the Sherwood District Court's policy, practice, and/or custom is a failure to afford any meaningful opportunity to an individual to raise his or her ability to make the payment before the arrest warrant is issued and an arrest made. As a result of these arrest warrants, individuals who owe money to the City are repeatedly arrested and jailed due to their poverty, in violation of the Fourteenth Amendment of the U.S. Constitution.

## COUNT TEN

(Defendant Sherwood and Defendant Judge Hale – 42 U.S.C. § 1983
Violation of Plaintiffs' Equal Protection Rights Under the U.S. Constitution by
Imposing Unduly Harsh and Punitive Restrictions on Debtors Whose Creditor Is
the Government Compared to Those Who Owe Money to Private Creditors)

168.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation stated in paragraphs 1–133 above.

169.    Under the Fourteenth Amendment, when a government seeks to recoup the cost of prosecution from criminal defendants, it may not impose unduly harsh or discriminatory

collection tactics just because the money is owed to the government rather than to a private creditor.

170.   Defendant Sherwood's and District Court Judge Hale's collection scheme, described above, imposes harsh, onerous, and arbitrary payment plans that can last for years on individuals, including Class Plaintiffs, convicted of criminal offenses and owing outstanding court costs, fines, and fees. In setting the payment amounts, Sherwood ignores federal and state exemptions and other protections afforded to indigent debtors owing money to private creditors in the State of Arkansas. Moreover, an individual's failure to make timely payments under a Sherwood payment plan results in Sherwood and District Court Judge Hale seeking and issuing arrest warrants and instituting and bringing new criminal charges for "failure to pay – contempt of court," such as those warrants that were issued and charges brought against Class Plaintiffs.

171.   Sherwood's payment plan terms require individuals, including Class Plaintiffs, to attend review hearings before the Sherwood District Court until the entire debt is paid. Individuals, including Class Plaintiffs, who are unable to make timely payments, due to their inability to pay, are threatened with and may be subjected to jail terms in the Pulaski County Jail. Sherwood also uses the Sherwood District Court to impose a new criminal charge for "failure to appear" if a defendant does not appear at a "review hearing."

172.   Sherwood's and District Court Judge Hale's policies, practices, and/or customs constitute arbitrary and invidious discrimination against indigent debtors, such as Class Plaintiffs, owing money to the local government, as compared to similarly situated debtors owing money to a private creditor, violating the fundamental constitutional principle of equal protection under the law.

## COUNT ELEVEN

(Defendants Sherwood and Pulaski County – Ark. Code § 16-123-105
Defendants Sherwood and Pulaski County Have Made Illegal Exactions
Under the Arkansas Constitution by Improperly Using and Applying Public Funds
Toward Unconstitutional and Unlawful Practices)

173.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every

allegation stated in paragraphs 1–133 above.

174.     Article 16, Section 13, of the Arkansas Constitution provides:

Illegal Exactions. Any citizen of any county, city or town may institute suit, in
behalf of himself and all others interested, to protect the inhabitants thereof
against the enforcement of any illegal exactions whatever.

Arkansas Constitution, Art. 16, § 13.

175.     Sherwood's and Pulaski County's unlawful and unconstitutional acts and

omissions, described above, constitute illegal exactions by Sherwood and Pulaski County in

violation of the rights of Plaintiff Axelroth, who is a taxpaying citizen of Sherwood and Pulaski

County. Taxpayer dollars have been misapplied and misused by Sherwood and Pulaski County in

the manner described above, including without limitation the unconstitutional imprisonment of

persons in the Pulaski County Jail for non-payment of monetary debts despite these persons'

inability to pay those debts and without any inquiry into whether they could pay.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request that this Court issue the following relief:

A.     With respect to Count One, a declaratory judgment that Sherwood, Pulaski
County, the Pulaski County Prosecutor, and District Court Judge Hale violated
Class Plaintiffs' rights, individually and as Class Representatives, under the
Fourteenth Amendment of the U.S. Constitution by imprisoning Class Plaintiffs
for failing to pay outstanding debts for court costs, fines, and fees despite their
inability to pay;

B.     With respect to Count Two, a declaratory judgment that Sherwood, Pulaski
County, the Pulaski County Prosecutor, and District Court Judge Hale violated
Class Plaintiffs' rights, individually and as Class Representatives, under the

Fourteenth Amendment of the U.S. Constitution by imprisoning them for failing to pay outstanding debts for court costs, fines, and fees without conducting any meaningful inquiry into Class Plaintiffs' ability to pay or into any alternatives to imprisonment;

C.     With respect to Count Three, a declaratory judgment that Sherwood, Pulaski County, and District Court Judge Hale violated Class Plaintiffs' rights, individually and as Class Representatives, under Article 2, Sections 8 and 16, of the Arkansas Constitution by imprisoning Class Plaintiffs for failing to pay outstanding debts for court costs, fines, and fees despite their inability to pay;

D.     With respect to Count Four, a declaratory judgment that Sherwood, Pulaski County, and District Court Judge Hale violated Class Plaintiffs' rights, individually and as Class Representatives, under Article 2, Sections 8 and 16, of the Arkansas Constitution by imprisoning Class Plaintiffs for failing to pay outstanding debts for court costs, fines, and fees without conducting any meaningful inquiry into Class Plaintiffs' ability to pay or into any alternatives to imprisonment;

E.     With respect to County Five, a declaratory judgment that Sherwood, Pulaski County, the Pulaski County Prosecutor, and District Court Judge Hale violated Class Plaintiffs' right, individually and as Class Representatives, to counsel under the Sixth and Fourteenth Amendments of the U.S. Constitution by imprisoning Class Plaintiffs without providing adequate counsel to represent Class Plaintiffs at judicial proceedings for failing to pay outstanding debts for court costs, fines, and fees and by failing to secure a knowing, intelligent, and voluntary waiver of counsel for such proceedings;

F.     With respect to Count Six, a declaratory judgment that Sherwood, Pulaski County, and District Court Judge Hale violated Class Plaintiffs' right, individually and as Class Representatives, to counsel under Article 2, Section 10, of the Arkansas Constitution by imprisoning Class Plaintiffs without providing adequate counsel to represent Class Plaintiffs at judicial proceedings for failing to pay outstanding debts for court costs, fines, and fees and by failing to secure a knowing, intelligent, and voluntary waiver of counsel for such proceedings;

G.     With respect to Count Seven, a declaratory judgment that Sherwood, Pulaski County, the Pulaski County Prosecutor, and District Court Judge Hale violated Class Plaintiffs' rights, individually and as Class Representatives, under the Fourteenth Amendment of the U.S. Constitution by failing to provide Class Plaintiffs with the minimal procedural safeguards required to satisfy due process before imprisoning Class Plaintiffs for failing to pay outstanding debts for court costs, fines, and fees that they were unable to pay;

H.     With respect to Count Eight, a declaratory judgment that Sherwood, Pulaski County, and District Court Judge Hale violated Class Plaintiffs' rights,

individually and as Class Representatives, under Article 2, Section 8, of the Arkansas Constitution by failing to provide Class Plaintiffs with the minimal procedural safeguards required to satisfy due process before imprisoning Class Plaintiffs for failing to pay outstanding debts for court costs, fines, and fees that they were unable to pay;

I.    With respect to Count Nine, a declaratory judgment that Sherwood and District Court Judge Hale violated Class Plaintiffs' equal protection rights, individually and as Class Representatives, under the Fourteenth Amendment of the U.S. Constitution by imposing harsher debt collection measures on debts owed to Sherwood than are imposed on debtors whose creditors are private entities;

J.    With respect to Count Ten, a declaratory judgment that Sherwood and District Court Judge Hale violated Class Plaintiffs' rights, individually and as Class Representatives, under the Fourteenth Amendment of the U.S. Constitution by seeking, issuing, and executing arrest warrants under which Class Plaintiffs were brought into custody for failing to pay outstanding debts for court costs, fines, and fees without any meaningful inquiry into Class Plaintiffs' ability to pay and without notice of the charge and an opportunity to be heard on the issue of Class Plaintiffs' ability to pay prior to Class Plaintiffs' arrest;

K.    With respect to Count Eleven, a declaratory judgment that Defendant Sherwood's and Pulaski County's actions and failures to act in carrying out the above-described unconstitutional and unlawful policies and practices are illegal exactions under Arkansas law;

L.    An order and judgment permanently enjoining Sherwood, Pulaski County, and the Pulaski County Prosecutor from enforcing the above-described unconstitutional policies and practices under the U.S. Constitution against Class Plaintiffs and the Class of similarly situated people that they represent;

M.    An order and judgment permanently enjoining Sherwood and Pulaski County from enforcing the above-described unconstitutional policies and practices under the Arkansas Constitution against Class Plaintiffs and the Class of similarly situated people that they represent;

N.    An order and judgment permanently enjoining Sherwood and Pulaski County from carrying out the above-described unconstitutional policies and practices in order to prevent the illegal exactions under the Arkansas Constitution that are caused by such policies and practices;

O.    A judgment against Sherwood and Pulaski County directing them to refund to Plaintiff Philip Axelroth and members of the Illegal Exaction Class any and all public funds misused by Sherwood and Pulaski County;

P.   An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 (against Sherwood, Pulaski County, and the Pulaski County Prosecutor), Ark. Code. Ann. § 26-35-902(a) (against Sherwood and Pulaski County), and otherwise; and

Q.   An order granting any other relief this Court deems just and proper.

Dated:  September 30, 2016

By: _____

Bettina E. Brownstein
**BETTINA E. BROWNSTEIN LAW FIRM**
904 West 2nd Street
Little Rock, AR 72201
Tel:  (501) 920-1764
bettinabrownstein@gmail.com
*On behalf of the Arkansas Civil Liberties*
*Union Foundation, Inc.*

Reggie Koch
**THE KOCH LAW FIRM**
2024 Arkansas Valley Drive, Suite 707
Little Rock, AR 72212
Tel:  (501) 223-5310
Fax:  (501) 223-5311
reggie@reggiekoch.com
*On behalf of the Arkansas Civil Liberties*
*Union Foundation, Inc.*

J. Alexander Lawrence
**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, NY 10019
Tel:  (212) 336-4092
Fax:  (212) 468-7900
ALawrence@mofo.com

Hallie N. Ryan
**LAWYERS COMMITTEE FOR**
**CIVIL RIGHTS UNDER THE LAW**
1401 New York Avenue, N.W., Suite 400
Washington, D.C. 20005
Tel:  (202) 662-8359
HRyan@lawyerscommittee.org

*Attorneys for Plaintiffs*