IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

CHARLES DADE, NAKITA LEWIS,
NIKKI PETREE, LEE ANDREW
ROBERTSON, and PHILIP AXELROTH,
individually and on behalf of all others
similarly situated                                                                PLAINTIFFS


v.                                        NO. 4:16CV-602 JM


CITY OF SHERWOOD, ARKANSAS;
PULASKI COUNTY, ARKANSAS;
LARY JEGLEY in his official capacity; AND
HONORABLE MILAS H. HALE, III,
in his official and individual capacities                                    DEFENDANTS


## SEPARATE DEFENDANTS' BRIEF IN SUPPORT OF
## MOTION FOR JUDGMENT ON THE PLEADINGS

Come now Separate Defendants, City of Sherwood, Arkansas, and Judge Milas H. Hale,

III (hereinafter "Judge Hale"), by and through their attorney and for their Brief in Support of their

Motion on the Pleadings, state:

## INTRODUCTION

Plaintiffs Dade, Lewis, Petree, and Robertson, brought suit against Separate Defendants on

August 23, 2016[1] alleging violations of the United States Constitution and Arkansas Constitution

by and through 42 U.S.C. § 1983 and the Arkansas Civil Rights Act (hereinafter "ACRA").

Plaintiff Axelroth alleges an illegal exaction allegedly in violation of the Arkansas Constitution

and specifically alleges illegal expenditures of public monies. The Separate Defendants, as well as

---

[1] Plaintiffs also named Pulaski County, Arkansas, as a defendant in this matter and have amended to add the elected
prosecutor for the Sixth Judicial District, Larry Jegley. All references to "Complaint" or "Amended Complaint"
herein reference the First Amended Complaint.

Pulaski County, have denied Plaintiffs' allegations of wrongdoing. However, even assuming *arguendo* the *facts* pled in this lawsuit and the governing law, the Plaintiffs' claims lack plausibility and should be dismissed for failure to state a claim. Furthermore, herein, Separate Defendants make various arguments that Plaintiffs, as a matter of law, are barred from asserting their claims and have failed to state a claim or facts upon which relief can be granted. As this Court is aware, the standard for a motion for judgment on the pleadings mirrors the standard for assessing a motion to dismiss. Based on the arguments herein, the amended complaint should be dismissed with prejudice.

## SUMMARY OF THE ARGUMENT

Plaintiffs' claims are meritless and are barred under law. First, since Judge Hale, is entitled to absolute judicial immunity from suit, liability, and discovery, all claims against him must be dismissed with prejudice and, as argued in the Separate Defendants' Motion to Stay, in the least discovery in this matter should be stayed pending a decision on Judge Hale's immunity defense. Further, in his official capacity, Judge Hale is not a "person" that can be sued under Section 1983 and is, in any event, immune and this suit is barred by the Eleventh Amendment.

Second, even assuming *arguendo* Judge Hale could be a valid party to this suit, the law is clear he is not and cannot be a final policymaker of the City of Sherwood such that his alleged acts could bind the City. On the contrary, pursuant to Amendment 80 of the Arkansas Constitution, Arkansas statutory law, and various binding caselaw, Judge Hale is an Arkansas state court judge whose acts are subject to review on appeal in state court and the entirety of the claims in this suit are barred as impermissible collateral attacks on Plaintiffs' state court convictions. Furthermore, Plaintiffs cannot properly allege—because it is factually incorrect—that the City of Sherwood has in place a policy, practice, or custom serving as the moving force behind any alleged constitutional

violation. On this basis the City must be dismissed as against all of Plaintiffs' claims. Next, as an independent reason dictating dismissal of all of Plaintiffs' claims against both Separate Defendants, the *Rooker-Feldman* doctrine, and the decision of *Heck v. Humhprey*, bar Plaintiffs' claims. As stated, if Plaintiffs believed or believe their convictions or sentences were unlawful in any respect, they were required to appeal through the state court system in their given criminal case and argue the same in those state court cases. Finally, Plaintiffs' illegal exaction claim fails because, based on the law and the facts alleged, there was no misapplication of public funds.

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(c) and (d) provides:

> After the pleadings are closed—but early enough not to delay trial—
> a party may move for judgment on the pleadings. If, on a motion
> under Rule 12(b)(6) or 12(c), matters outside the pleadings are
> presented to and not excluded by the court, the motion must be
> treated as one for summary judgment under Rule 56. All parties
> must be given a reasonable opportunity to present all the material
> that is pertinent to the motion.

(West).

Rule 12(c) motions should be reviewed under the same standards that govern Fed. R. Civ. P. 12(b)(6) motions. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) "Meritless claims should be disposed of at the first opportunity." *Hungate v. United States*, 626 F.2d. 60, 62 (8th Cir. 1980). For purposes of the motion only, courts should assume the well-pled factual allegations in the complaint are true, but should not blindly accept the complainants' legal conclusions. *Westcott*, 901 F.2d at 1488. However, Plaintiffs' allegations should not be deemed admitted for any other purpose.

A motion to dismiss is appropriately granted where a plaintiff fails to plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Plausibility determinations must be made as a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id*. at 679. As stated, Plaintiffs' legal conclusions have no bearing and must not be accepted as true when assessing a motion to dismiss even where a plaintiff attempts to couch them as factual allegations. *Papsan v. Allain*, 478 U.S. 265, 286 (1986).

## ARGUMENT

A. <u>The City of Sherwood must be dismissed because there is no allegation of a particular policy or custom of the City that allegedly caused any alleged constitutional violation.</u>

Plaintiffs' claims against Separate Defendants should be dismissed because Plaintiffs cannot show that Judge Hale was the final policymaker of the City who could allegedly bind the City through alleged unconstitutional actions; Plaintiffs fail to allege sufficient facts showing the City of Sherwood caused any alleged constitutional violation; and Plaintiffs do not properly allege a policy, practice, or custom served as the moving force behind the alleged constitutional violation. *Granda v. St. Louis*, 472 F.3d 565, 568 (8th Cir. 2007). The *Granda* case controls here and dictates the City must be dismissed from this case with prejudice. Furthermore, this specific issue has also been addressed in a nearly identical case this year, where the district court there granted the City of Austin's motion to dismiss. *Harris v. City of Austin*, 2016 WL 1070863, Slip Op., __F.Supp.2d__ (W.D. Tex. 3/16/16).

The Supreme Court has specifically held that municipalities may not be held liable for the acts of their employees under a *respondeat superior* theory (although, as will be shown below, Judge Hale is not a City Official, but is, rather, an Arkansas state court official, namely a state court judge). *Monell v. New York Dept. of Social Serv.*, 436 U.S. 658, 691 (1978). Instead, "[a]

4

plaintiff seeking to impose [municipal] liability is required to identify either an official policy or a widespread custom or practice [of the City's] that caused the plaintiff's injury." *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). "[A] municipal policy is not unconstitutional if it might *permit* unconstitutional conduct in some circumstances; it is unconstitutional only if it '*requires* its officers to act unconstitutionally.'" *Handle v. City of Little Rock*, 772 F.Supp. 434, 438 (E.D. Ark. 1991). A city may also be liable when city officials have notice of and exhibit deliberate indifference to "a prior pattern of unconstitutional conduct that is so 'persistent and widespread' as to have the effect and force of law." *Andrews v. Fowler*, 98 F.3d 1069, 1074-75 (8th Cir. 1996). ***But such alleged custom must be caused by the relevant City's employees or officials, not an Arkansas state official such a Judge Hale***. *See* Ark. Const. Amend. 80, §§ 1, 4, & 7. Furthermore, a complaint that fails to allege that a constitutional injury was the result of an official policy or widespread custom of the municipality is "insufficient, on its face, to state a claim" against the municipality. *Springdale Educ. Assn.*, 133 F.3d at 651.

While it is true that "a single act of a city official 'whose acts or edicts may fairly be said to represent official policy' may give rise to municipal liability" . . . "[a] municipality will only be liable under § 1983, where a city official 'responsible for establishing final policy with respect to the subject matter in question' makes a deliberate choice among competing alternatives that results in the violation of constitutional rights." *Granda v. St. Louis*, 472 F.3d 565, 568 (8th Cir. 2007).

The United States Court of Appeals for the Eighth Circuit clearly stated when a municipal judge can, and cannot, be the final policymaker for purposes of municipal policymaking in *Granda v. St. Louis*. In *Granda*, the Court determined a municipal judge can be a final policymaker when making an "administrative decision" but will *not* be the final policymaker when making a "judicial decision that is subject to review or reversal by higher state courts." *Id*. at 569. *Granda* cites

*Williams v. Butler*, 863 F.2d 1398, 1400 (8th Cir.1988), to illustrate an "administrative decision": "That case involved the administrative decision of a municipal judge to terminate his law clerks, rather than a judicial decision that is subject to review or reversal by higher state courts." *Granda*, 472 F.3d at 569.

Before proceeding, the position of a municipal judge in *Granda* and *Williams* must be addressed and distinguished from the role of a current Arkansas district court judge. The municipal judge system in Missouri, as addressed in *Granda,* allows cities to devise how they elect or appoint their municipal judges. *See* Mo. Ann. Stat. § 479.020 (West) ("The method of selection of municipal judges shall be provided by charter or ordinance."); *Howard v. City of Kansas City*, 332 S.W.3d 772, 776 (Mo. 2011) ("The selection of judges for the Kansas City municipal division is mandated by the voter-approved Kansas City Charter (the "charter"). The charter establishes a five-member Municipal Judicial Nominating Commission (the "commission"), which interviews applicants and submits a panel of three (3) qualified persons as nominees for any judicial vacancy to the mayor and city council). *Williams* dealt with the former Arkansas municipal judge system which allowed city wide elections or appointment by city officials; moreover, in certain instances, the "city judge" position was held by the city mayor. See Acts of 2003, Act 1185, § 144, eff. July 16, 2003 (repealing these provisions).

Arkansas state and federal law make clear Judge Hale is not a final policymaker who could bind Sherwood to liability for a decision made in a judicial capacity ruling on cases that come before him on a criminal docket when those cases are subject to appeal in the given criminal case to higher Arkansas state courts.

Most importantly, district courts are state courts, not municipal courts. Ark. Const. Amend. 80, § 7. Amendment 80 states: "The judicial power is vested in the Judicial Department ***of state***

*government*, consisting of a Supreme Court *and other courts established by this Constitution*."
*Id*. at § 1 (emphasis added). "The Supreme Court shall exercise general superintending control over all *courts of the state* . . . ." *Id*. at § 4. "District Courts are established as the trial courts of limited jurisdiction as to amount and subject matter, subject to the right of appeal to Circuit Courts for a trial de novo." *Id*. Then, a party has the right to appeal to the state appellate courts. *Id*. at § 11. There can be no doubt, Judge Hale is not a final policymaker of the City of Sherwood when acting in a judicial capacity, but is rather a public official and a state court judge.

Effective January 1, 2012, all city or municipal courts were consolidated with district courts and only continue to exist as departments of district courts. Ark. Code Ann. § 16-17-1202 (West). Finally, in Pulaski County at least some of the district court judges are elected county-wide and, specifically, Judge Hale is a county-wide elected state district court judge. Ark. Code Ann. § 16-17-921(C) (West). Accordingly, as a matter of law, Arkansas district courts are now solely state departments and district judges are public officials, not employees of cities. The City of Sherwood has no authority to elect, appoint, or otherwise guide the district court system, which precludes any finding of municipal liability for the actions of a district court judge. In that regard, the instant case presents a stronger case than *Granda* did for a finding that a state district judge cannot be a policymaker, final or otherwise, for a city in Arkansas.

Furthermore, assuming *arguendo* that Judge Hale were a municipal official, or employee—contrary to state law—there would still exist no grounds for holding the City of Sherwood liable for his alleged unconstitutional actions. Clearly, his actions are judicial in nature; therefore, he is entitled to absolute immunity, and as the Eighth Circuit ruled in *Granda,* municipalities cannot be liable in such circumstances. To preclude any doubt on this point, it is worth further discussing the *Granda* decision further.

7

In *Granda*, a mother claimed that the city was liable for a municipal judge's decision illegally incarcerating her for her daughter's truancy in violation of the municipal truancy ordinance. *Id.* at 566. She contended that the judge was the final city policymaker in regard to truancy matters because the judge was appointed by the mayor to the municipal court and assigned to the truancy docket where the judge applied the municipal truancy ordinance (these facts, even though they led to a favorable decision for the City in *Granda* are not even present in this case where Judge Hale is elected county-wide). *Id.* The lower District Court in *Granda* concluded that the mother's incarceration was not the result of the city's policy or custom. *Id.* at 567. The Eighth Circuit affirmed, reasoning that the truancy judge's decision in a case on her docket was "of a different nature than" decisions by officials in managerial offices in policymaking positions that could make decisions binding the municipality: like a prison director failing to discipline officers, a mayor ordering the unlawful removal of citizens, or a police superintendent making final human resources decisions. *Id.* at 568-69. Moreover, the judge's decision was not binding on the municipality because it was subject to review by higher state courts. *Id.* at 569.

The Court in *Granda* heavily distinguished *Williams* v. *Butler*, a case which permitted the possibility of municipal liability where a municipal judge illegally terminated his law clerks. 863 F.2d 1398, 1399 (8th Cir. 1988). This type of "administrative decision" is utterly lacking in the present case. Rather, here, Plaintiffs' Complaint fails to allege any facts showing that Judge Hale was the final policymaker for the City of Sherwood and, as a matter of law he is not. Plaintiffs merely allege that Judge Hale violated Plaintiffs' constitutional rights. This type of blanket allegation is indistinguishable from the allegations in *Granda*. That is, Plaintiffs allege that Judge Hale made judicial decisions in cases that came before him on his court docket. These decisions, like the decisions in *Granda,* could have been appealed through Arkansas's state courts (first

circuit court, then the Arkansas Court of Appeals, then the Arkansas Supreme Court, then pursuant to Ark. R. Crim. P. 37, then through *Habeas* review). Therefore, Judge Hale, was not a final policymaker for the City of Sherwood when adjudicating cases that came before him on his Court docket which were based on state law charges and adjudicated pursuant to state law by a state court judge and which were subject to appeal. The claims against Sherwood must be dismissed.

An important point about Plaintiffs' complaint must also be made here. The United States Supreme Court cases relied upon by Plaintiffs (at least in the media), such as *Bearden v. Georgia*, 461 U.S. 660 (1983), and *Tate v. Short*, 401 U.S. 395 (1971), were not collateral Section 1983 attacks; rather, they were (as is argued herein) on review to the Supreme Court of adjudications in the relevant criminal case against those petitioners. Furthermore, they were not class-action lawsuits collaterally attacking underlying state criminal proceedings. That fact is telling if not authoritative here. Nevertheless, absent a showing Judge Hale was a final policymaker for the City, there can be no municipal liability under § 1983 or the ACRA.

Finally, as noted above the Eighth Circuit ruled that there are no grounds for holding a city liable in the circumstances of this case, and many other courts have correctly reached the identical conclusion. *See, e.g., Bliven v. Hunt*, 478 F. Supp. 2d 332, 337 (E.D.N.Y. 2007), *aff'd*, 579 F.3d 204 (2d Cir. 2009) (holding municipal judges are not final policymakers for municipalities); *Ledbetter v. City of Topeka, Kansas*, 318 F.3d 1183, 1190 (10th Cir. 2003) (finding no municipal liability under *Monell* when a judge's clerk issued warrants the judge himself did not personally review using the judge's rubber stamp because it was not done under the auspices of the city and could not be interpreted as promulgating city policy); *Eggar v. City of Livingston*, 40 F.3d 312, 316 (9th Cir. 1994) (holding that judge's failure to inform indigent defendants of their right to counsel did not amount to municipal policymaking); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.

1992) (holding that a judge acting in his judicial capacity is not acting as a municipal official or lawmaker); *Woods v. City of Michigan City*, 940 F.2d 275, 279 (7th Cir. 1991) (holding that judge was acting as part of state judicial system but not as an official policymaker); *Deleon v. City of Haltom City*, 106 Fed. Appx. 909, *4 (5th Cir. 2004); *Harris v. City of Austin*, 2016 WL 1070863, Slip Op. at *7 (W.D. Tex. 3/16/16) ("Harris's allegation the City of Austin has an unconstitutional policy as to municipal court proceedings conducted by a judge in the exercise of his or her judicial authority does not support a claim for relief against the City under 42 U.S.C. § 1983.").

Further, of the many pages of Plaintiffs' First Amended Complaint, Plaintiffs fail to show how the City of Sherwood was directly involved in Plaintiffs' alleged "debtor's prison scheme." While Plaintiffs' allege that the City was involved through the acts of its agents, this argument fails because Amendment 80 to the Arkansas Constitution made Judge Hale and the District Court of Sherwood an Arkansas state court judge and state court respectively. Furthermore, both the Sherwood District Court and Judge Hale's position are state law mandates. Arkansas Code Annotated §§ 16-17-921(5)(A)(i) & (B)(ii) (West). It follows, that since the City of Sherwood does not maintain a municipal court system, as it has been consolidated with the Sherwood District Court pursuant to state statute, the City of Sherwood has no control or authority over any Sherwood District Court agent or the events that take place at the district court. Even before consolidating the courts, appeals from municipal courts still went to circuit court, then to the Court of Appeals and so on. The City has never had control over the judicial functions of the district court or the former municipal court. Thus, Plaintiffs cannot allege facts showing causation, a necessary element under Section 1983 and ACRA a Plaintiff must sufficiently plead and prove. That is, the district judge controls the way the Court operates and the City—even if the City is allegedly pleased with revenue from the Court—cannot cause any alleged constitutional violation.

Plaintiffs attempt to link the City of Sherwood ("the City") to the alleged actions of the Sherwood District Court and its agents by claiming that the City provides some funding to help the District Court operate, and further assert the City has control because the City collects proceeds as a result of the District Court's adjudications. Plaintiffs' attempt at alleging causation—by effectively alleging that Sherwood in part funds a state court system, and collects proceeds as a result of the District Court's adjudications—fails to establish causation as a matter of law and could only *arguably* succeed if there were no separation of powers between the separate branches of government. Also, Plaintiffs fail to acknowledge a State statute mandating the City of Sherwood pay part of Judge Hale's salary as well as other operating expenses of the Sherwood District Court. Ark. Code Ann. 16-17-115(b)(1)(A) (West). Simply because the City is following State law mandating its funding of the Sherwood District Court no way implies that the City has control over the actions of the Sherwood District Court or the agents thereof, and even if the City wanted to assert control over the Sherwood District Court's actions or the actions of the agents thereto, the principal of separation of powers would bar the same. *Thompson v. City of Austin*, 979 S.W.2d 676, 683 (Tex. App.—Austin 1998) (separation of powers precludes control over municipal judge's judicial functions).

Accordingly, the City of Sherwood is not in control of the judicial functions of the Sherwood District Court or any agent thereto, the City's payments to the Sherwood District Court in no way causes the City to have control, and even if it wanted control, separation of powers would bar the same. Again, the City must be dismissed from this lawsuit.

If the Court considers the *Granda* and *Harris* decisions finding that a judge like Judge Hale cannot bind the City because his actions are subject to review on direct appeal, and the Court considers the City has no control over the operations of the Sherwood District Court, it becomes

clear the Plaintiffs' request for injunctive relief fails to state a plausible claim against the City and is truly a clearly impermissible request for injunctive relief against Judge Hale, which is barred by judicial immunity per the 1996 Amendment to Section 1983 itself. Consequently, on this independent basis, all of Plaintiffs' claims and all of the relief Plaintiffs request is barred and must be dismissed.

Similarly, Plaintiffs' claims against the City of Sherwood may best be described by an analogous case *Cain v. City of New Orleans,* No. CV 15-4479, 2016 WL 2849478, (E.D. La. May 13, 2016). In *Cain*, class plaintiffs brought a Section 1983 action against various defendants, including the City of New Orleans and the District Court judge, alleging that they maintained an unconstitutional scheme of jailing indigent criminal defendants and imposing excessive bail amounts for non-payment of court costs. *Id.* at *1. As part of the class plaintiffs' argument in *Cain,* class plaintiffs alleged that the city was liable because it funded the District Court's collection officers as well as the police officers who executed the allegedly invalid arrest warrants. *Id.* at *3. In *Cain* the Court held that class plaintiffs did not identify any policy, practice, or custom supporting their alleged constitutional violations because class plaintiffs' argument rested on the premise that a municipal defendant is liable for following state statutes that mandate particular courses of action. *Id.* at *8. Accordingly, the court concluded that the City of New Orleans and the law enforcement authority were not liable because their actions were taken pursuant to state statue. *Id.*

Here, the Plaintiffs' claims against Separate Defendants are nearly identical as those in *Cain,* and the result is the same: Plaintiffs have not demonstrated a policy, practice, or custom because they base their causes of action on Separate Defendants' statutorily required conduct. First, Plaintiffs' allegations that the City and Judge Hale, established a policy, practice, or custom

by Judge Hale's issuing of arrest warrants. This claim is unavailing because under Arkansas law judges must issue arrest warrants for the arrest of a person charged with an offense when the judge has reasonable grounds to believe the charge. Ark. Code Ann. § 16-81-104 (West). Further, Plaintiffs' claim that the City of Sherwood is liable through its police officers that administered the warrants fails for the same reason because Arkansas law mandates that "warrant[s] shall command…officer[s]…to arrest the person named therein as offender." *Id.* Finally, the claim that Separate Defendants established a policy, practice, or custom based on Judge Hale's fines imposed for hot check violations must fail because Judge Hale, is required to issue penalties to hot check offenders (which Plaintiffs here admittedly are) according to the provisions set forth in Arkansas Code Annotated § 5-37-302. (West) and, further, he maintains continuing jurisdiction over a sentence of restitution. Arkansas Code Annotated § 16-93-311 (West). Accordingly, since Plaintiffs rest the basis of their claims' on Separate Defendants' statutorily required conduct, this conduct cannot serve as evidence of a sufficiently pled policy, practice, or custom and accordingly their claims must fail.

B.   Judge Hale, is Entitled to Absolute Judicial Immunity from Plaintiffs' Claims, for any Relief requested, and from Discovery.

a.   *Plaintiffs cannot sue Judge Hale in his individual capacity.*

Judge Hale, is immune from suit, liability, and discovery because he enjoys absolute judicial immunity. Regarding Plaintiffs' ACRA claims, in Arkansas, when judges act in their official capacity—meaning under Arkansas law, a Judge's "judicial capacity"—they are entitled to absolute immunity. *Robinson v. Langdon,* 333 Ark. 662, 669 (1998). Similarly, as to Plaintiffs' federal claims, Judge Hale is entitled to absolute judicial immunity from suit in this matter.

"Judicial immunity was first clearly articulated about 400 years ago in the case of *Floyd & Barker*, 12 Coke Rep., 77 Eng. Rep. 1305 (Star Chamber 1607)." *Kalmanson v. Lockett,* 848 So.

2d 374, 378 (Fla. 5th Dist. App. 2003). There "Lord Coke advised that judicial immunity insures the finality of judgments, protects judicial independence, deflects regular attacks on judges, and protects the legal system from falling into disrepute." *Id.* More recently, the United States Supreme Court explained, "the doctrine of judicial immunity is thought to be in the best interests of the proper administration of justice... [by allowing] a judicial officer, in exercising the authority vested in [him/her], [to] be free to act upon [his/her] own convictions, without apprehension of personal consequences to [himself/herself]." *Stump v. Sparkman*, 435 U.S. 349, 363 (1978). Judicial immunity also protects "judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants." *Forrester v. White*, 484 U.S. 219, 225 (1988).

An essential rationale behind judicial immunity is to protect "the finality of judgments, [by] discouraging ***inappropriate collateral attacks***..." 48A C.J.S. Judges § 215 (*citing Forrester*, 484 U.S. 219 (1988)) (emphasis added). This absolute immunity is not merely a defense to liability; rather, it provides the judicial official—here Judge Hale—with absolute immunity from suit. *Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985). Further, the Supreme Court states when a defendant pleads immunity, discovery shall be stayed until the immunity issue is resolved to prevent disrupting effective government. *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982). Courts stay discovery until issues of immunity are resolved because doing otherwise would cause the possibly immune party to unnecessarily undergo the rigors of the discovery process. Staying discovery is especially appropriate when the issue of judicial immunity arises because of the adverse effects discovery would have on the efficiency of the judiciary, and because of the nearly impenetrable nature of absolute judicial immunity. In this matter, Plaintiffs have already served 52 Requests for Production of Documents; Plaintiffs cannot seriously argue that this lawsuit and their attempt at discovery will not disrupt effective operation of the Sherwood District Court.

Judicial immunity is defeated only if a judge's actions can be characterized as non-judicial or if the actions were taken in "complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 12 (1991). "In order to determine whether an act by a judge is judicial, the Supreme Court has instructed the courts to consider whether the act is a function normally performed by a judge[,] and whether the judge was interacting with the complaining party in a judicial capacity." *Liles v. Reagan*, 804 F.2d 493, 495 (8th Cir. 1986). "[A] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump*, 345 U.S. at 356-57.

Here, there is no question that all interaction between Judge Hale, and Plaintiffs occurred while Judge Hale, was acting in his judicial capacity. Further, the facts also clearly show that while Judge Hale, was in his judicial capacity, his functions were those normally performed by a judge, in that he was sentencing offenders pursuant to state law. Finally, the facts do not indicate, nor do Plaintiffs assert that there was any indication that Judge Hale, was acting in clear absence of all jurisdiction. Accordingly, since Judge Hale, was acting in his official judicial capacity at all times relevant to this matter; since his functions were those normally performed by a judge; since he was interacting with the Plaintiffs; and since there is no indication that he was acting in clear absence of all jurisdiction, Judge Hale, is entitled to absolute immunity from suit, liability, and discovery.

     b. *Declaratory Relief and Discovery*

Plaintiffs ask for declaratory relief against Judge Hale, in their complaint and amended complaint. When Congress enacted the Federal Courts Improvement Act ("FCIA"), it amended § 1983 to change the Supreme Court's direction when it (the Supreme Court) held in *Pulliam v.*

*Allen* that judicial immunity is not a bar to prospective *injunctive* relief.[2] 466 U.S. 522 (1970). Since Congress's amendments, § 1983 now provides that "injunctive relief shall not be granted" in an action brought against "a judicial officer for an act or omission taken in such officer's judicial capacity…unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C.A. § 1983 (West). While the amendment makes clear that injunctive relief is now unavailable, it does not state whether or not declaratory relief may be issued *as against a judicial officer.* In this case, Plaintiffs (a) clearly believe they can seek declaratory relief against Judge Hale, but also (b) are truly seeking injunctive relief against Judge Hale disguised as requests for declaratory relief. Under the law, Plaintiffs cannot seek either.

First, Congress did not intend that declaratory relief be available *against a judge,* in enacting the FCIA. Indeed, courts have held that the availability of an appeal in a criminal case affords the party affected with the opportunity to seek declaratory relief via the appeal. *La Scalia v. Driscoll*, 2012 WL 1041456, unpublished, *7-8 (E.D.N.Y. 3/26/12) (quoting *LeDuc v. Tilley*, 2005 WL 1475334, *7 (D.Conn. 6/22/05)).

Although not mandatory authority for this Court, a good discussion appears in the decision of *Ray v. Judicial Corrections Services, Inc.*, 2014 WL 5090723 (N.D. Ala.). First, regarding immunity *from discovery* enjoyed by a judge, the Court, quoting another Federal Court, said: "'[t]he policy behind immunity does not merely extend to suits, it also extends to protection against discovery.'" *Id.* At *2 (quoting *In re Lickman*, 304 B.R. 897, 903 (Bank. M.D. Fla. 2004))[3].

As to declaratory relief, the Court there said: "It cannot be seriously disputed that, after the

---

[2] *Pulliam* did not involve declaratory relief.

[3] Consistent with United States Supreme Court precedent, Separate Defendants have concomitantly moved to stay this action, to at least include discovery, pending a determination on the immunity issues raised herein. *See Harlow v. Fitzgerald*, 475 U.S. 800, 818 (1982). To illustrate the true necessity for a stay, Plaintiffs have served 52 Requests for Production of Documents to the Separate Defendants and such will undoubtedly disrupt operations of a judicial official. Consequently, a stay pending resolution of the immunity defenses must be granted.

FCIA, judicial immunity typically bars claims for prospective injunctive relief against judicial officials acting in their judicial capacity." Quoting the Second Circuit Court of Appeals, the Court in *Ray*, admittedly in dicta, found that even declaratory relief *as against a judicial officer acting in his judicial capacity* would be barred by judicial immunity. *Guerin v. Higgins*, 8 Fed. Appx. 31, 32 (2d Cir. 2001). Indeed, this conclusion follows directly because of the purposes behind judicial immunity in the first place; the purpose being to protect the independence and efficient function of judicial operations. Plaintiffs can hardly argue there is any difference between allowing a damages action where discovery and the threat of damages would disrupt efficient operation of the district court and allowing a declaratory judgment action against Judge Hale, where they have already served 52 Requests for Production of Documents on the Judge.

In *Ray*, the court noted that Congress likely did not feel the need in the 1996 Amendment to Section 1983 to specifically state declaratory relief was *unavailable* against a judge because: 1) *Pulliam* did not involve declaratory relief, and 2) declaratory relief was never available against a judicial officer. 2:12-CV-02819-RDP, 2014 WL 5090723, at *4 (N.D. Ala. Oct. 9, 2014). Further, in *Moore v. Brewster*, the court expressly stated "judicial…immunity…is not limited to immunity from damages, but extends to actions for declaratory, injunctive and other equitable relief." 96 F.3d 1240, 1243 (9th Cir. 1996) (superseded by statute on other grounds). The court's argument in *Ray* and the court's holding in *Moore* have been upheld in countless courts, for decades, all across the Nation[4]. Not only has this argument and holding been upheld in countless courts all

---

[4] See *McGee v. Eaton*, 142 F.3d 444 (9th Cir 1998); *In re Lickman*, 304 B.R. 897 (Bankr. M.D. Fla. 2004); *Church of Scientology Intern. v. Kolts*, 846 F. Supp. 873 (C.D. Cal. 1994); *Mullis v. U.S. Bankr. Ct. for Dist. of Nevada*, 828 F.2d 1385, 1387 (9th Cir. 1987); *Ocasio v. Kozinski*, C 08-4820JF(PR), 2008 WL 5046288 (N.D. Cal. Nov. 25, 2008); *Jaffe v. Pregerson*, 2:11-CV-08363-SVW, 2012 WL 359300 (C.D. Cal. Feb. 2, 2012); *Patton v. Eng.*, CIVS070286FCDGGHPS, 2007 WL 708885, at *1 (E.D. Cal. Mar. 6, 2007), *report and recommendation adopted*, CIVS070286FCDGGHPS, 2007 WL 1063824 (E.D. Cal. Apr. 4, 2007); *Brewster v. Wingate*, C 14-3346 NJV (PR), 2014 WL 3866173 (N.D. Cal. Aug. 6, 2014); *Holmes-James v. Coughenour*, C11-1188-TSZ-JPD, 2011 WL 3793682, (W.D. Wash. July 26, 2011), *report and recommendation adopted*, C11-1188-TSZ, 2011 WL 3809643 (W.D. Wash. Aug. 25, 2011); *Barbour v. Chief Fed. Dist. J. Dist. of Hawaii Som*, CIV. 11-00210 LEK RL, 2011 WL 1337380 (D.

across the Nation, but, according to the Ninth Circuit, the Supreme Court has even concluded "a

seeming impregnable fortress in American Jurisprudence is the absolute immunity of judges from

civil liability for acts done by them within their judicial jurisdiction." *Gregory v. Thompson*, 500

F.2d 59, 62 (9th Cir. 1974) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Accordingly, since

Judge Hale, is a judicial officer; was acting in his judicial capacity at all times relevant to this

matter; and is entitled to absolute immunity, Plaintiffs' claims for declaratory relief against Judge

Hale, must fail.

Further, despite Plaintiffs' attempt to confine their request for injunctive relief to the City,

because as argued, the City has no control over a state court's operations, what Plaintiffs really

want is injunctive relief against Judge Hale. Clearly, they cannot obtain such relief per § 1983.

Furthermore, as stated, the FCIA does not state that Section 1983 permits declaratory relief *against*

*a judge*; it simple references whether declaratory relief is available somehow. And here declaratory

---

Haw. Apr. 6, 2011); *Gonsalves v. Unknown J.*, CIV. 12-00034 LEK, 2012 WL 214711 (D. Haw. Jan. 24, 2012); *Matthews v. O'Grady*, 115CV1162LMBTCB, 2016 WL 438972 (E.D. Va. Feb. 2, 2016), *aff'd*, 16-6214, 2016 WL 3074390 (4th Cir. June 1, 2016); *Stewart v. Cebull*, CV 14-121-BLG-SPW, 2014 WL 6610034 (D. Mont. Nov. 20, 2014), *appeal dismissed* (Apr. 6, 2015); *Evans v. Suter*, CIV.A. H-07-1557, 2007 WL 1888308 (S.D. Tex. June 29, 2007), *aff'd*, 260 Fed. Appx. 726 (5th Cir. 2007) (unpublished); *Horob v. Cebull*, CV 11-00055-BLG-DWM, 2011 WL 2160464 (D. Mont. June 1, 2011); *Harpole v. U.S.*, A00-0176-CV (HRH), 2000 WL 1868952 (D. Alaska Nov. 3, 2000); *Carr v. Mahone*, CIV.A. H-08-0132, 2008 WL 375501 (S.D. Tex. Feb. 11, 2008); *Tomel v. Hawaii*, CIV. 12-00047 LEK, 2012 WL 300567 (D. Haw. Jan. 31, 2012); *Grindling v. Martone*, CIV. 12-00361 LEK, 2012 WL 3011748 (D. Haw. July 20, 2012); *Shavelson v. Nakamura*, CV 15-00286 HG-BMK, 2015 WL 7451163 (D. Haw. Nov. 23, 2015), *reconsideration denied*, CV 15-00286 HG-BMK, 2015 WL 8215644 (D. Haw. Dec. 7, 2015); *Agbannaoag v. Hon. JJ. of Cir. Ct. of First Cir. of Hawaii*, CIV. 13-00205 BMK, 2013 WL 5325053 (D. Haw. Sept. 20, 2013); *Tia v. Mollway*, CIV. 11-00421, 2011 WL 2945813 (D. Haw. July 20, 2011); *Nakamoto v. Kay*, CIV. 12-00201 HG/KSC, 2012 WL 1536179 (D. Haw. Apr. 27, 2012); *Shavelson v. Valenciano*, 15-00047 JMS-KSC, 2015 WL 846534 (D. Haw. Feb. 26, 2015); *Williams v. Sumner*, CIV07-0914 FCD KJMP, 2007 WL 2727010 (E.D. Cal. Sept. 17, 2007), *report and recommendation adopted*, CIVS070914FCDKJMP, 2007 WL 3407335 (E.D. Cal. Nov. 14, 2007); *Gray v. Hamilton*, C 10-4614 RS PR, 2010 WL 4281812 (N.D. Cal. Oct. 25, 2010); *Kirkland v. Levi*, CIV S-06-2596FCDKJMP, 2007 WL 2317306 (E.D. Cal. Aug. 9, 2007), *report and recommendation adopted*, CIVS-062596 LEWKJMP, 2007 WL 3023291 (E.D. Cal. Oct. 15, 2007); *Proffitt v. Proffitt Children's Attorneys*, CIV S-06-2147DFLKJMP, 2007 WL 397120 (E.D. Cal. Jan. 31, 2007), *report and recommendation adopted*, CIV S062147 FCD KJM, 2007 WL 781770 (E.D. Cal. Mar. 7, 2007); *Greene v. Sutter*, C-97-3698-VRW, 1998 WL 46914 (N.D. Cal. Jan. 21, 1998); *Clark v. Alexander*, CV 13-02532-UA OP, 2013 WL 1800276 (C.D. Cal. Apr. 29, 2013); *Rogers v. County of San Diego*, 12-CV-1684-IEG MDD, 2013 WL 28774 (S.D. Cal. Jan. 2, 2013); *Ohman v. U.S. Dist. Ct. and Offices Thereof*, 96-3692 FMS, 1997 WL 85011 (N.D. Cal. Feb. 24, 1997); *Williams v. Damrell*, CIVS07-2191LKKGGHP, 2007 WL 4258175 (E.D. Cal. Dec. 3, 2007), *report and recommendation adopted*, CIV S-07-2191LKKGGHP, 2008 WL 941800 (E.D. Cal. Apr. 7, 2008); and several others.

relief is available. It is available against the State for the statutes criminalizing their conduct and allowing incarceration for their offenses to which they admit guilt or do not contest. Declaratory relief is available by appealing their criminal convictions as well. *La Scalia v. Driscoll*, 2012 WL 1041456, unpublished, *7-8 (E.D.N.Y. 3/26/12) (quoting *LeDuc v. Tilley*, 2005 WL 1475334, *7 (D.Conn. 6/22/05)). Because declaratory relief is available against the State, Judge Hale cannot be subject to this suit due to his immunity, for any type of relief, or discovery. Thus, in all respects Judge Hale is entitled to dismissal with prejudice of the entirety of this suit against him.

      *c.   Judge Hale must be dismissed in his official capacity.*

      As to a City, an official capacity lawsuit against a named individual is merely a lawsuit against the entity for which the individual works. But Judge Hale is not a City employee; rather, he is a state court judge. Ark. Const. Amend. 80. First, under ACRA and Section 1983, states are not "persons" that can be sued. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Newton v. Etoch*, 332 Ark. 325, 333-34, 965 S.W.2d 96 (1998). To the extent the Court were to find the suit against Judge Hale in his official capacity is an attempt to sue the State of Arkansas—though undersigned does not represent the State—the Plaintiffs never served the State under Rule 4 and the amended complaint must be dismissed. Nevertheless, even despite the fact the case against Judge Hale in his official capacity must be dismissed for lack of service on the State of Arkansas, if the Court were to find Judge Hale is a *State* official, then he cannot be sued under ACRA or Section 1983 in his official capacity. Furthermore, even despite the fact that the State has not been served, Plaintiffs' claims would be barred by sovereign immunity and the Eleventh Amendment to the United States Constitution. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Monroe v. Arkansas State* University, 495 F.3d 591, 594 (8th Cir. 2007); *Page v. McKinley*, 196 Ark. 331, 336-37, 118 S.W.2d 235 (1938);

C.  The *Rooker-Feldman* doctrine and *Heck v. Humphrey* bars to Plaintiffs' suit.

The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). The *Rooker-Feldman* doctrine bars a plaintiff's claims if "the requested federal relief would void the state court's judgment or amount to basically a reversal of the state court's holding." *See Ace Const. v. City of St. Louis*, 263 F.3d 831, 833 (8th Cir. 2001).

Here, Plaintiffs seek review of their Sherwood District Court rulings, which pursuant to the *Rooker-Feldman* doctrine they may not seek; rather, Plaintiffs could have sought review under the proper procedure for doing so in state court, even despite the fact most, if not all of the parties hereto, pled guilty. Ark. Code Ann. § 16-96-501 (West). Plaintiffs summarily request that this Court find that the Sherwood District Court's sentences violate their constitutional rights, and further ask this Court to enjoin Separate Defendants from carrying out the lawful court activities authorized by state statute. Accordingly, since Plaintiffs are impermissibly seeking review and reversal of the Sherwood District Court's sentences and asking that the future state statute violators go unpunished, Plaintiffs' claims are barred pursuant to the *Rooker-Feldman* doctrine.

The United States Supreme Court's ruling in *Heck v. Humphrey*, 512 U.S. 477 (1994), also bars the Plaintiffs' suit. In *Heck v. Humphrey* ("*Heck*"), the Court held:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid* a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486-87.

The *Heck* bar has been applied to claims for injunctive or declaratory relief and damages. *See Smith v. Norris,* 40 Fed. Appx. 305 (8th Cir. 2002) *(unpublished); and see also Rosendahl v. Norman*, 242 F.3d 376 (8th Cir. 2000). Here, Plaintiffs have not demonstrated that their convictions or sentences were terminated favorably to them, and, thus, their claims are barred by *Heck*. Plaintiffs seeks to enjoin enforcement of their sentences and convictions and argue the invalidity of their sentences and convictions; however, absent a showing of favorable termination, Plaintiffs' claims should be dismissed pursuant to *Heck v. Humphrey* and further barred by the *Rooker-Feldman* doctrine since Plaintiffs are impermissibly seeking review and reversal of Sherwood District Court's sentences.

D.  Plaintiffs' Claims are also Barred as Impermissible Collateral Attacks On Convictions.

Here, Plaintiffs assert that the Constitution permits them to collaterally attack their hot check convictions, but has been shown above they may not make these claims in a separate Section 1983 case; rather, they were required, and had the right to, appeal any conviction or sentence they believed to be illegal. Indeed, to the extent they are charged and convicted with prospective crimes for failure to make installment payments, they can appeal those convictions and make all the arguments they have made in this lawsuit and that is the appropriate venue to do so as discussed above. Plaintiffs allege that they were not advised of their appeal rights; however, at a base level, all persons are bound and required to know the law. As is well established, "ignorance of the law furnishes no excuse for any mistake..." *Whiteside v. U.S.*, 93 U.S. 247, 257 (1876). Plaintiffs appear to conflate indigence with alleged lack of knowledge or intelligence. Separate Defendants doubt there is even a correlation, but Plaintiffs presuppose these two things always occur together and that is a biased take by the Plaintiffs themselves. Persons are presumed to know the law, including

things like the Plaintiffs' appeal rights and duties. Surely, Plaintiffs would not agree a person could commit murder, for instance, then succesfully claim they didn't know such an act was illegal.

Furthermore, to the extent they allege their alleged indigence precludes their arrest or incarceration for failure to appear at court proceedings, those claims summarily fail even if they could collaterally attack their convictions here. Indigence has nothing to do with a party's failure to appear as directed by a Court, and that is certainly one of the claims Plaintiffs have made and must be dismissed independently, irrespective of the Court's rulings on the other arguments presented herein, for lack of facial plausibility under Fed. R. Civ. P. 12(b)(6) and (c).

Further, Plaintiffs' fines, costs, and restitution were lawfully ordered pursuant to Arkansas Code Annotated § 5-37-302. (West). Plaintiffs' complaint also appears to allege that state law should never allow a person who writes a hot check in a small amount to incur a given amount in fines and additional penalties for continued failures to pay the original indisputably lawful adjudicated sentence. Again, state law dictates what fines, costs, fees, and restitution are to be assessed a person guilty of writing a hot check and further grants continuing jurisdiction to a state district court over a sentence of restitution. Arkansas Code Annotated Arkansas Code Annotated § 16-93-311 (West). And, if Plaintiffs believe that is unlawful, again they should seek declaratory relief against the State of Arkansas, not the Separate Defendants herein. Such is also why Judge Hale cannot be sued for even declaratory relief based on judicial immunity, because various avenues of declaratory relief are available including appeal of their criminal convictions and sentences and declaratory relief against the State.

E. Plaintiffs' Illegal Exaction Claim is Without Merit Because the Funds the City of Sherwood Distributes to the Sherwood District Court is Pursuant to State Law, and as Such is not Misapplied.

Here, Plaintiffs purport to bring a public funds cause of action by alleging that the City of Sherwood is funding an illegal "scheme" through its payments to the Sherwood District Court. As previously stated, the City is mandated by state statute to provide certain funds to the District Court and certain personnel therein; accordingly, where the City is acting pursuant to state law mandates, there can be no misapplication of funds. Ark. Code Ann. § 16-17-1202 (West). Therefore, since there is no misapplication of funds, Plaintiffs claim against the City of Sherwood on the basis of an illegal exaction must fail.

Plaintiffs purport to bring a claim against the City of Sherwood on the basis of an illegal exaction in violation of the Arkansas Constitution; however, such a claim fails because the alleged misapplied funds of the City are mandated by the State of Arkansas to be spent on the Sherwood District Court. Under Article 16, Section13, of the Arkansas Constitution, there are two types of illegal exaction: 1) Public funds cases, and 2) Illegal tax cases. *White v. Ark. Capital Corp./Diamond State Ventures*, 226 S.W.3d 825, 830 (Ark. 2006).

Primarily, Sherwood has committed no constitutional violation, and its only involvement in this case is that involvement which is mandated by state law. Although, to the extent more argument on this point is necessary, the case of *Chapman v. Bevilacqua* is instructive.

In *Chapman*, the plaintiff filed an illegal exaction suit "against thirty-two private property owners in the City [of Fort Smith] seeking to recover from these defendants the value of repairs or rehabilitations of their private property, which had been accomplished in 1997 and 1998 through… federally funded housing programs[,] [Community Development Block Grants and Home funds.]" *Id*. at 265. "Overall, Chapman argued that while the purported beneficiaries under these federal and state housing programs are the citizens, because such improvements remedy urban blight, the

23

actual beneficiaries were the homeowners who benefited from the federal grants from taxpayer dollars." *Id*. at 266. "Chapman challenge[d] both the expenditure of federal funds processed through the City's general fund, as well as the use of the City's general fund money to pay a *de minimus* portion of some city employees' salaries to administer the program." *Id*. at 268. Her "argument [wa]s that the City unlawfully paid some employees to write checks for the federal housing programs, although the employees were paid from the City's general fund rather than from the federal funds." *Id*. at 273. The plaintiff specifically invoked Arkansas Constitution, Article 12, Section 5, which prohibits counties, cities, and towns, or other municipal corporations from becoming stockholders in any company, association or corporation, or from obtaining or appropriating money for, or loaning their credit to, any corporation, association, institution or individual. In response, "[t]he City argued that federal statutes provide for such rehabilitation programs, and that the City's compliance with these statutes render[ed] the program legal." *Id*. at 266.

The court upheld the use of city employee time to process payments related to the program, stating "using public funds for urban and rural redevelopment projects is a public purpose for which the government body, whether it be a city, county, the state, or a housing authority, has the sole ability to control." *Id*. at 273. The court also stated that "[o]ur statutes allow the City to do exactly what it did in furtherance of this legitimate public purpose, and this court has specifically determined that such expenditures are not unconstitutional under Article 12, § 5, of the Arkansas Constitution. Therefore, there is no illegal exaction under Art. 16, § 13, of the Arkansas Constitution." *Id*. Similarly, the City of Sherwood's use of city employees' time to execute warrants, and otherwise operate a police department is "in furtherance" of a "legitimate public purpose." Indeed, even more than *Chapman*, here the City of Sherwood is only following statutory

mandates. Accordingly, funding an employee's salary cannot constitute an illegal exaction or an illegal use of public funds.

Also, Plaintiffs' complaints about invalid warrants all stem from judicial operations and not from any inadequacy in the warrants themselves. As such, plaintiffs appear to call into question warrants without actually attacking the constitutionality of the warrants for the purposes of their illegal exaction claim. Nowhere in the plaintiffs' complaint do they raise the credibility of the warrants or deny that probable cause existed in their execution. Here, the "clearest indication that [the City of Sherwood] acted in an objectively reasonable manner . . . [is] the fact that a neutral magistrate has issued a warrant." *Messerschmidt v. Millender,* -- U.S. -- ,132 S.Ct. 1235, 1245 (2012). The inquiry does not end here; however, for Plaintiffs to continue, they must prove the City of Sherwood's officers violated the Fourth Amendment by providing information, or omitting information, either deliberately, or in reckless disregard of the truth, upon submitting the affidavit for arrest. *Franks v. Delaware,* 438 U.S. 154, 171 (1978). As set forth by the Supreme Court in *Franks*, in order to prevail on a challenge to a to a finding of probable cause following issuance of a warrant, the Plaintiff must show, 1) that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit, and 2) that the affidavit's remaining content is insufficient to establish probable cause. *Id*. Plaintiffs offer no allegations on this point, and can offer none. There are simply no allegations that the City of Sherwood has spent a cent of taxpayer monies on an unconstitutional act. The general complaints about warrants are without purpose unless Plaintiffs are challenging the warrants themselves, which they have declined to do.

Further, even if Plaintiffs were challenging the validity of the warrants, again, their pleas or determinations of guilt preclude their exaction claim. Again, Plaintiffs had a right and a duty to appeal if they believed probable cause was lacking for the warrants, their sentences were unlawful,

or the like. Accordingly, the bar on collaterally attacking their sentences also operates here to defeat their illegal exaction claim. They were required to appeal their convictions or sentences and have a favorable termination of the proceedings on appeal before they could challenge the constitutionality of those convictions or sentences in this Court. Without their appeal and favorable termination, there is simply no basis to argue any expenditure of funds was unlawful because the underlying acts which they claim here are unlawful cannot be collaterally attacked. Thus, their claim fails and must be dismissed.

Therefore, there is no evidence that the City of Sherwood engaged in an illegal exaction, and as a matter of law they have only acted within the bounds of the United States' and Arkansas Constitution. Thus, the plaintiffs' complaint should be dismissed with prejudice.

## CONCLUSION

Based on the foregoing, Plaintiffs' Amended Complaint must be dismissed with prejudice *in toto*.

Respectfully Submitted,

**SEPARATE DEFENDANTS,**
City of Sherwood, Arkansas,
and Judge Hale,
in his official and individual capacities

BY:   /s/ Michael Mosley
        Michael Mosley, Ark. Bar No. 2002099
        Attorney for Separate Defendants
        Post Office Box 38
        North Little Rock, AR 72115
        TELEPHONE: (501) 978-6131
        FACSIMILE: (501) 978-6561
        EMAIL: mmosley@arml.org

## CERTIFICATE OF SERVICE

I, Michael Mosley, hereby certify that on October 6, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

**Bettina E. Brownstein**
BETTINA E. BROWNSTEIN LAW FIRM
904 West 2nd Street
Little Rock, AR 72201
Tel: (501) 920-1764
bettinabrowstein@gmail.com

**J. Alexander Lawrence**
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 336-4092
Fax: (212) 468-7900
alawrence@mofo.com

**Reggie Koch**
THE KOCH LAW FIRM
2024 Arkansas Valley Drive, Suite 707
Little Rock, AR 72212
Tel: (501) 223-5310
Fax: (501) 223-5311
reggie@reggiekoch.com

**Hallie N. Ryan**
LAWYERS COMMITTEE FOR CIVIL RIGHTS UNDER THE LAW
1401 New York Avenue, N.W., Suite 400
Washington, D.C. 20005
Tel: (202) 662-8359
hryan@lawyerscommittee.org


/s/ Michael Mosley
Michael Mosley, Ark. Bar No. 2002099