IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CHARLES DADE, NAKITA
LEWIS, NIKKI PETREE,
LEE ANDREW
ROBERTSON,
and PHILIP AXELROTH,
individually and on behalf
of all others similarly
situated                                                                PLAINTIFFS

VS.                             CASE NO. 4:16CV602 JM

CITY OF SHERWOOD,
ARKANSAS;
PULASKI COUNTY,
ARKANSAS; LARRY
JEGLEY, in his official
capacity; and
HONORABLE MILAS H.
HALE, III; in his
official and individual
capacities                                                              DEFENDANTS

**BRIEF IN SUPPORT OF MOTION
FOR JUDGMENT ON THE PLEADINGS BY SEPARATE DEFENDANT, PULASKI
COUNTY, ARKANSAS**

INTRODUCTION

The Plaintiffs, Charles Dade, Nakita Lewis, Nikki Petree, Lee Andrew Robertson,

and Philip Axelroth, filed their Complaint on August 23, 2016, and their First Amended

Complaint on September 30, 2016, making numerous allegations of constitutional

violations in the Sherwood District Court. Plaintiffs maintain the Sherwood District

Court is operating a type of illegal debtors' prison. They assert Pulaski County violated

their federal and state constitutional rights by: (1) imprisoning them for non-payment

of debts despite their inability to pay; (2) imprisoning them for non-payment of debts

with no inquiry into their inability to pay the debts; (3) imprisoning them for non-payment of debts without appointing counsel or securing a knowing and intelligent waiver of counsel; (4) imprisoning them for non-payment of debts without satisfying the minimum requirements of due process; and (5) making illegal exactions by improperly using and applying public funds toward unconstitutional and unlawful practices.

## STANDARD

Fed. R. Civ. P. 12(c) provides, "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." A motion for judgment on the pleadings is reviewed under the same standard as a 12(b)(6) motion to dismiss for failure to state a claim. *Ashley County v. Pfizer*, 552 F.3d 659, 665 (8th Cir. 2009). In deciding a motion for judgment on the pleadings the court "must accept as true all factual allegations set out in the complaint, and must construe the complaint in the light most favorable to the plaintiff, drawing all inferences in his favor." *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Id*. Although materials or evidence outside of the pleadings are not available for review under a motion for judgment on the pleadings, "courts may rely on matters within the public record." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 802 (8th Cir. 2002).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to

relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007) (internal citations and quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotations omitted).

## ARGUMENT

Plaintiffs, as a matter of law, fail to state claims against Pulaski County. To successfully make a § 1983 claim against a municipality, a plaintiff must make allegations of a municipal policy or custom that caused the alleged constitutional violation. The Plaintiffs have presented only formulaic allegations against Pulaski County. Plaintiffs' claims are also barred under *Heck v. Humphrey* and the *Rooker-Feldman* doctrine as unlawful challenges to their convictions and sentences. Regarding their illegal exaction claims, the Plaintiffs cannot successfully make a claim. Federal courts are restrained from exercising jurisdiction over claims challenging state tax administration under the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, and general principles of comity. The illegal exaction alleged by the Plaintiffs does not fit within the state-law definition of an illegal exaction prohibited by Arkansas law. Pulaski County is entitled to judgment as a matter of law on all of Plaintiffs' claims.

## I.   The Complaint Fails to Allege a Pulaski County Policy or Custom

Municipal liability only arises if a constitutional injury results from an "action pursuant to official municipal policy of some nature." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). While a municipal policy may be a written policy of the

governmental entity, it does not have to be. A municipal policy may also be established through actions taken by official policymakers of the municipality. The official policymaker, however, "must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Pembauer v. City of Cincinnati*, 475 U.S. 469, 483 (1986). "[O]nly those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (internal citations omitted). "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." *Pembauer*, 475 U.S. at 483. In determining whether an individual is an official policymaker for a municipality, "the trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).

Plaintiffs fail to allege any facts in the First Amended Complaint supporting a claim of a Pulaski County policy or custom that led to the alleged violations of their constitutional rights. There is no allegation of a documented policy to violate the constitutional rights of the Plaintiffs. The closest Plaintiffs come to such an allegation is that the Defendants made an agreement in the 1970s to funnel hot check cases to the Sherwood court. Assuming such an agreement, it hardly encompasses an

agreement to perpetrate unconstitutional acts, and Plaintiffs allege no terms of the agreement or how terms were an official policy statement of Pulaski County.

Although Sherwood District Court is technically a department of Pulaski County District Court under Ark. Code Ann. § 16-17-921, Pulaski County has no supervisory authority over or involvement in the Sherwood District Court. Pulaski County does not fund Sherwood District Court.

The district courts of Arkansas came into existence with the adoption of amendment 80 to the Arkansas Constitution. Amendment 80, § 7(A) states, "District Courts are established as the trial courts of limited jurisdiction as to amount and subject matter, subject to the right of appeal to Circuit Courts for a trial de novo." Section 7 further establishes that the Arkansas Supreme Court will set the jurisdictional amount and subject matter of civil cases in district courts, district courts will have original jurisdiction (concurrent with circuit courts) of misdemeanors, and each county will have at least one district court. Section 4 of amendment 80 states that the Arkansas Supreme Court "shall exercise general superintending control over all courts of the state." Amendment 80 became effective in July 2001. Ark. Const. amend. 80, § 21. Again, assuming an agreement as alleged by Plaintiffs, its currency ended with the adoption of amendment 80, long before Plaintiffs' causes of action accrued. As a matter of law, Pulaski County cannot be responsible for the conduct of the Sherwood District Court.

The constitutional superintending authority is reiterated in Ark. Code Ann. § 16-10-101:

> (a) The Supreme Court shall have general superintending control over the administration of justice in all courts in the State of Arkansas. The

> Chief Justice of the Supreme Court shall be directly responsible for the efficient operation of the judicial branch and of its constituent courts and for the expeditious dispatch of litigation therein and the proper conduct of the business of the courts.
>
> (b)    (1) Under rules prescribed by the Supreme Court, the Chief Justice may require reports from all courts of the state and may issue such orders and regulations as may be necessary for the efficient operation of those courts to ensure the prompt and *proper administration of justice* and may assign, reassign, and modify assignments of circuit and district court judges to hold, upon a temporary basis, regular or special sessions for the transaction of civil or criminal business within any other such court.
>
>     (2) The lower courts shall keep such adequate and uniform records as are required by law or as may be required by rule or order of the Supreme Court.

(emphasis added). The Sherwood District Court's power and authority are authorized and governed by the State of Arkansas, not Pulaski County.

Pulaski County does not fund the operations or salaries of the Sherwood District Court. In counties of populations of 250,000 or more, the operations and salaries of the district courts are paid by the city in which the district court is located. Ark. Code Ann. § 16-17-119(a). Arkansas law states, "No portion of these expenses shall be paid by the county in which the court is located." Ark. Code Ann. § 16-17-119(b). Pulaski County's population was estimated at 392,664 as of July 1, 2015. U.S. Census Bureau, http://www.census.gov/quickfacts/table/PST045215/05119. Absent some direct control by the County over the operation of the court, the officers and employees of the Sherwood District Court cannot be official policymakers of Pulaski County.

Elected state prosecutors are state officials. The language of the Arkansas Constitution and Code places the duties and power of state prosecutors squarely within the authority of the state, not county governments. The qualifications and

election of state prosecutors is governed by section 20 of amendment 80 to the Arkansas Constitution:

> A Prosecuting Attorney shall be elected by the qualified electors of each judicial circuit. Prosecuting Attorneys shall have been licensed attorneys of this state for at least four years immediately preceding the date of assuming office. They shall be qualified electors within the judicial circuit from which they are elected and shall reside within that geographical area at the time of the election and during their period of service. They shall serve four-year terms.

The Arkansas Constitution also grants prosecutors their power and authority to charge criminal offenses. Amendment 21, § 1 states, "All offenses heretofore required to be prosecuted by indictment may be prosecuted either by indictment by a grand jury or information filed by the Prosecuting Attorney."

Further, the Arkansas General Assembly specifies duties of state prosecutors, spanning prosecution of crimes to establishing a law library in the judicial district. These duties are found at Ark. Code Ann. §§ 16-21-102 (opinion on criminal matters to be given to public officers), 16-21-103 (duty to commence and prosecute criminal actions, 16-21-104 (summoning witnesses before grand jury), 16-21-105 (justice of the peace to notify prosecutor of pendency of certain criminal proceedings – duty of prosecutor), 16-21-106 (assistance to victims and witnesses of crimes), 16-21-108 (child support enforcement – participation in federal programs – collection and assessment of costs), 16-21-110 (report of, and payment over of, moneys received – penalties for noncompliance), and 16-21-111 (law library).

State prosecutors are members of the executive branch of state government. In *State v. Murphy*, 315 Ark. 68, 864 S.W.2d 842 (1993), the Arkansas Supreme Court closely examined the roles of the trial court and prosecutor. Discussing amendment 21, § 1, the Court stated:

7

> Our state constitution reserves the duty of charging an accused to the prosecutor or to the grand jury. Ark. Const. amend. 21, § 1. This court has preserved the separation of powers between the executive branch and the judicial branch by holding that when the trial court amends an information over the state's objection, the trial court has encroached upon the prosecutor's constitutional duties and breached the separation of powers.

*Id*. at 72, 864 S.W.2d at 844. As state constitutional officers, prosecutors are paid by the state based on authority from the General Assembly. *See* Ark. Const. amend. 21, § 2.[1]

State prosecutors are not identified as county officers in the Arkansas Code. The Code establishes that only assessors, coroners, recorders, sheriffs, surveyors, treasurers, clerks, and collectors are county officials whose duties and powers are defined by statute. *See* Ark. Code Ann., Title 14, Subtitle 2. Prosecution of crime is not enumerated for county officials. *See* Ark. Code Ann. §§ 14-16-101 through 14-16-808. This power rests solely with state prosecutors.

Arkansas supervises it prosecutors through the Office of Prosecutor Coordinator. The Office of Prosecutor Coordinator is a state entity established by the Arkansas General Assembly to coordinate the efforts of prosecutors around the state. *See* Ark. Code Ann. § 16-21-201 *et seq*. The Prosecutor Coordinator provides training, office and trial manuals, standardized criminal litigation forms, a comprehensive criminal law brief bank, and a crisis center for emergency research for and assistance to prosecutors and other things. Ark. Code Ann. § 16-21-204. The Coordinator exchanges information between state prosecutors and the Arkansas Attorney General

---

[1]  Salary Information for the Pulaski County prosecutor can be found at https://www.ark.org/dfa/transparency/employee_compensation_detail.php?id=11173.

in preparation for criminal appeals. *Id*. State prosecutors must provide monthly fee reports to the Office of Prosecutor Coordinator. Ark. Code Ann. § 16-21-205.

Like elected state prosecutors, deputy prosecutors are also state actors. They are appointed and supervised by the elected prosecuting attorney and are paid by the state. "Prosecuting attorneys shall have the power to appoint all deputies and employees without confirmation of any court or tribunal." Ark. Code Ann. § 16-21-145. Further, "Deputy prosecuting attorneys shall be appointed by elected prosecuting attorneys without confirmation of any court or tribunal and may be removed at any time by the prosecuting attorneys appointing them." Ark. Code Ann. § 16-21-153(b). The Arkansas Code defines the duties of deputy prosecuting attorneys. Ark. Code Ann. § 16-21-113(c)(1) states:

> The deputy prosecuting attorney provided for in this section shall have authority to file an information with any justice of the peace, municipal court judge, or the circuit court of his judicial district, in the name of the prosecutor charging any person with the commission of any offense against the laws of this state.

Further:

> When any person shall have been arrested under a warrant issued in accordance with the provisions of this section, it shall be the duty of the deputy prosecuting attorney to attend and prosecute such charges *on behalf of the state*. He shall in a similar manner attend and prosecute *on behalf of the state* in any criminal case pending before any justice of the peace or municipal court judge or in the circuit court of his judicial district, when so requested by the justice of the peace, municipal court judge, or the prosecuting attorney of the judicial district.

Ark. Code Ann. § 16-21-113(d) (emphasis added). The fact that deputy prosecutors are state employees is stated in Ark. Code Ann. § 16-21-157(a): "On January 1, 2000, all

deputy prosecuting attorney shall become state employees." The salaries of deputy prosecutors are paid by the state.[2]

As Plaintiffs may point out, Pulaski County provides some funding to the Pulaski County Prosecutor's Office. Arkansas counties must provide funding for "facilities, equipment, supplies, salaries and benefits of existing support staff, and other office expenses for elected prosecuting attorneys and deputy prosecuting attorneys." Ark. Code Ann. § 16-21-156. The equipment, supplies, and support staff are <u>not official policymakers</u> of Pulaski County and cannot reasonably be seen as affecting prosecutorial decisions in the Sherwood District Court. Regarding prosecution of hot checks, the Pulaski County Prosecuting Attorney, a state official not a Pulaski County official, has final policymaking authority.

The First Amended Complaint presents no evidence of a Pulaski County policy that led to the alleged violations of Plaintiffs' constitutional rights, and therefore fails to state a claim against Pulaski County. Plaintiffs do not allege that a documented Pulaski County policy led to the alleged violations. They also cannot point to any action taken by a Pulaski County policymaker that led to the alleged violations. Plaintiffs maintain actions were taken by Sherwood District Court employees and personnel, Judge Milas H. Hale, III, the Pulaski County Prosecutor Larry Jegley, and Pulaski County deputy prosecutors, resulting in the constitutional violations. None of these individuals, however, is an official or policymaker of Pulaski County.

---

[2] *See* Employee Salaries, By Agency, Auditor of State, Prosecuting Attorney: <u>https://www.ark.org/dfa/transparency/employee_compensation.php?ina_sec_csrf=74f9 61a227cb8f8cdb8482250d251ce5&do:employee_compensation&tab=byagency#emplo yeecompensation_3_5_drilldown</u>.

To the extent Plaintiffs allege that Pulaski County violated their rights by operating the Pulaski County Regional Detention Facility ("PCRDF"), the facility where they were held, they again fail to state a claim. They can point to no policy of Pulaski County to imprison people in violation of their constitutional rights. Quite the opposite is true. Pulaski County's policy is to detain people under official court orders, court directives (speed letters), or warrants. If an individual is held subsequent to an arrest, PCRDF has policies to ensure they are brought before a judge in a timely manner. Once a judge orders that an individual be held, however, PCRDF has no decision-making authority regarding how long that individual is detained. The individual is released when a judge orders it. This is only proper because PCRDF has not been granted the power to adjudicate offenses or to determine whether the basis for detention is justified. These are decisions left to the courts.

## II.    The Plaintiffs' Claims Are Barred by *Heck v. Humphrey* and the *Rooker-Feldman* Doctrine

Plaintiffs challenge both their convictions and sentences received from the Sherwood District Court. Such claims are barred under *Heck v. Humphrey* and the *Rooker-Feldman* doctrine.

In *Heck v. Humphrey*, the United States Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid*, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. 2254.

512 U.S. 477, 486-487 (1994) (emphasis added). *Heck* applies with equal force to claims for declaratory relief. *See Edwards v. Balisok*, 520 U.S. 641, 643-644 & 648 (1997).

Plaintiffs' allegations challenge the validity of the convictions and the sentences imposed. Plaintiffs' convictions are challenged by their allegations they were not provided counsel or a knowing, intelligent waiver of the right to counsel. If this Court determines Plaintiffs were entitled to counsel, and that they were unlawfully deprived of their right to counsel, their convictions must be overturned. In *Smith v. Lockhart*, 923 F.2d 1314, 1322 (8th Cir. 1991), the Court granted habeas relieve finding the petitioner's Sixth Amendment right to counsel was violated. His conviction was overturned and a new trial was ordered. *Id*.

The validity of the convictions and sentences is also challenged by Plaintiffs' allegations they were not provided adequate procedural due process safeguards prior to their convictions and sentences. The Plaintiffs assert they were deprived of the following procedural safeguards: notice of the principle that ability to pay is a critical issue in the proceeding, using a form (or equivalent process) to elicit relevant financial information, an opportunity at the hearing to respond to statements and questions regarding financial status, an express finding by the court that defendants have the ability to pay, and/or the right to state-appointed counsel. There are also allegations throughout the Complaint that the Sherwood District Court denied the Plaintiffs the right to be heard on the charges against them. If this Court determines Plaintiffs' procedural due process rights were violated prior to conviction and sentence, their convictions must be overturned and their sentences vacated. In *Edwards*, the plaintiff

was a state inmate who alleged procedural due process defects in his disciplinary proceeding. 520 U.S. at 643-644. The Court determined that the procedural defects, if established, called into question the validity of the final judgment in the disciplinary proceedings, and the claim was barred. *Id*. at 647-648. A determination that Plaintiffs' procedural due process rights were violated would invalidate Plaintiffs' convictions and sentences.

Plaintiffs directly challenge their sentences to jail time because they assert their sentences to jail time resulted from a failure to pay and unconstitutional because they could not afford to pay. They also assert their sentences to jail time were unconstitutional because the court made no inquiry into their ability to pay. If such sentences were unconstitutional, then they must be overturned.

The *Rooker-Feldman* doctrine prevents federal courts from reviewing a state court's final judicial determination. "Under the legislation of Congress, no court of the United States other than this Court [can] entertain a proceeding to reverse or modify the [state court] judgment." *Rooker et al. v. Fidelity Trust Co. et al.*, 263 U.S. 413, 416 (1923).

> In determining whether <u>Rooker-Feldman</u> applies in a particular case, a federal court must determine whether the claim before it is "inextricably intertwined" with the claim already decided in the state court. "A claim brought in federal court is inextricably intertwined with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it.'" "Where the district court must hold that the state court was wrong in order to find in favor of the plaintiff, the issues . . . are inextricably intertwined."

*Silverman v. Silverman*, 338 F.3d 886, 893 (8th Cir. 2003) (internal citations omitted). The Plaintiffs request this Court determine the validity of the process through which they were convicted and the constitutionality of the proceedings and their sentences.

The issues presented before this Court and those decided by the Sherwood District Court are inextricably intertwined.

States provide avenues by which to challenge the constitutionality of a conviction or a sentence. The rule of *Heck v. Humphrey* and the *Rooker-Feldman* doctrine exist to prevent relitigation in federal court of issues that were or could have been litigated in state court. Plaintiffs had a right to appeal their convictions or sentences. A defendant convicted and sentenced in an Arkansas district court may appeal that conviction and/or sentence to the circuit courts. Amendment 80 section 7(A) provides that "[d]istrict courts are established as the trial courts of limited jurisdiction as to amount and subject matter, subject to the right of appeal to Circuit Courts for a trial de novo."  Not only are defendants in district court allowed to appeal their conviction and sentence in district court to the circuit courts, but they are given a trial *de novo* in circuit court. This means the appeal is not a review of actions taken by the district court but a relitigation of the entire case in the circuit court. None of the Plaintiffs ever exercised their rights of appeal, so their challenges here are barred by *Heck v. Humphrey* and the *Rooker-Feldman* doctrine.

### III.     Failure to State An Illegal Exaction Claim

Plaintiffs' illegal exaction claim against Pulaski County should be dismissed, and judgment entered for Pulaski County. At the outset, it is necessary to identify the public monies Plaintiffs allege were illegally spent. As established above, Pulaski County does not fund Sherwood District Court. It is not possible for Pulaski County public monies to be illegally expended on the Sherwood District Court. Mandated funding of prosecutor operations by Pulaski County is limited to funding for the

facilities, office costs, and salaries of support staff of the Pulaski County Prosecutor's Office. No Pulaski County public monies are spent on the salaries of the Pulaski County Prosecutor or Pulaski County deputy prosecutors. The County's expenditures do not affect policy of the prosecuting attorney, and Plaintiffs do not allege the nature of the County's expenditures or how they affect policy decisions of the prosecutor.

Pulaski County also funds operation of the PCRDF. Plaintiffs fail to allege any action taken by the PCRDF, other than detention under a facially valid court order, that violates their constitutional rights. Expenditures on the PCRDF support detentions not challenged by Plaintiffs. Assuming Plaintiffs state a claim for unlawful detention against the County, they cannot separate the cost of their detention from the cost of all other detentions. The PCRDF exists to serve the needs of the judicial system in the County as a whole, not just Sherwood.[3]

Plaintiffs fail to associate any Pulaski County custom or policy with the alleged constitutional violations. With no action taken in furtherance of a custom or policy, it is difficult to understand how Plaintiffs can successfully present an illegal exaction claim against Pulaski County.

Further, federal courts are restrained under the TIA and general principles of comity from exercising jurisdiction over Plaintiffs' illegal exaction claims. The TIA states that district courts "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. As the District Court for the Western District of Arkansas explained in *Northwest Ark. Home Builders Ass'n v. City of*

---

[3] To the extent Plaintiffs are arguing an illegal exaction based on other expenditures, the arguments presented below apply equally.

*Rogers*, 2008 U.S. Dist. LEXIS 19772, *5, 2008 WL 615927 (W.D. Ark. March 3, 2008), "The TIA's broad restriction on federal court jurisdiction over state and local tax matters reflects 'the importance of the taxing power to the operation of state governments as well as the desire of the Congress to restrain federal courts from unduly interfering with state revenue collection.' *Collins Holding Corp. v. Jasper County, S.C.*, 123 F.3d 797, 799 (4th Cir. 1997)." "[T]he TIA applies to taxes imposed by municipalities as well as those imposed by states." *Id.* at *5-6. Discussing its holding in *Hibbs v. Winn*, 542 U.S. 88, 108 (2004), the Court in *Levin v. Commerce Energy Inc.*, 560 U.S. 413, 425 (2010), stated "The [TIA], we explained, 'restrain[ed] state taxpayers from instituting federal actions to contest their [own] liability for state taxes,' suits that, if successful, would deplete state coffers." (internal citations omitted). In *Hibbs*, the Court reviewed cases in which federal courts were restrained from deciding state tax issues. 542 U.S. at 106. The Court concluded, "Like [*California v. Grace Brethren Church, 457 U.S. 393* (1982)], all of them fall within [TIA's] undisputed compass: All involved plaintiffs who mounted federal litigation to avoid paying state taxes (or to gain a refund of such taxes). Federal-court relief, therefore, would have operated to reduce the flow of state tax revenue." *Id*.

If this Court determines Pulaski County's expenditure of public monies was illegal due to the alleged constitutional violations, the assessment, levy and collection of Pulaski County taxes will be restrained. The Plaintiffs request they be refunded taxes spent on alleged constitutional violations. Such a remedy is prohibited by the TIA because it would reduce tax revenue. A ruling in favor of Plaintiffs would place the hands of the federal government into the tax coffers of Pulaski County. Pulaski

County's tax revenues would be depleted by refunding any amount of tax to the Plaintiffs. A ruling in favor of the Plaintiffs on the illegal exaction claim would require a holding, either express or implied, that the expenditure of Pulaski County monies on items associated with the alleged constitutional violations is unconstitutional and illegal. Expenditures, once ruled unconstitutional and illegal, must be discontinued. It is difficult to foresee the Court granting a refund of monies illegally expended without also prohibiting such expenditures in the future. Further, as required under the TIA, Arkansas law provides a plain, speedy and efficient remedy for the Plaintiffs. "[A] state-court remedy is plain, speedy and efficient only if it provides the taxpayer with a full hearing and judicial determination at which she may raise any and all constitutional objections to the tax." *Grace Brethren Church*, 457 U.S. at 411 (internal quotations and citations omitted). Arkansas provides such a state court remedy through her circuit courts. Plaintiffs' illegal exaction claim is made under Arkansas state law, and Arkansas state courts are more than capable of deciding this claim. Through the Arkansas court system the Plaintiffs would be granted a full hearing and judicial determination. They could further present all constitutional objections.

Even if this Court determines it is not restrained under the TIA, it is still prohibited from taking action under general principles of comity. Comity is defined as:

> [A] proper respect for state functions, a recognition of the fact that the entire county is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. . . . What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Younger v. Harris*, 401 U.S. 37, 44 (1971). In *Levin,* the United States Supreme Court stated: "More embracive than the TIA, the comity doctrine applicable in state taxation cases restrains federal courts from entertaining claims for relief that risk disrupting state tax administration." 560 U.S. at 417. Addressing illegal tax claims associated with § 1983 civil rights violations, the Minnesota District Court explained the effect of comity: "[T]he Supreme Court has [ ] held that general principles of comity bar federal courts from granting damages relief in such cases." *Kraemer v. Minn. Dep't of Revenue*, 2002 U.S. Dist. LEXIS 18158, *9-10, 2002 WL 31116645 (D. Minn. September 24, 2002) (citing *Fair Assessment in Real Estate Assoc., Inc. v. McNary*, 454 U.S. 100, 105 (1981)). In *McNary*, a case in which the plaintiffs requested refunds, the Court held that suits for damages under § 1983 are subject to the general principles of comity because

> [T]he recovery of damages under the Civil Rights Act first requires a "declaration" or determination of the unconstitutionality of a state tax scheme that would halt its operation. And damages actions, no less than actions for an injunction, would hale state officers into federal court every time a taxpayer alleged the requisite elements of a § 1983 claim. We consider such interference to be contrary to "[the] scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts."

454 U.S. at 107 (quoting *Matthews v. Rodgers*, 284 U.S. 521, 525 (1932)). The Court concluded that

> [T]axpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts. Such taxpayers must seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete, and may ultimately seek review of the state decisions in this Court.

*Id*. at 116.

A ruling in favor of Plaintiffs on the illegal exaction claim would disrupt the administration of Pulaski County's tax system. This is a consequence precluded under the TIA and general principles of comity.

As a logical proposition, the illegal exaction claim brought by Plaintiffs cannot be the type of claim contemplated by Article 16, section 13 of the Arkansas Constitution. There are two types of illegal exaction claims available under Article 16: "'public funds' cases, where the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent, and 'illegal-tax' cases, where the plaintiff asserts that the tax itself is illegal." *McGhee v. Ark. State Bd. of Collection Agencies*, 360 Ark. 363, 370, 201 S.W.3d 375, 379 (2005). Plaintiffs maintain that public funds generated from tax dollars are being illegally spent. They assert that because the constitutional rights of the Plaintiffs were allegedly violated, any spending of public funds on the system in which their constitutional rights were violated constitutes an illegal exaction. Public funding illegal exaction claims are meant to challenge unconstitutional or illegal programs, projects or agencies, not constitutional violations that occur within the larger governmental framework. Plaintiffs do not challenge the legitimacy of the Sherwood District Court or its exercising jurisdiction over cases falling outside the scope of their allegations.

If Plaintiffs' theory of illegal exaction is correct, violation of an individual's constitutional rights by a government office would render the entire governmental framework illegal and subject the entity to an illegal exaction claim. Every instance of failure to provide counsel or delay of speedy trial will be met with an illegal exaction claim against the city or county. Every instance of deliberate indifference to medical

care in a jail will be met with an illegal exaction claim against the city or county. Every habeas corpus petition will be accompanied by an illegal exaction claim against the city or county. This cannot be the intention of the Arkansas Constitution. The United States Supreme Court warned of such an outcome in *McNary*. 454 U.S. at 107. Determining a "refund" in such cases and pinpointing the public funds spent on each constitutional violation would be practically impossible and a burden on the federal judiciary.

Finally, even if Plaintiffs succeed in their illegal exaction claim, they can only recover those monies illegally expended subsequent to filing their Complaint. Regarding Arkansas's illegal exaction statute, the Arkansas Supreme Court has held, "[T]axes paid before the filing of an illegal-exaction complaint are considered to have been voluntarily paid" and cannot be recovered. *Weiss v. Chavers*, 357 Ark. 607, 614, 184 S.W.3d 437, 441 (2004). Quoting *Mertz v. Pappas*, 320 Ark. 368, 370, 896 S.W.2d 593, 594 (1995), the Court in *Weiss* explained the rule:

> When taxes are paid to a government they are deposited into that government's general revenues and ordinarily are spent within that tax year. However, when the government is put on notice that it may be required to refund those taxes, it can make the appropriate allowance for a possible refund. If we were to allow refunds for taxes voluntarily paid in previous years, it would jeopardize current and future governmental operations because current and future funds might be necessary for the refund.

357 Ark. at 614-615, 184 S.W.3d at 441. Arkansas courts allow for one exception to the general rule that taxes paid prior to the commencement of litigation are voluntary: taxes paid under coercion. *Weiss* at 615, 441. Such coercion, however, "must consist of some actual or threatened exercise of power possessed by the party exacting or receiving payment over the person or property from which the latter has no reasonable

means of immediate relief except by making payment." *Chapman & Dewey Land Co. v. Board*, 172 Ark. 414, 416, 288 S.W. 910, 911 (1926). The only coercion alleged in the First Amended Complaint is coercion by the Sherwood District Court and the Sherwood police department to force payments of fines and fees from defendants in Sherwood's hot check court. There are no allegations the Defendants coercing tax payments.

<u>CONCLUSION</u>

Plaintiffs have failed to state a claim for which relief can be granted, and make allegations over which this court lacks jurisdiction. Pulaski County is entitled to judgment as a matter of law dismissing the First Amended Complaint.

**Fuqua Campbell, P.A.**
Attorneys at Law
3700 Cantrell Road, Suite 205
Little Rock, Arkansas 72202
501-374-0200
Attorneys for Pulaski County

By: David M. Fuqua
Ark. Bar No. 80048
E-mail: dfuqua@fc-lawyers.com

**/s/ Patrick Spivey**
By: Patrick Spivey
Ark. Bar No. 2002089
Email: pspivey@fc-lawyers.com

**/s/ Annie Depper**
By: Annie Depper
Ark. Bar No. 2009267
E-mail: adepper@fc-lawyers.com

## CERTIFICATE OF SERVICE

I, David M. Fuqua, hereby certify that I filed the foregoing on the Court's CM/ECF system and served counsel of record on October 21, 2016:

Michael Mosley, Esq. (mmosley@arml.org)

Bettina E. Brownstein, Esq. (bettinabrownstein@gmail.com)

J. Alexander Lawrence, Esq. (alawrence@mofo.com)

Reggie Koch, Esq. (reggie@reggiekoch.com)

Hallie N. Ryan, Esq. (hryan@lawyerscommittee.org)

David M. Fuqua