**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| CHARLES DADE, NAKITA LEWIS, NIKKI PETREE, LEE ANDREW ROBERTSON, and PHILIP AXELROTH, individually and on behalf of all others similarly situated, | Case No. 4:16-cv-00602-JM-JJV |
| Plaintiffs, | |
| v. | |
| CITY OF SHERWOOD, ARKANSAS, PULASKI COUNTY, ARKANSAS, LARRY JEGLEY in his official capacity, AND HONORABLE MILAS H. HALE, III, in his official and individual capacities, | |
| Defendants. | |

**PLAINTIFFS' RESPONSE IN OPPOSITION
TO MOTION TO DISMISS BY DEFENDANT LARRY JEGLEY**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

STATUS OF THE CASE ......................................................................................................... 2

ARGUMENT ........................................................................................................................... 3

I.     PLAINTIFFS HAVE PROPERLY ALLEGED CLAIMS AGAINST
      DEFENDANT LARRY JEGLEY IN HIS OFFICIAL CAPACITY ............................... 3

     A.     Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) ............................................. 3

     B.     Legal Standards for Section 1983 Claims ............................................................ 4

          1.     Section 1983 Claims Against a State Actor ............................................. 4

          2.     Plaintiffs Have Sufficiently Stated Claims for Relief Under
               Section 1983 Against Defendant Larry Jegley ........................................ 5

II.    UNDER *EX PARTE YOUNG* THE ELEVENTH AMENDMENT DOES NOT
     BAR PLAINTIFFS' CLAIMS AGAINST DEFENDANT LARRY JEGLEY ................. 9

III.   PLAINTIFFS HAVE PROPERLY ALLEGED THAT DEFENDANT
     LARRY JEGLEY'S ACTIONS HAVE A CAUSAL CONNECTION TO
     THE VIOLATION OF PLAINTIFFS' RIGHTS ........................................................... 14

IV.   PLAINTIFFS HAVE STANDING AGAINST DEFENDANT LARRY JEGLEY ........ 17

V.    *YOUNGER* ABSTENTION DOES NOT APPLY .......................................................... 18

CONCLUSION ....................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*281 Care Comm. v. Arneson*,
   638 F.3d 621 (8th Cir. 2011) ..........................................................................................10, 12

*Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*,
   405 F.3d 1298 (11th Cir. 2005) .............................................................................................20

*Almodovar v. Reiner*,
   832 F.2d 1138 (9th Cir.1987) ................................................................................................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................................... 1, 4, 9

*Baltzer v. Birkett*,
   2003 WL 366577 (N.D. Ill. Feb. 19, 2003) ..........................................................................20

*Bearden v. Georgia*,
   461 U.S. 660 (1983) ...............................................................................................................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................... 1, 4, 9, 17

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ...................................................................................................3

*Cain v. City of New Orleans*,
   2016 WL 1598606 (E.D. La. Apr. 21, 2016).........................................................................20

*Cash v. Cty. of Erie*,
   654 F.3d 324 (2d Cir. 2011)...................................................................................................15

*Citizens for Equal Prot. v. Bruning*,
   455 F.3d 859 (8th Cir. 2006) .................................................................................................12

*Digital Recognition Network, Inc. v. Hutchinson*,
   803 F.3d 952 (8th Cir.2015) ..................................................................................................18

*Doe v. Piper*,
   165 F. Supp. 3d 789 (D. Minn. 2016).....................................................................................12

*Doran v. Eckold*,
   362 F.3d 1047 (8th Cir. 2004),
   *rev'd on other grounds en banc*, 409 F.3d 958 (8th Cir. 2005)...............................................14

ny-1259454

*Erickson v. Pardus,*
    551 U.S. 89 (2007) ...................................................................................... 3, 15, 16

*Evans v. Chalmers,*
    703 F.3d 636 (4th Cir. 2012) ........................................................................ 16

*Ex parte Young,*
    209 U.S. 123 (1908) ................................................................................ 2, 9, 10, 13

*Fenner v. Lyles,*
    2016 U.S Dist. LEXIS 150616 (E.D. Ark. Oct. 13, 2016) ........................... 3

*Fond du Lac Band of Chippewa Indians v. Carlson,*
    68 F.3d 253 (8th Cir. 1995) .......................................................................... 13

*Guggenberger v. Minnesota,*
    2016 U.S. Dist. LEXIS 99039 (D. Minn. July 28, 2016) ............................ 13

*Hackenmueller v. Fadden,*
    2016 U.S. Dist. LEXIS 96250 (D. Minn. July 22, 2016) ............................ 14

*Hafer v. Melo,*
    502 U.S. 21 (1991) ...................................................................................... 5, 9

*Hager v. Ark. Dep't of Health,*
    735 F.3d 1009 (8th Cir. 2013) ...................................................................... 3

*Haney v. Portfolio Recovery Assocs., L.L.C.,*
    2016 U.S. App. LEXIS 17287 (8th Cir. Sept. 21, 2016) .............................. 4

*Hayden v. Nev. Cty.,*
    664 F.3d 770 (8th Cir. 2012) ........................................................................ 14

*Heartland Acad. Cmty. Church v. Waddle,*
    427 F.3d 525 (8th Cir. 2005) ........................................................................ 9

*Hoggard v. Arabi Cattle Co.,*
    2016 U.S. Dist. LEXIS 54123 (E.D. Ark. Apr. 22, 2006) ........................... 4

*Holder v. State,*
    58 Ark. 473 (1894) ...................................................................................... 7

*Hungate v. United States,*
    626 F.2d 60 (8th Cir. 1980) .......................................................................... 3

*Jernigan v. Crane,*
    64 F. Supp. 3d 1260 (E.D. Ark. 2014) ....................................................... 11, 12

iii

*Kentucky v. Graham*,
473 U.S. 159 (1985)........................................................................................5, 10

*Lee v. Borders*,
764 F.3d 966 (8th Cir. 2014) .......................................................................4

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)........................................................................................17

*Mo. Child Care Ass'n v. Cross*,
294 F.3d 1034 (8th Cir. 2002) ....................................................................13

*Mo. Prot. & Advocacy Servs., Inc. v. Carnahan*,
499 F.3d 803 (8th Cir. 2007) .......................................................................11

*Moncier v. Jones*,
2012 WL 262984 (E.D. Tenn. Jan. 30, 2012)...........................................20

*Murray v. Earle*,
405 F.3d 278 (5th Cir. 2005) .......................................................................16

*O'Shea v. Littleton*,
414 U.S. 488 (1974)........................................................................17, 20, 21

*Obergefell v. Hodges*,
135 S. Ct. 2584 (2015)..................................................................................12

*Powers v. Hamilton Cty. Pub. Def. Comm'n*,
501 F.3d 592 (6th Cir. 2007) .......................................................................20

*Ray v. Judicial Corr. Servs.*,
2013 WL 5428360 (N.D. Ala. Sept. 26, 2013)....................................17, 20

*Rodriguez v. Providence Cmty. Corr., Inc.*,
155 F. Supp. 3d 758 (M.D. Tenn. 2015)....................................................20

*Roe v. Humke*,
128 F.3d 1213 (8th Cir. 1997) .......................................................................4

*Sanchez v. Pereira-Castillo*,
590 F.3d 31 (1st Cir. 2009)....................................................................15, 16

*Sprint Commc'ns, Inc. v. Jacobs*,
134 S. Ct. 584 (2013)....................................................................................19

*Townes v. City of New York*,
176 F.3d 138 (2d Cir. 1999)........................................................................16

iv

*Trombley v. Cty. of Cascade*,
  1989 U.S. App. LEXIS 23946 (9th Cir. July 12, 1989)..........................................................20

*Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*,
  535 U.S. 635 (2002)..........................................................................................................9

*West v. Atkins*,
  487 U.S. 42 (1988)..........................................................................................................4

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989)..........................................................................................................5

*Young v. City of St. Charles*,
  244 F.3d 623 (8th Cir. 2001) ..........................................................................................3

*Younger v. Harris*,
  401 U.S. 37 (1971)..........................................................................................18, 19, 20, 21

STATUTES

Ark. Code Ann.
  § 16-13-703(a) ..........................................................................................................12
  § 16-21-103..........................................................................................................8
  § 16-21-120..........................................................................................................9
  § 16-21-1109..........................................................................................................11

v

Plaintiffs submit this memorandum in opposition to the Fed. R. Civ. P. 12(b)(6) motion to dismiss filed by Defendant Larry Jegley ("Jegley").[1]

## PRELIMINARY STATEMENT

Mr. Jegley moves to dismiss all claims against him, largely on the theory that the other Defendants in this case—the City of Sherwood, Honorable Milas H. Hale, III, and Pulaski County—are solely to blame for the constitutional violations Plaintiffs suffer. Thus, Mr. Jegley argues (1) that Plaintiffs' First Amended Complaint (the "Complaint" or "Compl.") fails to allege that Mr. Jegley, acting in his official capacity, has any connection to Plaintiffs' harm; (2) that Plaintiffs have not properly alleged a causal link in their § 1983 claims against him; and (3) that Plaintiffs have not demonstrated a case or controversy involving him. He also asks that the Court abstain from hearing this case. Mr. Jegley's arguments ignore, and are inconsistent with, the detailed factual allegations in the Complaint and the case law in this Circuit for actions under 42 U.S.C. § 1983. Accordingly, his motion should be denied in its entirety.

_First_, in his moving brief, Mr. Jegley misconstrues the detailed factual allegations in the Complaint demonstrating that he, in his official capacity as the Prosecuting Attorney for the Sixth Judicial District of Arkansas, is an integral part of the illegal debt collection scheme that has ensnared the Plaintiffs and is directly resulting in violations of their federal constitutional rights. He also urges this Court to apply what is effectively a probability standard to find that alternate explanations for Plaintiffs well-pleaded facts excuse him of liability—an approach that was rejected in _Twombly_ and _Iqbal_ and that improperly fails to view Plaintiffs' allegations most favorably to Plaintiffs, as required.

---

[1] _See_ Motion to Dismiss Amended Complaint, ECF No. 25; Brief in Support of Larry Jegley's Motion to Dismiss, ECF No. 26 ("Jegley's brief" or "Jegley Br.").

*Second*, in arguing that the Eleventh Amendment bars suit against him, Mr. Jegley misapplies the rule of *Ex parte Young*.  Because Plaintiffs allege an ongoing violation of federal law and seek prospective relief, they need only allege that Mr. Jegley had "some connection" with the illegal debt collection scheme to maintain their § 1983 claim against him in his official capacity.  That other actors—the City of Sherwood, Judge Hale, and Pulaski County—are also involved in perpetrating that scheme cannot absolve Mr. Jegley in his official capacity, particularly where the Complaint describes the Prosecuting Attorney's specific acts as a progenitor of and necessary participant in the Defendants' unconstitutional efforts to recover costs, fines, and fees from individuals who cannot afford to pay.

*Third*, for similar reasons, the Complaint properly states a § 1983 claim against Mr. Jegley, and the Plaintiffs have demonstrated standing to sue, by sufficiently alleging a causal connection between Mr. Jegley's actions and the violations of Plaintiffs' constitutional rights. Again, Mr. Jegley's claim that the acts of the City of Sherwood, Judge Hale, and Pulaski County are intervening forces that absolve him of liability is incorrect.  Mr. Jegley is responsible for not only participating in the debt collection scheme, but also for setting in motion a series of acts that he knows, or reasonably should know, inflicts constitutional harm.

*Finally*, Mr. Jegley's plea for this Court to abstain from hearing this case is based on the mistaken premise that Plaintiffs have asked the Court to intervene in pending state criminal cases.  Plaintiffs have not, and multiple courts have found that challenges to the kind of illegal post-conviction debt collection scheme at issue here do not present the kind of "exceptional circumstances" that could warrant this Court's abstention.

## STATUS OF THE CASE

Plaintiffs filed their original class action complaint on August 23, 2016, against Defendants City of Sherwood, Arkansas ("Sherwood"), Honorable Milas H. Hale, III ("Judge

Hale"), and Pulaski County, Arkansas ("Pulaski County").  Plaintiffs served their First Amended

Complaint (the "Complaint") on September 30, 2016, adding Mr. Jegley as a defendant.

Mr. Jegley did not answer the Complaint and, instead, on October 19, 2016, moved to dismiss

under Fed. R. Civ. P. 12(b)(6).  *See* ECF No. 25.

On October 6, 2016, Sherwood and Judge Hale served their answer to the Complaint,

denying and contesting Plaintiffs' allegations, while simultaneously serving a Motion for

Judgment on the Pleadings.  Pulaski County served its answer to the Complaint on October 21,

2016, and, in a separate motion, also moved for judgment on the pleadings.  Plaintiffs are

responding to those motions separately.  *See* ECF Nos. 31, 32, 37, 38.

## ARGUMENT

### I.  Plaintiffs Have Properly Alleged Claims Against Defendant Larry Jegley in His Official Capacity

#### A.  Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

"The federal rules of pleading are very liberal, and summary dismissal of a civil action on

the basis of the pleadings alone is a drastic remedy in federal practice."  *Hungate v. United*

*States*, 626 F.2d 60, 62 (8th Cir. 1980).

When considering a motion to dismiss under Rule 12(b)(6), the court must accept as true

all of the complaint's factual allegations and view them most favorably to plaintiffs, drawing all

reasonable inferences in their favor.  *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Hager v.*

*Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013); *Young v. City of St. Charles*, 244 F.3d

623, 627 (8th Cir. 2001).  The court should "read the complaint as a whole, not parsed piece by

piece to determine whether each allegation, in isolation, is plausible."  *Braden v. Wal-Mart*

*Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009); *see Fenner v. Lyles*, 2016 U.S Dist. LEXIS

150616, at *3 (E.D. Ark. Oct. 13, 2016).

ny-1259454

The Complaint need not provide "detailed factual allegations," but rather "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must review the plausibility of each of Plaintiffs' claims as a whole, not the plausibility of each individual allegation. *Haney v. Portfolio Recovery Assocs., L.L.C.*, 2016 U.S. App. LEXIS 17287, at *10 (8th Cir. Sept. 21, 2016). This plausibility standard, however, is not a "probability requirement." *Iqbal*, 556 U.S. at 678. Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556; *Hoggard v. Arabi Cattle Co*., 2016 U.S. Dist. LEXIS 54123, at *3 (E.D. Ark. Apr. 22, 2006).

B.    Legal Standards for Section 1983 Claims

1.    Section 1983 Claims Against a State Actor

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Roe v. Humke*, 128 F.3d 1213, 1215 (8th Cir. 1997). With respect to Mr. Jegley, Plaintiffs are suing him solely in his official capacity as the Prosecuting Attorney for the Sixth Judicial District of the State of Arkansas (the "Prosecutors Office")[2] for prospective and injunctive relief. Compl. ¶ 26.[3] Because Mr. Jegley is being sued in his official capacity, Plaintiffs must also allege facts

---

[2] Mr. Jegley does not dispute that, with respect to his actions described in the Complaint, he was acting under color of state law. *Lee v. Borders*, 764 F.3d 966, 971 (8th Cir. 2014).

[3] Mr. Jegley is an elected state official. Because Plaintiffs are only seeking prospective injunctive and declaratory relief against Jegley in his official capacity, he is a "person" for purposes of § 1983, *Will v. Mich. Dep't of State*

showing that the Prosecutors Office's policy or custom "played a part in the violation of federal law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Kentucky v Graham*, 473 U.S. at 166).

> 2. <u>Plaintiffs Have Sufficiently Stated Claims for Relief Under Section 1983 Against Defendant Larry Jegley</u>

The Complaint alleges more than sufficient facts to state claims for relief against Mr. Jegley, based on the actions of the Prosecutors Office, working hand-in-hand with Sherwood, Judge Hale and Pulaski County, to implement and execute the illegal debt collection scheme described in the Complaint.  With respect to Mr. Jegley, Plaintiffs assert claims under § 1983 with respect to four separate federal constitutional violations suffered by Plaintiffs: (1) Count One – Violation of Plaintiffs' U.S. Constitutional Rights by Imprisoning Plaintiffs for Non-Payment of Debts Despite Their Inability to Pay; (2) Count Two – Violation of Plaintiffs' U.S. Constitutional Rights by Imprisoning Plaintiffs for Non-Payment of Debts Without Any Inquiry into Their Ability to Pay the Debts; (3) Count Five – Violation of Plaintiffs' U.S. Constitutional Rights by Imprisoning Plaintiffs for Non-Payment of Debts Without Appointing Adequate Counsel or Securing a Knowing and Intelligent Waiver of Counsel; and (4) Count Seven – Violating Plaintiffs' U.S. Constitutional Rights by Imprisoning Plaintiffs for Non-Payment of Debts Without Satisfying the Minimum Requirements of Due Process. Compl. ¶¶ 135-140, 147-150, 155-158.  Taking Plaintiffs' well-pleaded allegations as true, Mr. Jegley's motion to dismiss these claims must be denied.

Plaintiffs allege facts in the Complaint showing that the Defendants—Mr. Jegley, Sherwood, Judge Hale and Pulaski County—established and have perpetuated for two decades an illegal debt collection scheme that has violated and is continuing to violate Plaintiffs'

---

*Police*, 491 U.S. 58, 71 n.10 (1989), and Plaintiffs' claims do not trigger Eleventh Amendment immunity, *Kentucky v. Graham*, 473 U.S. 159, 167 & n.14 (1985), despite Mr. Jegley's plea to the contrary.  *See infra* Sec. II.

constitutional rights.  Compl. ¶¶ 5, 10-14, 28-32, 33-79, *passim*.  Pursuant to this scheme, Sherwood and Judge Hale "*with the active assistance of Larry  Jegley* . . . imprison citizens who have been sentenced to pay court costs, fines and fees without making any inquiry into whether they are able to pay and/or not withstanding their inability to pay."  *Id*. ¶ 6 (emphasis added).

As described in the Complaint, over 20 years ago, Arkansas enacted a fines collection law, Ark. Code Ann. § 16-13-701, *et seq.*, intended to set out the procedures for "the assessment and collection of all monetary fines, however, designated, imposed by . . .  district courts for criminal convictions."  *Id*. ¶ 51.  Those procedures specifically require a court to take into account a defendants' ability to pay when imposing fines in the first instance (i.e., when assessing fines) and when addressing a defendant's failure to make payments previously ordered by the Court (i.e., when collecting fines).  *Id*.  Plaintiffs allege, however, that Defendants do not follow those procedures.  *Id*. at ¶ 52.  "Instead, Sherwood, the Sherwood District Court and Judge Hale, *working with the Pulaski County Prosecutors Office*, have put in place a collection scheme that is designed to maximize the amount of court costs, fines, and fees imposed on individuals and that uses the threat and reality of incarceration to coerce individuals to pay these amounts, notwithstanding the inability to do so."  *Id*. (emphasis added).  Plaintiffs further allege that, "[t]hrough [this] labyrinthine—and lucrative—system, a single check for $15 returned for insufficient funds can be leveraged into many thousands of dollars in court costs, fines, and fees owed to Sherwood and Pulaski County. . . .  Plaintiffs and other like them . . . find themselves caught in a never-ending cycle of court proceedings they do not understand, arrests they cannot avoid, payments they cannot afford and, all too often, weeks or months behind bars because they cannot pay for their freedom."  *Id*. ¶ 3.

6

Following a hot check conviction, individuals who now owe these courts costs, fines and fees are relegated to Defendants' uncodified collection system of arbitrary payments plans and future "review hearings." *Id*. ¶¶ 47-50.  If an individual fails to appear for a review hearing, the Defendants, including the Prosecutors Office, treat each of these missed hearings as an opportunity to open a new, separate, stand-alone criminal charge, thereby purportedly authorizing the Sherwood District Court to impose new and duplicative court costs, fines, and fees. *Id*. ¶¶ 53-54.  Defendants, including the Prosecutors Office, also treat each new arrest warrant used as part of the debt collection system as a "charging document", which they in turn use to justify a whole new set of associated court costs, fines, and fees. *Id*. ¶ 53.  Even when individuals charged by these methods appear before the Sherwood District Court assert that they are unable to pay the outstanding amounts of court costs, fines and fees, the court does not do any inquiry, accept evidence of inability to pay, or require the Prosecutors Office to meet its burden of proof to demonstrate that that individual has the ability to pay. *Id*. ¶¶ 56, 94, 102, 115, 122, 126.

Pulaski County prosecutors are necessary participants in each step of this process and actively "condone, enable, and encourage" these illegal practices. *Id*. ¶¶ 10-12, 26, 80.  Notwithstanding the special responsibilities of public prosecutors under Arkansas law, *see Holder v. State*, 58 Ark. 473, 481 (1894), the Complaint alleges that the Prosecutors Office has a policy and custom to sit silently at the prosecution table even though the individual defendant's constitutional rights are being violated through this debt collection scheme. *Id*. ¶¶ 56, 60.

This illegal collection system continues to operate and generate substantial fees for the Prosecutors Office, Sherwood, and Pulaski County because of an agreement that the Pulaski

County Prosecuting Attorney, Mr. Jegley's official predecessor, entered into in the 1970s to funnel hot check charges from all over Pulaski County to the Sherwood District Court. *Id.* ¶¶ 4, 67, 80. Plaintiffs allege in the Complaint that "[p]ursuant to th[is] agreement . . ., the Pulaski County Prosecutor actively channels misdemeanor hot check cases throughout the county to the Sherwood District Court. Pulaski County and/or the Pulaski County Prosecutor have chosen to continue this practice notwithstanding the constitutional violations described." *Id.* ¶ 80. Through its dedicated Hot Check Unit, the Prosecutors Office actively works to ensure the flow of cases, like grist to the mill, to the Sherwood District Court. *Id.*

The Prosecutors Office further assists this illegal scheme by, as a matter of policy, practice, and custom, abdicating "their prosecutorial duties in the Hot Check Division of the Sherwood District Court to Judge Hale and court personnel in a manner that is inconsistent with the adversarial system of justice. Pulaski County prosecutors rarely make a formal appearance, present any evidence, or even speak in open court during hot check court proceedings." *Id.* ¶ 81. In addition, as part of this policy, practice, and custom, the Prosecutors Office allows the Sherwood District Court, its court clerks, and administrative personnel to exercise prosecutorial discretion in deciding to file "failure to pay – contempt of court," "failure to appear" and "failure to comply with probation" charges in the Hot Check Division of the Sherwood District Court rather than follow the procedures in the Arkansas Fine Collection law. *Id.* ¶ 82; *see also* Ark. Code Ann. § 16-21-103 ("Each prosecuting attorney shall commence and prosecute all criminal actions in which the state or any county in his district may be concerned.").

The Prosecutors Office has a direct financial interest in the operation of this illegal debt collection scheme and the system of using the threat and reality of incarceration to coerce funds from individuals despite their inability to pay.   As part of this scheme, the Sherwood District

Court routinely imposes repeated and ever-escalating court costs, fines, and fees, including a $25 Prosecuting Attorney Hot Check Fee. *Id.* ¶¶ 47, 83.  This "Prosecuting Attorney Hot Check Fee" is deposited into a special fund administered by the Prosecutors Office.  Mr. Jegley, as the Prosecuting Attorney for the Sixth Judicial District, has sole discretion how these funds are used to defray the salaries and expenses of his office.  Ark. Code Ann. § 16-21-120.

These allegations, taken as a whole, plainly allege that Mr. Jegley violates Plaintiffs' constitutional rights while acting under color of state law as the Prosecuting Attorney of the Sixth District of Arkansas, and that he and his predecessor Prosecuting Attorneys acting in their official capacities have set in place and perpetuated policies, practices, and customs that "have played a part in the violation of federal law." *Hafer*, 502 U.S. at 25.  Nothing more is needed to satisfy Plaintiffs' pleading obligations for § 1983 claims under *Iqbal* and *Twombly*.

## II.     Under *Ex parte Young* the Eleventh Amendment Does Not Bar Plaintiffs' Claims Against Defendant Larry Jegley

The *Ex parte Young* doctrine describes an exception to Eleventh Amendment immunity for an action against a state official for violating federal law in which the relief sought is prospective and not compensatory. *Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 530 (8th Cir. 2005) (internal citations omitted).  In those circumstances, "[a] federal court may . . . issue an injunction to prevent state officials from violating the [U.S.] Constitution without running afoul of the Eleventh Amendment." *Id.*  "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 296 (1997)).

Plaintiffs assert federal claims against Mr. Jegley solely in his official capacity as the Prosecuting Attorney for the Sixth Judicial District of Arkansas, seeking only prospective injunctive and declaratory relief, not damages.  Compl. ¶ 26; *see Kentucky v. Graham*, 473 U.S. at 167 & n.14, 168 & n.18; *Ex parte Young*, 209 U.S. 123, 159-60 (1908); *281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011).  Under *Ex parte Young* and its progeny, Plaintiffs' § 1983 claims against Mr. Jegley do not trigger Eleventh Amendment immunity.  Moreover, Mr. Jegley himself acknowledges that, under *Ex parte Young*, Plaintiffs can bring claims against him for prospective relief notwithstanding that he is a state official.  Jegley Br. at 5.

Attempting to escape the straightforward application of *Ex parte Young*, Mr. Jegley contends that the illegal scheme described in the Complaint "arise[s] from decisions made and enforced by the Sherwood District Court, its staff and judge, and employees of the City of Sherwood, not Jegley."  Jegley Br. at 9.  He therefore claims that Plaintiffs have failed to allege a "causal relationship" between Mr. Jegley and the constitutional violations described in the Complaint and, therefore "the rule of *Ex parte Young* does not apply, and the Eleventh Amendment bars the Plaintiffs' claims against Jegley."  *Id.*

Plaintiffs' allegations against Mr. Jegley, however, are more than sufficient to bring their claims within the doctrine of *Ex parte Young*.

> In making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that such officer must have *some connection* with the enforcement of the act, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party.

*Ex parte Young*, 209 U.S. at 157 (emphasis added); *281 Care Comm.*, 638 F.3d at 632-33.  To meet this "some connection" requirement, the Plaintiffs do not need to allege that Mr. Jegley is the "primary authority to enforce" this illegal scheme, or that he necessarily has "full power to address [the Plaintiffs'] injury."  *281 Care Comm.,* 638 F.3d at 632-33; *Mo. Prot. & Advocacy*

*Servs.*, *Inc. v. Carnahan*, 499 F.3d 803, 806-07 (8th Cir. 2007); *Jernigan v. Crane*, 64 F. Supp. 3d 1260, 1272-73 (E.D. Ark. 2014).  Rather, Plaintiffs have sufficiently alleged that the debt collection scheme at issue, which violates Plaintiffs' constitutional rights, was put in place by the Prosecutors Office, working with Sherwood, the Sherwood District Court, and Judge Hale. Compl. ¶ 52.  Plaintiffs further allege that this illegal collection system continues to operate because of an agreement that the Prosecutors Office entered into in the 1970s to funnel hot check charges to the Sherwood District Court.  *Id*. ¶¶ 4, 67, 80.  In addition, notwithstanding the ongoing constitutional violations alleged in the Complaint, the Prosecutors Office has affirmatively chosen to continue this practice of directing these cases exclusively to the Sherwood District Court.  *Id*. ¶ 80; *see Carnahan*, 499 F.3d at 807.

The Prosecutors Office has created a dedicated Hot Check Unit to serve merchants throughout the district in the prosecution and collection of hot checks, forged checks and related matters.  Compl. ¶ 80; see Ark. Code Ann. § 16-21-1109 ("[T]he Prosecuting Attorney of the Sixth Judicial District is hereby authorized to establish a hot check program . . . to collect fees for the hot check fund.").  The Prosecutors Office has deputy prosecutors attend all of the hearings where Plaintiffs' constitutional rights are being violated.  While they are supposed to take a direct role in these proceedings, the Complaint alleges that they "rarely make a formal appearance, present any evidence, or even speak in open court during hot check court proceedings."  Compl. ¶ 81.  Instead of taking steps to ensure that proceedings are fair and proper and are consistent with the Arkansas fine collection law procedures, the Prosecutors Office abdicates its prosecutorial functions.  *Id*. ¶ 82.  The Complaint alleges that the Prosecutors Office affirmatively chooses to allow this illegal debt collection system to continue because it is a direct financial beneficiary of the constitutional violations used to coerce payment from

individuals despite their inability to pay.  *Id.* ¶¶ 47, 83; *see also* Ark. Code Ann. § 16-13-703(a)

(describing the prosecutors' role in the collection of fines under the Arkansas Fine Collection

Law).  Thus, the Complaint alleges how the Prosecutors Office is directly involved in this illegal

scheme at each step of the way.[4]

What allows this illegal debt collection scheme to continue and to cause the ongoing

violations of Plaintiffs' rights is the affirmative choice by the Prosecutors Office to funnel people

into this debt collection system and then to abdicate its prosecutorial responsibilities in the

proceedings and its responsibilities to ensure that the proceedings are properly conducted.

Mr. Jegley tries to seize on this to say that all of the constitutional violations alleged in the

Complaint arise from decisions made and enforced by Sherwood, the Sherwood District Court,

and Judge Hale—but not by himself or his deputy prosecutors.  Mr. Jegley Br. at 9.  This "see no

evil, hear no evil, speak no evil" approach to the ongoing, notorious, and pervasive constitutional

violations described in the Complaint ignores the active role that the Prosecutors Office and its

deputy prosecutors have in this debt collection system and cannot lead, particularly on a motion

to dismiss, to the conclusion that Mr. Jegley is immune from liability under the Eleventh

Amendment.  *281 Care Comm.*, 638 F.3d at 632-33; *Citizens for Equal Prot. v. Bruning*,

455 F.3d 859, 864 (8th Cir. 2006), abrogated on other grounds by *Obergefell v. Hodges*,

135 S. Ct. 2584 (2015); *Doe v. Piper*, 165 F. Supp. 3d 789, 802-03 (D. Minn. 2016); *Jernigan v.*

*Crane*, 64 F. Supp. 3d at 1272-73.

---

[4] Mr. Jegley argues that a "complaint lumping together allegations against "the defendants," without identifying individual acts that caused deprivation of a protected right, does not state a claim."  Jegley Br. at 7 (citing *Marcillis v. Twp. of Redford*, 693 F.3d 589, 598-97 (6th Cir. 2012), and *Butler v. Bank of Am., N.A.*, 690 F.3d 959, 961-62 (8th Cir. 2012)).  Unlike the undifferentiated pleadings at issue in those cited cases, Plaintiffs have alleged detailed facts describing how this scheme operates and what each of the Defendant's roles have been and continue to be in creating and perpetuating the unconstitutional debt collection scheme.

Finally, Mr. Jegley separately suggests he has Eleventh Amendment immunity against Plaintiffs' ***federal constitutional claims*** because the "State of Arkansas is the real party in interest" and prospective relief against him, a state prosecutor, "would restrain the state from acting or compel it to act." Jegley Br. at 4. Mr. Jegley's argument could only potentially have merit if Plaintiffs had sued Mr. Jegley for violating the ***Arkansas Constitution***, not the federal constitution; rather, Mr. Jegley's argument is foreclosed by the Eighth Circuit's decision in *Fond du Lac Band of Chippewa Indians v. Carlson*, 68 F.3d 253 (8th Cir. 1995).

> If [plaintiff] had named the state itself as defendant, or was seeking to enjoin violations of state law, then the Eleventh Amendment would bar this suit regardless of the relief sought. This case, however, seeks to vindicate important federal rights, and thus falls squarely within the doctrine of *Ex parte Young*.

*Id*. at 255-56.

Plaintiffs expressly did not sue Mr. Jegley under the Arkansas constitutional claims made against the other Defendants (Counts Three, Four, Six, and Eight of the Complaint). *See* Compl. ¶¶ 141-146, 151-154, 159-162. For U.S. constitutional claims against a state official under § 1983, "'[t]he proper focus [of the immunity inquiry] must be directed at whether the injunctive relief sought is prospective or retroactive in nature,' and not on 'an injunction's impact on the State treasury.'" *Mo. Child Care Ass'n v. Cross*, 294 F.3d 1034, 1042 (8th Cir. 2002) (quoting *Antrican v. Odom*, 290 F.3d 178, 186 (4th Cir. 2002)); *Guggenberger v. Minnesota*, 2016 U.S. Dist. LEXIS 99039, at * 37-40 & n.9 (D. Minn. July 28, 2016). Because of Mr. Jegley's misplaced reliance on legal authority in which state officials were accused of violating state law, not federal law, his view that "[t]he Eleventh Amendment's jurisdictional bar applies regardless of the nature of the relief sought," Jegley Br. at 4-5, is wrong.

13

### III.   Plaintiffs Have Properly Alleged that Defendant Larry Jegley's Actions Have a Causal Connection to the Violation of Plaintiffs' Rights

Mr. Jegley separately argues that Plaintiffs' § 1983 claims against him must be dismissed because Plaintiffs have not sufficiently alleged that Mr. Jegley's participation in the illegal collection scheme has caused the constitutional harms at issue.  Alternatively, even if the Complaint has properly alleged actions by Mr. Jegley that "have impacted the Plaintiffs," Mr. Jegley cannot be liable because "subsequent acts by independent decision makers break the chain of causation."  Jegley Br. at 10.  Mr. Jegley's arguments ignore the detailed allegations in the Complaint showing that the Prosecutors Office was a moving force behind the constitutional violations at issue, and they misstate the law.

Section 1983 authorizes the imposition of liability on a defendant who "subjects, or causes to be subjected, any citizen . . . of other person . . . the deprivation of any rights" guaranteed by federal law.  In view of this statutory language, courts have long held that causation is an element of a § 1983 cause of action.  *Hayden v. Nev. Cty.*, 664 F.3d 770, 773 (8th Cir. 2012); *Hackenmueller v. Fadden*, 2016 U.S. Dist. LEXIS 96250, at *14-16 (D. Minn. July 22, 2016).  Issues of causation in § 1983 suits are decided by looking to the common law.  *Doran v. Eckold*, 362 F.3d 1047, 1050-51 (8th Cir. 2004), *rev'd on other grounds en banc*, 409 F.3d 958 (8th Cir. 2005).

> We have explained that the causal connection alluded to by [§ 1983] "can be established not only by some kind of [] personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Gutierrez-Rodriguez*, 882 F.2d at 561 (quotation marks omitted).  Put another way, an actor is "responsible for 'those consequences attributable to reasonably foreseeable intervening forces, *including the acts of third parties.*'"  *Id.*

*Sanchez v. Pereira-Castillo*, 590 F.3d 31, 50-51 (1st Cir. 2009) (citing *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 533, 561 (1st Cir. 1989)).[5]

As described above, the Complaint contains detailed factual allegations describing the Prosecutors Office's direct involvement in the debt collection scheme that violates Plaintiffs' constitutional rights.  The Complaint alleges that the debt collection scheme was put in place by the Prosecutors Office, working with Sherwood, the Sherwood District Court, and Judge Hale. Compl. ¶ 52.  This system continues to operate because an agreement the Prosecutors Office entered into in the 1970s to funnel hot check charges to the Sherwood District Court.  *Id*. ¶¶ 4, 67, 80.  The Prosecutors Office has created an internal Hot Check Unit to assist in the prosecution and collection of hot check fines and fees and has its deputy prosecutors attend all of the proceedings in which Plaintiffs' constitutional rights are being violated.  *Id*. ¶¶ 80-81. Instead of taking steps to ensure that proceedings are fair and proper and consistent with the Arkansas fine collection law procedures, the Prosecutors Office abdicates its prosecutorial functions so that other court personnel can operate the illegal scheme.  *Id*. ¶ 82.  The Complaint alleges that the Prosecutors Office affirmatively allows this illegal debt collection system to continue because it is a direct beneficiary of the constitutional violations being used to coerce payment from individuals despite their inability to pay.  *Id*. ¶¶ 47, 83.  Thus, the allegations in the Complaint, which must be assumed to be true for purposes of this motion, *Erickson*, 551 U.S. at 93-94, show that the actions of the Prosecutors Office are a direct and proximate cause of the constitutional violations.  Compl. ¶¶ 4, 6, 52-53, 80.

Mr. Jegley argues that, even if the Complaint does properly allege causation, he cannot be held liable "because subsequent acts by independent decision makers break the chain of

---

[5] Courts often equate "moving force" with "proximate cause" for purposes of liability under § 1983.  *See, e.g.*, *Cash v. Cty. of Erie*, 654 F.3d 324, 341-42 (2d Cir. 2011).

causation." Jegley Br. at 10.  For purposes of this motion to dismiss, however, the court must

not only accept Plaintiffs' allegations against Mr. Jegley as true, it must also draw all reasonable

inferences from the Complaint in favor of Plaintiffs.  *Erickson*, 551 U.S. at 93-94.  Mr. Jegley's

argument tries to turn this procedural requirement on its head, and essentially he asks the Court

to find that, notwithstanding Plaintiffs' allegations, other actors were the sole proximate cause of

Plaintiffs' injuries, a factual determination that should not be made on a motion to dismiss under

Rule 12(b)(6).

Moreover, unlike the complaints in the cases that Mr. Jegley cites,[6] Plaintiffs' Complaint

alleges that this illegal scheme was founded in part and perpetuated by the Prosecutors' Office.

Notwithstanding the role that Sherwood, Judge Hale and Pulaski County also play in operating

this scheme and causing the constitutional violations as issue, the Prosecutors Office is directly

involved in the scheme at each step of the way.  *See* Compl. ¶¶ 80-81.  Moreover, the Complaint

alleges that the debt collection system operates as described because of the "active assistance" of

the Prosecutors Office, which actively condones, enables, and encourages the illegal practices

that are resulting in the constitutional violations.  *Id.* ¶¶ 6, 80, *see Sanchez*, 590 F.3d at 50-51

(for purposes of § 1983, an actor is "responsible for 'those consequences attributable to

reasonably foreseeable intervening forces, including the acts of third parties'").

---

[6] *See Evans v. Chalmers,* 703 F.3d 636, 646-49 (4th Cir. 2012) (claims against police officers for malicious prosecution were dismissed because harm was caused by subsequent acts of an independent prosecutor in deciding to bring claims); *Murray v. Earle*, 405 F.3d 278, 289-93 (5th Cir. 2005) (trial court should have granted police officer qualified immunity because no clearly established law would have put officer on notice that his illegal pre-trial interrogation would result in a *Fifth Amendment* violation if a judge later determined that the confession could be introduced at trial); *Townes v. City of New York*, 176 F.3d 138, 146-47 (2d Cir. 1999) (claims against police officers for illegal search and seizure of guns and drugs were dismissed because harm was caused by defendants' subsequent conviction and incarceration).

16

**IV.      Plaintiffs Have Standing Against Defendant Larry Jegley**

Mr. Jegley next argues that the Plaintiffs have not established Article III standing, and he states in conclusory fashion that Mr. Jegley's acts have not harmed the Plaintiffs.  Jegley Br. at 12.  This argument fails for many of the same reasons discussed above.

To demonstrate standing, a plaintiff must show that he has suffered an injury-in-fact that is fairly traceable to the challenged action of the defendant and that likely will be redressed by a favorable decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  In suits for injunctive relief, the harm complained of must be ongoing or there must be a real and immediate threat of it continuing in the future.  *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974).  Here, Plaintiffs sufficiently allege harm by describing how they have been subjected to an unconstitutional debt collection scheme established and furthered by the Prosecutors Office. *Lujan*, 504 U.S. at 560 (injury is a concrete and particularized "invasion of a legally protected interest").  That harm is ongoing because each Plaintiff still owes monetary debts to the Sherwood District Court and is still subject to review hearings, and is thus still caught in the Defendants' illegal debt collection scheme, and its threat and reality of incarceration, in which the Prosecutors Office participates.  *See, e.g.*, *Ray v. Judicial Corr. Servs.*, 2013 WL 5428360, at *13 (N.D. Ala. Sept. 26, 2013) (Because plaintiffs "still owe various fines and fees . . . [they] face the prospect of a return to jail at any time, imbuing them with the standing necessary to make claims for prospective injunctive relief.").

While Mr. Jegley appears to argue that this harm is not "fairly traceable" to him, the Complaint describes a clear "causal connection" between the violations of Plaintiffs' rights and the conduct of the Prosecutors Office.  *Lujan*, 550 U.S. at 560.  As described above, the Prosecutors Office—working with Sherwood, the Sherwood District Court, and Judge Hale— established the illegal debt collection scheme.  Compl. ¶ 52.  That scheme continues to operate

17

because the Prosecutors Office funnels all hot check charges to the Sherwood District Court. *Id.* ¶¶ 4, 67, 80.  Prosecutors from Mr. Jegley's Hot Check Unit then assist in the collection of hot check fines and fees by attending all of the proceedings, where they abdicate their prosecutorial responsibilities and ignore their express statutory and constitutional burden of proof when hot check defendants, like the Plaintiffs, raise their inability to pay.  *Id.* ¶¶ 56, 82.

If there were any doubt, the only case Mr. Jegley cites in support of his traceability argument, *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952 (8th Cir.2015), is completely inapposite.  In *Digital Recognition Network*, the plaintiffs brought a pre-enforcement challenge to the constitutionality of an Arkansas statute by suing the governor and attorney general.  The governor and attorney general, however, had no statutory authority to enforce the challenged statute—it was enforceable only through private damages actions—and thus they could not possibly cause violations of the plaintiffs' constitutional rights, nor could any judgment against them redress the alleged harm.  803 F.3d at 957-58.  By contrast, here, prospective declaratory and injunctive relief against Mr. Jegley that, for example, requires his office to address hot check defendants' ability to pay when charging and prosecuting those defendants in Sherwood District Court for failure to pay—as required by *Bearden v. Georgia*, 461 U.S. 660 (1983) and as rectifiable by following Arkansas state law—would go a long way in redressing the harms Plaintiffs suffer.

## V.    *Younger* Abstention Does Not Apply

Finally, Mr. Jegley urges this Court to abstain under *Younger v. Harris* from hearing Plaintiffs' claims, arguing that the Court should not hear "Plaintiffs' challenges to their sentences" because "although [Plaintiffs] do not request an injunction against further criminal proceedings . . . the Plaintiffs appear to seek the same result."  Jegley Br. at 13.  Mr. Jegley's

ny-1259454

argument, however, proceeds from mistaken premises and gets the application of *Younger* wrong.

Plaintiffs do not seek to have any sentence overturned, nor do they seek to enjoin any criminal proceeding.  Rather, Plaintiffs seek to have declared unconstitutional, as a violation of core Due Process, Equal Protection, and other U.S. constitutional rights, the post-conviction debt collection scheme that Mr. Jegley's office helped to found and continues to foster—a scheme that exploits those who are unable to pay outstanding fines, fees, and court costs.  The challenge to the constitutionality of that post-conviction collections scheme has no effect on the underlying hot check cases, or on the propriety of the hot check fines originally assessed.  Indeed, as the Complaint makes clear, final judgments and sentences were often issued in those criminal hot check cases years ago.  *See* Compl. ¶¶ 90, 98, 109, 119 (outlining each Plaintiff's guilty plea(s) and sentencing).

In the context of this post-conviction debt collection scheme, *Younger* abstention simply does not apply.  *Younger* directs federal courts to refrain from enjoining parallel pending state criminal proceedings.  *Younger v. Harris*, 401 U.S. 37 (1971).  In the most recent Supreme Court case construing *Younger*, the Court cautioned that "the federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, *and should not 'refus[e] to decide a case in deference to the States*.'"  *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 586 (2013) (emphasis added) (quoting *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 368 (1989)).  The Court made clear that *Younger* applies only in the "exceptional circumstances" presented by ongoing state criminal prosecutions and certain analogous cases, not applicable here.  *Sprint*, 134 S. Ct. at 587.

Lower courts assessing the application of *Younger* find that challenges to post-conviction debt collection schemes, like the one described in the Complaint, simply do not fit within those "exceptional circumstances"—even when the Plaintiffs face the ongoing threat of state action to collect unpaid fines and fees.  *See Cain v. City of New Orleans*, 2016 WL 1598606, at *9 (E.D. La. Apr. 21, 2016) (denying abstention, finding that outstanding court costs, fines, and fees do not constitute an "ongoing state judicial proceeding" for purposes of *Younger*); *Rodriguez v. Providence Cmty. Corr., Inc.*, 155 F. Supp. 3d 758, 765-66 (M.D. Tenn. 2015) (denying abstention where plaintiffs challenged defendants' failure to inquire into plaintiffs' ability to pay before jailing them, because "[Plaintiffs'] challenge does not disturb or even touch the underlying state court criminal convictions."); *Ray*, 2013 WL 5428360, at *12 ("[T]he declaratory and injunctive relief sought by Plaintiffs is not intended to contradict or overturn the substance of the prior state court proceedings, but instead targets [defendants'] post-judgment procedure, removing the very concern that animates the *Younger* doctrine's concern with improper interference with a pending state proceeding.").[7]

The single case on which Jegley's brief relies, *O'Shea v. Littleton*, 414 U.S. 488 (1974), does not counsel any differently.  Quoting *O'Shea*, Mr. Jegley argues that the declaratory and injunctive relief the Plaintiffs seek is "aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials," and that

---

[7] *Cf. Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 605-06 (6th Cir. 2007) (finding *Younger* inapplicable after state-court revoked plaintiff's probation months before he filed suit because the "proceedings in state court have long since concluded"); *Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d 1298, 1316 n.9 (11th Cir. 2005) (finding *Younger* abstention "clearly erroneous" when plaintiff "has already been tried and convicted"); *Trombley v. Cty. of Cascade*, 1989 U.S. App. LEXIS 23946, at *2 (9th Cir. July 12, 1989) (finding no ongoing proceeding when plaintiff "has pleaded guilty and is currently out on parole"); *Almodovar v. Reiner*, 832 F.2d 1138, 1141 (9th Cir.1987) ("Probation is not a pending criminal action for *Younger* purposes."); *Moncier v. Jones*, 2012 WL 262984, at *5 (E.D. Tenn. Jan. 30, 2012) (explaining that a proceeding is "pending" from "the time of filing . . . until a litigant has exhausted his state appellant remedies"); *Baltzer v. Birkett*, 2003 WL 366577, at *3 (N.D. Ill. Feb. 19, 2003) (finding no ongoing proceeding when plaintiff was serving his prison sentence, but the time for appeal had expired).

granting such relief "would be 'nothing less than an ongoing federal audit of state criminal proceedings.'" Jegley Br. at 13-14. This argument, however, if pushed to its logical conclusion, would result in abstention any time a state prosecutor or court is involved at some step of an alleged due process deprivation, which is not how *Younger* works. If anything, *O'Shea* demonstrates how Plaintiffs' claims do not run afoul of *Younger*, because the *O'Shea* plaintiffs actually sought "continuous supervision by the federal court over the conduct of . . . criminal trial proceedings," including federal oversight of bail, trial, and sentencing results in individual criminal cases. 414 U.S. at 501.

By contrast, here, Plaintiffs do not ask the Court to supervise or even advise on the merits adjudication of any case prosecuted by Mr. Jegley in the Sherwood District Court. They seek instead a declaratory judgment that Defendants' pervasive post-conviction debt collection system, including the Prosecutors Office's conduct in helping to recover previously assessed costs, fines, and fees from thousands of individuals who cannot afford to pay, is unconstitutional, and corresponding injunctive relief related to Mr. Jegley's and the Prosecutors Office's constitutionally deficient procedural conduct in this post-conviction debt collection system.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Larry Jegley's motion to dismiss in its entirety.

Dated: November 21, 2016        By:  /s/ J. Alexander Lawrence
                                      Bettina E. Brownstein
                                      **BETTINA E. BROWNSTEIN LAW
                                      FIRM**
                                      904 West 2nd Street
                                      Little Rock, AR 72201
                                      Tel:  (501) 920-1764
                                      bettinabrowstein@gmail.com

21

J. Alexander Lawrence
Jayson L. Cohen
**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, NY 10019
Tel:  (212) 336-8638
Fax:  (212) 468-7900
ALawrence@mofo.com
JCohen@mofo.com

Reggie Koch
**THE KOCH LAW FIRM**
2024 Arkansas Valley Drive, Suite 707
Little Rock, AR 72212
Tel: (501) 223-5310
Fax: (501) 223-5311
reggie@reggiekoch.com

Hallie N. Ryan
**LAWYERS COMMITTEE FOR**
**CIVIL RIGHTS UNDER THE LAW**
1401 New York Avenue, N.W., Suite 400
Washington, D.C. 20005
Tel: (202) 662-8359
HRyan@lawyerscommittee.org

*Attorneys for Plaintiffs*

TO:

Leslie Rutledge, Attorney General
By:   Patrick Hollingsworth, Assistant
         Attorney General
323 Center Street, Suite 200
Little Rock, AR  72201-2610
Tel:  (501) 682-1051
Patrick.hollingsworth@arkansasag.gov

*Attorneys for Larry Jegley, in his official*
*capacity as Prosecuting Attorney for the*
*Sixth Judicial District*

David M. Fuqua
Fuqua Campbell, P.A.

22

3700 Cantrell Road, Suite 205
Little Rock, AR 72202
Tel: (501) 374-0200
dfuqua@fc-lawyers.com

*Attorneys for Pulaski County*

Michael Mosley
Post Office Box 38
North Little Rock, AR  72115
Tel: (501) 978-6131
mmosley@arml.org

John Wesley Hall, Jr.
1202 Main Street, Suite 210
Little Rock, Arkansas 72202-5057
Tel:  (501) 371-9131
ForHall@aol.com

*Attorney for City of Sherwood and
Honorable Milas H. Hale, III*

## <u>CERTIFICATE OF SERVICE</u>

I, Jayson L. Cohen, certify that on November 21, 2016, I filed the foregoing

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS BY**

**DEFENDANT LARRY JEGLEY,** using the Court's CM/ECF system, whereby all counsel of

record were served.


  /s/ *Jayson L. Cohen*
  Jayson L. Cohen