**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**

CHARLES DADE, NAKITA LEWIS, NIKKI
PETREE, LEE ANDREW ROBERTSON, and
PHILIP AXELROTH, individually and on behalf
of all others similarly situated,

               Plaintiffs,

          v.

CITY OF SHERWOOD, ARKANSAS, PULASKI
COUNTY, ARKANSAS, LARRY JEGLEY in his
official capacity, AND HONORABLE MILAS H.
HALE, III, in his official and individual capacities,

               Defendants.

Case No. 4:16-cv-00602-JM-JJV

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**MOTION FOR JUDGMENT ON THE PLEADINGS**
**<u>BY PULASKI COUNTY, ARKANSAS</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATUS OF THE CASE ......................................................................................................... 3

ARGUMENT ........................................................................................................................... 4

I.  PLAINTIFFS' COMPLAINT ADEQUATELY STATES A CLAIM THAT
    PULASKI COUNTY'S CUSTOM AND USAGE VIOLATES PLAINTIFFS'
    CONSTITUTIONAL RIGHTS ...................................................................................... 4

    A.  Judgment on the Pleadings under Fed. R. Civ. P. 12(c) ....................................... 4

    B.  Legal Standard for Civil Rights Claims Under § 1983......................................... 5

    C.  Plaintiffs State a Claim Under Section 1983 Against Pulaski County ................. 6

II.  THE *ROOKER-FELDMAN* AND *HECK* DOCTRINES DO NOT APPLY
     BECAUSE PLAINTIFFS DO NOT SEEK TO REVIEW OR REJECT PAST
     JUDGMENTS OR SHORTEN INCARCERATION ...................................................... 11

    A.  *Rooker-Feldman* Abstention Does Not Apply to Plaintiffs' Claims .................. 11

    B.  The *Heck* Bar Does Not Apply Because Plaintiffs Do Not Seek a
        Necessary End to, or Acceleration of, Confinement Imposed by the
        Sherwood District Court ..................................................................................... 13

III.  PLAINTIFF PHILIP AXELROTH PROPERLY STATES AN ILLEGAL
      EXACTION CLAIM AGAINST PULASKI COUNTY BASED ON
      MISAPPLICATION AND ILLEGAL SPENDING OF PUBLIC FUNDS .................... 15

    A.  Plaintiff Philip Axelroth Complaint Properly States an Illegal Exaction
        Claim.................................................................................................................... 15

    B.  The Tax Injunction Act Does Not Apply to Plaintiffs' Illegal Exaction
        Claims ................................................................................................................. 18

CONCLUSION......................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bd. of Cty. Comm'rs v. Brown,*
520 U.S. 397 (1997).................................................................................................11

*Booth v. Hvass,*
302 F.3d 849 (8th Cir. 2002) ................................................................................16

*Bowerman v. Takeda Pharms. U.S.A.,*
442 S.W.3d 839 (Ark. 2014)...........................................................................16, 21

*Cain v. City of New Orleans*
2016 U.S. Dist. LEXIS 53554 (E.D. La. Apr. 21, 2016).........................................15

*Chapman v. Bevilacqua,*
344 Ark. 262 (2001).................................................................................................16

*City of Jefferson City v. Cingular Wireless LLC,*
531 F.3d 595 (8th Cir. 2008) ................................................................................19

*Concerned Citizens of Belle Haven, v. Belle Haven Club,*
2001 U.S. Dist. LEXIS 25161 (D. Conn. Sept. 24, 2001) ......................................19

*City of Little Rock v. Cash,*
277 Ark. 494 (1982)...............................................................................................22

*Edwards v. Balisok,*
520 U.S. 641 (1997).........................................................................................13, 14

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,*
544 U.S. 280 (2005)...............................................................................................11

*Faibisch v. Univ. of Minn.,*
304 F.3d 797 (8th Cir. 2002) ................................................................................10

*Fair Assessment in Real Estate Ass'n v. McNary,*
454 U.S. 100 (1981)...........................................................................................16, 20

*Fant v. City of Ferguson,*
107 F. Supp. 3d 1016 (E.D. Mo. 2015).............................................................13, 15

*Farrell v. Oliver,*
146 Ark. 599 (1921).................................................................................................21

*Franklin High Yield Tax-Free Income Fund v. Cty. of Martin,*
152 F.3d 736 (8th Cir. 1998) ....................................................................................4

ii

*Ghegan & Ghegan, Inc. v. Weiss*,
   338 Ark. 9 (1999).............................................................................................16, 21

*Green v. Jones*,
   164 Ark. 118 (1924).................................................................................................22

*Hageman v. Barton*,
   2016 WL 1212235 (8th Cir. Mar. 29, 2016).........................................................12

*Haney v. Portfolio Recovery Assocs., L.L.C.*,
   2016 U.S. App. LEXIS 17287 (8th Cir. Sept. 21, 2016) ...................................5, 18

*Heck v. Humphrey*,
   512 U.S. 477 (1994).........................................................................1, 2, 11, 13, 15

*Hungate v. United States*,
   626 F.2d 60 (8th Cir. 1980) .....................................................................................4

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 .................................................................................................10

*Jane Doe v. Special Sch. Dist.*,
   901 F.2d 642 (8th Cir. 1990) ...............................................................................5, 11

*Kraemer v. Minn. Dep't of Revenue*,
   2002 U.S. Dist. LEXIS 18158 (D. Minn. Sept. 24, 2002) ...................................20

*Levin v. Commerce Energy, Inc.*,
   560 U.S. 413 (2010)................................................................................................20

*Levy v. Parker*,
   346 F. Supp. 897 (E.D. La. 1972), *aff'd*, 411 U.S. 978 (1973)..............................19

*McCafferty v. Oxford Am. Literary Project, Inc.*,
   484 S.W.3d 662 (Ark. 2016)...................................................................................16

*McGautha v. Jackson Cty.*,
   36 F.3d 53 (8th Cir. 1994) .......................................................................................6

*McGhee v. Ark. State Bd. of Collection Agencies*,
   360 Ark. 363 (2005)...........................................................................................18, 21

*Mertz v. Pappas*,
   320 Ark. 368 (1995)................................................................................................22

*Missouri ex rel. Nixon v. Coeur D'Alene Tribe*,
   164 F.3d 1102 (8th Cir. 1999) ...............................................................................10

iii

*MSK EyEs Ltd. v. Wells Fargo Bank*
    546 F.3d 533 (8th Cir. 2008) ............................................................12

*Monell v. Dep't of Soc. Servs.,*
    436 U.S. 658 (1978)..................................................................5, 6

*Morton v. Becker,*
    79 F.2d 185 (8th Cir. 1986) .......................................................4, 6

*Nat'l Private Truck Council v. Okla. Tax Comm'n,*
    515 U.S. 582 (1995).....................................................................20

*Nelson v. Berry Petroleum Co.,*
    242 Ark. 273 (1967).....................................................................21

*Nichols v. City of Rehoboth Beach,*
    836 F.3d 275, 280 (3d Cir. 2016)................................................21

*Nw. Ark. Home Builders Ass'n v. City of Rogers,*
    2008 U.S. Dist. LEXIS 19772 (W.D. Ark. Mar. 3, 2008) ......................19

*Parker v. Laws,*
    249 Ark. 632 (1970).....................................................................22

*Preiser v. Rodriguez,*
    411 U.S. 475 (1973).....................................................................13

*R.J. Reynolds Tobacco Co. v. Bonta,*
    272 F. Supp. 2d 1085 (E.D. Cal. 2002)........................................19

*Rasmusson v. Chisago Cty.,*
    991 F. Supp. 2d 1065 (D. Minn. 2014).........................................10

*Ray v. Judicial Corr. Servs.,*
    2013 U.S. Dist. LEXIS 139480 (N.D. Ala. Sept. 26, 2013) ....................15

*Roemhild v. Jones,*
    239 F.2d 492 (8th Cir. 1957) ........................................................4

*Simes v. Huckabee,*
    354 F.3d 823 (8th Cir. 2004) .......................................................12

*Skinner v. Switzer,*
    562 U.S. 521 (2005).....................................................................13

*Starnes v. Sadler,*
    237 Ark. 325 (1963).....................................................................16

iv

*Ward v. Farrell*,
   221 Ark. 363 (1952)..................................................................................................22

*Ware v. Jackson Cty.*,
   150 F.3d 873 (8th Cir. 1998) ....................................................................................5

*Weiss v. Chavers*,
   357 Ark. 607 (2004)..................................................................................................22

*Westcott v. City of Omaha*,
   901 F.2d 1486 (8th Cir. 1990) ..................................................................................4

*White v. Fergus*,
   2015 U.S. Dist. LEXIS 156632 (E.D. Ark. Nov. 13, 2015) ...................................13

*Wilkinson v. Dotson*,
   544 U.S. 74 (2005)...............................................................................................13, 14

*Williams v. Butler*,
   863 F.2d 1398 (8th Cir. 1988) ..................................................................................5

*Wolff v. McDonnell*,
   418 U.S. 539 (1974)..................................................................................................14

*Younger v. Harris*,
   401 U.S. 37 (1971)....................................................................................................20

## STATUTES

Tax Injunction Act, 28 U.S.C. § 1341 ...............................................................................16, 18

Constitution of the State of Arkansas of 1874, Article 16, § 13 ................................................16

Ark. Code Ann.
   § 16-21-156.................................................................................................................10
   § 16-21-1102(a)(1)......................................................................................................18
   § 16-21-1102(b)(4)......................................................................................................18
   § 16-21-1106...............................................................................................................18
   § 16-123-101 *et seq.*....................................................................................................5

Pulaski County Municipal Code §§ 4-6, 4-14 ...........................................................................9

Pulaski County Ordinance
   No. 03-OR-54 (June 27, 2003) .....................................................................................7
   No. 09-OR-22 (Apr. 30, 2009).......................................................................................7

v

Plaintiffs submit this memorandum in opposition to the Fed. R. Civ. P. 12(c) motion for judgment on the pleadings filed by Defendant Pulaski County, Arkansas ("Pulaski County").[1]

## PRELIMINARY STATEMENT

Pulaski County moves, solely on the pleadings, to dismiss all claims against it on three grounds—(1) that Plaintiffs' First Amended Complaint, dated September 30, 2016 ( "Complaint" or "Compl."), fails to state a claim upon which relief can be granted as against Pulaski County; (2) that Plaintiffs' claims are unlawful collateral challenges to their state law convictions and thereby barred by *Heck v. Humphry* and the *Rooker-Feldman* doctrine; and (3) that Plaintiff Philip Axelroth's illegal exaction claim is barred by the federal Tax Injunction Act and related principles of comity.  Pulaski County's arguments, however, ignore the detailed factual allegations in the Complaint and the legal bases for Plaintiffs' claims, as well as misconstrue or outright ignore binding precedent for actions under 42 U.S.C. § 1983 and illegal exaction claims under the Arkansas Constitution.  Pulaski County's motion should be denied in its entirety.

*First*, Pulaski County claims that the Complaint fails to allege a Pulaski County policy, practice, or custom that violates Plaintiffs' constitutional rights.  But in its brief in support of this motion, Pulaski County does not quote from – or even cite to – a single factual allegation in Plaintiffs' detailed and well-supported Complaint.  Contrary to Pulaski County's conclusory arguments, Plaintiffs' Complaint details how Pulaski County—for decades and continuing today—has contributed to and been complicit in a scheme by which the named Defendants[2] extract revenue from the poorest citizens of Pulaski County, by using the threat and reality of

---

[1] *See* Motion for Judgment on the Pleadings by Pulaski County, ECF No. 28; Brief in Support of Motion for Judgment on the Pleadings by Pulaski County, ECF No. 29 (the "brief" or "Cty. Br.").

[2] The other named defendants are the City of Sherwood, Arkansas ("Sherwood"), Judge Milas H. Hale, III ("Judge Hale"), and Larry Jegley, the Prosecuting Attorney for the Sixth Judicial District of Arkansas ("Mr. Jegley").

incarceration in violation of the substantive and procedural safeguards required by the U.S. and Arkansas Constitutions.

*Second*, Pulaski County's argument that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine and *Heck v. Humphrey* miscomprehends the purpose and focus of this litigation.  Plaintiffs are not challenging or seeking to modify their original convictions or sentences; rather they are challenging the illegal, post-conviction debt collection scheme created and used by the Defendants, which violates Plaintiffs' constitutional rights.

*Third*, Pulaski County misses the mark completely by mischaracterizing Plaintiff Philip Axelroth's illegal exaction claim as "challenging an illegal tax."  To the contrary, Mr. Axelroth alleges that Pulaski County misapplies the revenue it receives from sales and property taxes that he and other residents pay into the Pulaski County general fund by spending that revenue to support the unconstitutional post-conviction debt collection scheme described in the Complaint. Because Mr. Axelroth's claim against Pulaski County and the relief he seeks are limited to challenging Pulaski County's improper spending of funds to perpetuate this unconstitutional debt collection scheme —and because he is not challenging any Pulaski County tax as illegally imposed—neither the federal Tax Injunction Act nor the related rules of comity apply.

In their detailed Complaint, Plaintiffs describe a long-standing and pervasive scheme by Pulaski County and the other defendants to funnel Pulaski County "hot check" prosecutions to the City of Sherwood District Court ("Sherwood District Court"), and then to use a labyrinthine, post-conviction debt collection system that captures citizens in a never-ending cycle of court proceedings and administrative procedures they do not understand, arrests they cannot avoid, payments they cannot afford and, all too often, weeks or months behind bars because they cannot pay for their freedom.  Sherwood and Pulaski County have used this modern-day "Debtors'

Prison system" for over 20 years to pursue the collection of debts in thousands of cases involving those who are often the local community's most vulnerable citizens.

Defendants' illegal debt collection system is inconsistent with Arkansas' codified fine collection procedures, Ark. Code Ann. § 16-13-701, *et seq.*, and has resulted in ongoing violations of fundamental constitutional rights of Plaintiffs and the prospective class. Defendants, acting under the color of state law, perpetuate these constitutional violations. Thus, Plaintiffs have properly brought claims under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-105, for violations of Plaintiffs' constitutional rights, as well as a claim for illegal exaction under the Arkansas Constitution.

Defendants' outrageous and pervasive scheme violates the rights of the poorest and most vulnerable citizens in the community. For too long, this scheme has not only been tolerated—it has been embraced by Pulaski County and the other Defendants as policy, practice, and custom to fund the ever-increasing demand for public revenue. Unless stopped, Defendants' scheme will continue to violate Plaintiffs' and the potential class members' constitutional rights. Pulaski County's motion should be denied.

## STATUS OF THE CASE

Plaintiffs filed their original class action complaint on August 23, 2016, against Sherwood, Judge Hale, and Pulaski County. Sherwood and Judge Hale served their joint answer to that complaint on September 7, 2016, and Pulaski County served its answer to that complaint on September 13, 2016, denying and contesting Plaintiffs' allegations. Plaintiffs served their First Amended Complaint on September 30, 2016, adding Mr. Jegley as a defendant. Pulaski County served its answer to that Complaint on October 21, 2016, and separately filed this Motion for Judgment on the Pleadings.

On October 6, 2016, Sherwood and Judge Hale served their answer to the Complaint, again denying and contesting Plaintiffs' allegations, while simultaneously serving a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c).  Mr. Jegley did not answer the Complaint and, instead, on October 19, 2016, moved to dismiss under Fed. R. Civ. P. 12(b)(6).  Plaintiffs are responding to those motions separately.  *See* ECF Nos. 33, 35, 37, 38.

## **ARGUMENT**

**I.  Plaintiffs' Complaint Adequately States a Claim that Pulaski County's Custom and Usage Violates Plaintiffs' Constitutional Rights.**

A.  Judgment on the Pleadings under Fed. R. Civ. P. 12(c).

"The federal rules of pleading are very liberal, and summary dismissal of a civil action on the basis of the pleadings alone is a drastic remedy in federal practice." *Hungate v. United States*, 626 F.2d 60, 62 (8th Cir. 1980); *see also Roemhild v. Jones*, 239 F.2d 492, 494 (8th Cir. 1957) ("The policy of the courts is to dispose of law suits on their merits whenever possible rather than on motions for judgments on pleadings. . . .  A judgment will not be rendered on the pleadings unless the right thereto is clear.").

A court can grant a Rule 12(c) motion only "when the moving party clearly shows there are no material factual issues and the moving party is entitled to judgment as a matter of law," *Franklin High Yield Tax-Free Income Fund v. Cty. of Martin*, 152 F.3d 736, 738 (8th Cir. 1998), that is, only if "'it appears *beyond doubt* that the plaintiff[s] can prove *no set of facts* which would entitle [them] to relief,'" *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (quoting *Morton v. Becker*, 79 F.2d 185, 187 (8th Cir. 1986)) (emphasis added).

In a Rule 12(c) motion for failure to state a claim, the same strict standard for a motion under Rule 12(b)(6) applies, and the court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the

non-moving party." *Haney v. Portfolio Recovery Assocs., L.L.C.*, 2016 U.S. App. LEXIS 17287, at *10 (8th Cir. Sept. 21, 2016).

      B.    <u>Legal Standard for Civil Rights Claims Under § 1983.</u>

      To bring a claim under § 1983 against Pulaski County, Plaintiffs must allege that their federal constitutional rights were violated by: (i) "an 'action pursuant to official [county] policy'"; or (ii) "misconduct" and/or practices "so pervasive among non-policymaking employees of the [county] 'as to constitute a custom or usage with the force of law.'" *Ware v. Jackson Cty.*, 150 F.3d 873, 880 (8th Cir. 1998) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (internal quotation omitted)); *see also Williams v. Butler*, 863 F.2d 1398, 1400-02 (8th Cir. 1988) (same). [3]

      Plaintiffs contend that Pulaski County is liable in this case because the County and its employees have engaged in long-standing, pervasive conduct that constitutes a custom or usage with the force of law. *See Monell*, 436 U.S. at 691. To state a claim that Pulaski County is liable under § 1983 based on custom or usage, Plaintiffs must allege: "1) [t]he existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by [Pulaski's] employees; 2) [d]eliberate indifference to or tacit authorization of such conduct by [Pulaski's] policymaking officials after notice to the officials of that misconduct; and 3) [t]hat [Plaintiffs were] injured by acts pursuant to [Pulaski's] custom, *i.e.*, that the custom was the moving force behind the constitutional violation." *Jane Doe v. Special Sch. Dist.*, 901 F.2d 642, 645 (8th Cir. 1990) (citing *Harris v. City of Pagedale*, 821 F.2d 499, 504-07 (8th Cir. 1987)). "This standard serves to prevent municipal evasion of liability through improper delegation of policy

---

[3] Plaintiffs separately allege that Pulaski County violated the Arkansas Civil Rights Act (codified at Arkansas Code Annotated § 16-123-101 *et seq.* ("ACRA")). Compl. ¶¶ 141-143, 144-146, 151-154, 159-162. Although Pulaski County appears to seek dismissal of these ACRA claims in its Motion for Judgment on the Pleadings, *see* ECF No. 28, it does not address these separate claims in its supporting brief, ECF No. 29.

responsibility or acquiescence in pervasive constitutional violations by [municipal] employees." *McGautha v. Jackson Cty.*, 36 F.3d 53, 56-57 (8th Cir. 1994).

C.     Plaintiffs State a Claim Under Section 1983 Against Pulaski County.

Plaintiffs' Complaint properly states a claim against Pulaski County under § 1983 based on conduct reflecting long-term custom, usage, and practice by the County and its employees. Pulaski County's brief, however, does not address this type of claim and, instead, argues only that Plaintiffs have not properly alleged a claim under § 1983 against Pulaski County based on the existence of an official policy.[4]

As a procedural matter on a motion for judgment on the pleadings, Pulaski County has the burden to show "beyond doubt that the [P]laintiff[s] can prove no set of facts which would entitle [them] to relief." *Morton*, 79 F.2d at 187.  Pulaski County, however, fails to address or even refer to the fact that Plaintiffs properly state a claim that the illegal conduct described and alleged in the Complaint reflects a long-term custom and usage by Pulaski County and its employees and is therefore actionable under § 1983.  Nowhere in Pulaski County's brief does it refer to the proper legal standard for demonstrating a custom or usage violation of § 1983 or establish that, in light of the detailed allegations in the Complaint—which must be taken as true—Plaintiffs can prove no set of facts that would entitle them to relief against the County for this type of § 1983 violation.  Thus, as a procedural matter under Eighth Circuit authority, Pulaski County's motion to dismiss the § 1983 claims against it must be denied.  Moreover, as demonstrated below, Pulaski County's motion fails on the substance as well.

---

[4] To establish Pulaski County's liability for a custom or usage violation under § 1983, Plaintiffs do not need to allege or establish the existence of an official policy, written or unwritten.  *See Monell*, 436 U.S. at 690-91.  Thus, Pulaski County's argument that that "there is no allegation [against Pulaski County] of a documented [unconstitutional] policy, Cty. Br. at 4-5, simply misses the mark.

The Complaint describes the existence of a widespread, long-standing, persistent pattern of unconstitutional misconduct perpetrated by the Defendants, including Pulaski County, which is the basis for the Plaintiffs' claim against the County that the illegal debt collection scheme constitutes a custom and usage that has the force of law and continues to violate the rights of Plaintiffs and others similarly situated.  *See* Compl. *passim*.[5]  This scheme is only possible through the active involvement of Pulaski County policymakers and coordination among Pulaski County institutions, including the Pulaski County Sheriff, the Pulaski County Sheriff's Office, the Pulaski County Regional Detention Facility ("Pulaski County Jail"), and the staff of the Pulaski County Prosecutor's Office.  *Id.* ¶¶ 6, 25, 80-84.

Pulaski County was instrumental in initiating the Debtors' Prison system.  As alleged in the Complaint—and as Pulaski County concedes, Cty. Br. at 4-5—in 1975 the municipal judges of Pulaski County agreed with the then-Judicial District Prosecuting Attorney to channel all misdemeanor Hot Check charges to the local Sherwood Municipal Court, now the Sherwood District Court.  Compl. ¶¶ 4, 67.  This same system continues today.  Pulaski County has participated actively in this arrangement for decades and to its substantial financial benefit.  Compl. ¶¶ 83, 84.  In fact, because a portion of the fees that the Defendants seek to impose through this debt collection scheme include County Jail Fees mandated legislatively by Pulaski County, the County has a direct financial interest in the success and ongoing use of the illegal debt collection system in Sherwood District Court.   Compl. ¶ 83; *see* Pulaski Cty. Ordinance No. 09-OR-22, dated April 30, 2009 (imposition of County Jail Fee); Pulaski Cty. Ordinance No. 03-OR-54, dated June 27, 2003 (imposition of County Jail Fee).

---

[5] In addition to Plaintiffs' contention that the illegal debt collection scheme is a custom and usage that it may challenge under § 1983 as against all of the Defendants, Plaintiffs also allege that this scheme reflects an actual policy put in place by Sherwood and by Judge Hale and Mr. Jegley in their official capacities.

The Pulaski County Jail—under the direction and oversight of the Pulaski County Sheriff, Compl. ¶ 25—exemplifies Pulaski County's involvement in and awareness of this unconstitutional misconduct.  The Pulaski County Jail is the county institution that incarcerates individuals for failure to pay fines, fees, and court costs that they are unable to pay, and without any inquiry into their ability to pay.  *Id.* ¶¶ 25, 58.  Pulaski County's misconduct literally deprives these individuals of their liberty without due process, as Plaintiffs allege.  *Id.* ¶¶ 136-137, 139-140, 142-143, 145-146, 153-154.  The Pulaski County Jail is the proverbial Debtors' Prison.

Pulaski County and the Pulaski County Sheriff have participated in this notorious debt collection system over many years, by accepting into and maintaining in custody indigent prisoners from the Sherwood District Court.  Compl. ¶¶ 3, 25, 58.  Pulaski County itself further authorizes its unconstitutional misconduct by funding the incarceration of hot check defendants who are caught in this debt collection system, despite their inability to pay these outstanding debts.  *Id.* ¶¶ 25, 84.  Pulaski County's customs and practices relating to the Pulaski County Jail are a moving force behind the unconstitutional incarceration of Plaintiffs and those persons in the putative class.  Pulaski County, working with the other Defendants, has deprived Plaintiffs of their liberty by incarcerating them in the Pulaski County Jail for failure to pay fines, fees, and court costs despite their inability to pay.  *Id.* ¶¶ 85-95 (Charles Dade); *id.* ¶¶ 96-105 (Nakita Lewis); *id.* ¶¶ 106-116 (Nikki Petree); *id.* ¶¶ 117-127 (Lee Robertson).

Moreover, as alleged in the Complaint, Pulaski County's misconduct also includes active participation in the jail docket of the Sherwood District Court.  Compl. ¶¶ 40, 41.  The jail docket is only possible through a close collaboration between the Sherwood District Court and the Pulaski County Jail and the Pulaski County Sheriff.  *Id.*  The jail docket is part of the

8

unconstitutional post-conviction debt collection scheme described in the Complaint.  On the jail

docket, individuals incarcerated in Pulaski County Jail are summarily subject to illegal

post-conviction debt collection procedures, where they are threatened with continuing

incarceration in the Pulaski County Jail based on a failure to pay outstanding fees, fines, and

court costs despite their inability to pay, and without any inquiry to their inability to pay.

*Id.* ¶¶ 40, 41, 42, 88, 90, 92, 93.  The jail docket procedures have no regard for Fourteenth

Amendment rights.  *Id.* ¶¶ 88, 92, 93.  These jail docket procedures also deprive these

individuals of their right to counsel.  *Id.* ¶¶ 41, 90.  The Sheriff and by extension Pulaski County,

along with the Sherwood District Court, have institutionalized the jail docket as part of the debt

collection system, authorizing the existence and perpetuation of long standing unconstitutional

practices.  *Id.* ¶¶ 40, 41, 42.

Additional practices of Pulaski County also form a part of the unconstitutional customs

that have directly caused harm to Plaintiffs and those similarly situated.  Pulaski County imposes

fees on those subject to Sherwood's and Pulaski County's unconstitutional post-conviction debt

collections practices.  *Id.* ¶ 83.  Indeed, Pulaski County uses its legislative authority to direct the

Sherwood District Court to: (a) impose additional fees for each conviction on debt collection

charges applicable to this action, such as failure to pay and failure to appear, *id.*; (b) collect those

fees; and (c) remit those fees to the Pulaski County Prosecutor and Pulaski County Jail.  *Id.*;

Pulaski Cty. Mun. Code §§ 4-6, 4-14.  These fees include a Prosecuting Attorney Hot Check Fee

and a County Jail Fee.  *Id.*  By collecting a County Jail Fee, Pulaski County has demonstrated its

institutional support for this debt collection system—namely, in violation of the U.S. and

Arkansas Constitutions, Pulaski County incarcerates, and uses county funds to pay to incarcerate,

those hot check convicts, including Plaintiffs, who cannot pay their assessed County Jail Fees,

among other fines and fees.  *See* Compl. ¶¶ 88-95 (Charles Dade); *id*. ¶¶ 104-105 (Nakita Lewis); *id*. ¶¶ 115-116 (Nikki Petree); *id*. ¶¶ 125-127 (Lee Robertson); *id*. ¶¶ 135-137 (Count One of the Complaint); *id*. ¶¶ 141-143 (Count Three of the Complaint).

Moreover, Pulaski County funds the Pulaski County Prosecutor's Office, whose personnel are directly involved in the operation of this debt collection system in the Sherwood District Court.  Compl. ¶ 25.  As Pulaski County concedes, Cty. Br. at 10, it funds the "facilities, equipment, supplies, salaries and benefits of existing support staff, and other office expenses for elected prosecuting attorneys and deputy prosecuting attorneys."  Ark. Code Ann. § 16-21-156. *See also infra* Sec. V.  Sherwood's and Pulaski County's illegal post-conviction debt collection scheme persists through the financial support of Pulaski County.

Finally, Pulaski County operates a website that promotes and facilitates the prosecution of hot check defendants and the collection of related funds.  (*See* http://pulaskicounty.net/ pulaski-county-law-enforcement/, last visited Nov. 16, 2016.)[6]  The website states: "[t]his unit educates merchants on prevention of hot check offenses and on effective prosecution or collection of hot checks."  *Id.*  Pulaski County thereby helps feed the illegal debt collection system in Sherwood District Court with potential debtors, knowing that there is a financial reward for Pulaski County as a result.  Compl. ¶ 83.

In sum, through its persistent and widely known misconduct, which it first initiated in 1975 and continues to this day, Pulaski County is instrumental to a post-conviction debt collection scheme that extracts revenue from its poorest citizens using the threat and reality of

---

[6] In deciding a dispositive Rule 12 motion, a court can properly consider "materials that are part of the public record," *Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999), without converting the motion into a motion for summary judgment, *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 802-03 (8th Cir. 2002).  *See Rasmusson v. Chisago Cty.*, 991 F. Supp. 2d 1065, 1071 (D. Minn. 2014) (considering document obtained from government agency website "because it is a public record")*; see also In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1024 (N.D. Cal. 2014) (considering "publicly accessible websites" in deciding a motion to dismiss).

incarceration in violation of the U.S. and Arkansas constitutions.  Plaintiffs have therefore alleged a continuing, widespread, persistent pattern of unconstitutional misconduct by Pulaski County's employees, authorized and contributed to by Pulaski County's policymaking officials after notice to them of that misconduct, and constitutional harm to Plaintiffs caused by Pulaski County's misconduct.  *See Jane Doe*, 901 F.2d at 645; *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997) ("[Municipal decision makers'] continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability") (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)).

Instead of addressing the detailed allegations in the Complaint describing Pulaski County's pervasive misconduct in creating, perpetuating, and profiting from its unconstitutional post-conviction debt collection scheme, Compl. ¶¶ 136, 137, 139, 140, 142, 143, 145, 146, 153, 154, Pulaski County's brief focuses on the other Defendants' conduct, which, while improper, does not absolve Pulaski County of liability under § 1983.  Cty. Br. at 5-11.

Plaintiffs respectively submit that Pulaski County's motion to dismiss for failure to state a claim under § 1983 should be denied.

## II.     The *Rooker-Feldman* and *Heck* Doctrines Do Not Apply Because Plaintiffs Do Not Seek to Review or Reject Past Judgments or Shorten Incarceration.

### A.     *Rooker-Feldman* Abstention Does Not Apply to Plaintiffs' Claims.

Pulaski County argues, without basis, that Plaintiffs' claims should be dismissed under the *Rooker-Feldman* doctrine, which bars "state-court losers" from "inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  The County claims that Plaintiffs "directly challenge their jail sentences" and

that Plaintiffs seek to overturn those sentences.  Cty. Br. at 13.  But these assertions are plainly

wrong and misconstrue Plaintiffs' claims.  Plaintiffs only seek to have declared unconstitutional,

as a violation of core Due Process, Equal Protection, and other constitutional rights, Pulaski

County's and Sherwood's post-conviction debt collection processes, which exploit those who are

unable to pay outstanding fines, fees, and court costs.

In the Eighth Circuit, *Rooker-Feldman* only bars a claim if "the plaintiff in federal court,

in fact, seeks relief from the state court judgment."  *Hageman v. Barton*, 2016 WL 1212235, at

*3 (8th Cir. Mar. 29, 2016).  "[N]ot every federal claim which would cast doubt on a state court

judgment is barred by *Rooker-Feldman.*"  *Simes v. Huckabee*, 354 F.3d 823, 827 (8th Cir. 2004).

In this action, as in *MSK EyEs Ltd. v. Wells Fargo Bank*, "[a]lthough [Plaintiffs] complain of

injuries caused by the [local] court judgment, their claims do not seek review and rejection of

that judgment.  They do not challenge the court's issuance of the judgment or seek to have that

judgment overturned."  546 F.3d 533, 539 (8th Cir. 2008).

Rather, Plaintiffs seek prospective relief related to, *inter alia*, Pulaski County's and

Sherwood's post-conviction collection methods and procedures in the Sherwood District Court

for failures to pay court costs, fines, and fees owed by individuals despite their inability to pay.

*See, e.g.*, Compl. ¶¶ 136, 143, 145.  If Plaintiffs obtain relief here, their underlying guilty pleas,

convictions, and sentences that led to those outstanding court costs, fines, and fees are unaffected

and remain intact.  Because none of the relief that Plaintiffs seek would require the rejection of

the Sherwood District Court's underlying state law judgments, *Rooker-Feldman* does not apply.

In *Fant v. City of Ferguson*, very similar claims to those asserted here did not implicate

*Rooker-Feldman*.  The *Ferguson* plaintiffs brought a class action alleging violations of their

Fourth, Sixth, and Fourteenth Amendment rights, arising from the Ferguson's practice of jailing

12

individuals for failing to pay fines.  107 F. Supp. 3d 1016, 1022-24 (E.D. Mo. 2015).  Ferguson

argued that the *Rooker-Feldman* doctrine barred the suit because the harm to plaintiffs arose

from allegedly unconstitutional practices that resulted in unconstitutional judgments.  *Id.* at 1024.

The court rejected that argument, holding that "[b]ecause Plaintiffs do not complain of injuries

caused by the state court judgment, but rather by the post-judgment procedures employed to

incarcerate persons who are unable to pay fines, *Rooker-Feldman* is . . . inapplicable."  *Id.* at

1030.  That exact reasoning applies here, where Plaintiffs do not challenge the underlying state

law judgments that led to outstanding fees, fines, and costs.  *Rooker-Feldman* does not apply.

      B.      <u>The *Heck* Bar Does Not Apply Because Plaintiffs Do Not Seek a Necessary End to, or Acceleration of, Confinement Imposed by the Sherwood District Court.</u>

Pulaski County incorrectly relies on *Heck v. Humphrey*, 512 U.S. 477 (1994) as a basis to

challenge Plaintiffs' Complaint.  They erroneously allege that Plaintiffs are seeking to challenge

"the fact or duration of [their] confinement" in a § 1983 action, which a plaintiff may not do

under *Preiser v. Rodriguez,* 411 U.S. 475, 489 (1973).

The Supreme Court has made clear that the *Heck* bar only applies where plaintiffs' claims

would <u>necessarily</u> result in "immediate or speedier release for the prisoner."  *Wilkinson v.

Dotson*, 544 U.S. 74, 81 (2005); *see also Skinner v. Switzer*, 562 U.S. 521, 533-35 (2005);

*White v. Fergus*, 2015 U.S. Dist. LEXIS 156632, at *3 (E.D. Ark. Nov. 13, 2015).

Where a § 1983 claim will not necessarily shorten or end incarceration, and instead seeks

only prospective relief, the *Heck* bar does not apply.  Pulaski County mistakenly relies on

*Edwards v. Balisok*, 520 U.S. 641 (1997), and claims that the relief sought here "would

invalidate Plaintiffs' convictions and sentences," suggesting that habeas corpus was the proper

channel for relief.  Cty. Br. at 12-13.

To the contrary, *Balisok* expressly held that state prisoners can use § 1983 to seek prospective relief—the relief sought in this action.  520 U.S. at 648.  In *Balisok*, the Court found that while state prisoners could not challenge the deprivation of good-time credits that would necessarily shorten a sentence, they could seek an injunction barring future unconstitutional procedures, because "[o]rdinarily, a prayer for such prospective relief will not 'necessarily imply' the invalidity of a previous loss of good-time credits."  *Id.*; *see also Wolff v. McDonnell*, 418 U.S. 539, 553 (1974) (finding state prisoners could not challenge revocation of good-time credits, but could seek declaratory relief against disciplinary procedures used by guards).

Similarly, in *Wilkinson v. Dotson*, state prisoners challenged the constitutionality of Ohio's parole procedures under § 1983, seeking new parole hearings.  544 U.S. 74, 76 (2005).  The Court found the claims cognizable because "[n]either respondent seeks an injunction ordering his immediate or speedier release into the community"; rather, success would "mean[] at most new eligibility review, which at most will speed *consideration* of a new parole application."  *Id.* at 82.  In reaching this conclusion, the Court cited to *Balisok* in finding that "habeas remedies do not displace § 1983 actions where success in the civil rights suit would not necessarily vitiate the legality of (not previously invalidated) state confinement."  *Id.* at 81.

In this case, Plaintiffs do not seek to end or shorten any terms of confinement.  Instead, they seek a declaration that Defendants' post-conviction debt collection scheme violates specific constitutional rights (as set forth in the separate claims of the Complaint, *see* Compl. ¶¶ 135-172) and a prospective injunction barring Sherwood and Pulaski County from continuing the scheme.  None of the relief sought here would necessarily shorten or end any existing prison sentences.  As in *Wilkinson*, relief here would—at most—result in new hearings to consider a Plaintiff's

14

ability to pay the fines, fees, and court costs assessed by the Sherwood District Court and, if and when a Plaintiff is found unable to pay, require further proceedings consistent with that finding.

Other courts have found that *Heck* does not apply to § 1983 claims similar to Plaintiffs'. In *Ferguson*, *Heck* did not bar challenges to Ferguson's post-judgment fee collection policies because "[a] judgment in Plaintiffs' favor would not necessarily demonstrate the invalidity of Plaintiffs' underlying traffic convictions or fines, but only the City's procedures for enforcing those fines." 107 F. Supp. 3d at 1028-29. Similarly, *Heck* did not apply in *Cain v. City of New Orleans*, where plaintiffs did not challenge the bases for guilty pleas but only a policy of jailing indigent criminals in an effort to collect unpaid court costs without "sufficient inquiry into . . . defendants' good-faith ability to pay." 2016 U.S. Dist. LEXIS 53554, at *21-24 (E.D. La. Apr. 21, 2016); *see also Ray v. Judicial Corr. Servs.*, 2013 U.S. Dist. LEXIS 139480, at *21-24 (N.D. Ala. Sept. 26, 2013) (finding *Heck* inapplicable to "procedural challenges to the Town's conduct—*e.g.*, the lack of an indigency hearing . . . and/or the lack of providing counsel prior to incarceration" that did not "attack[] the propriety of . . . confinement or probation").

## III.    Plaintiff Philip Axelroth Properly States an Illegal Exaction Claim Against Pulaski County Based on Misapplication and Illegal Spending of Public Funds.

### A.    Plaintiff Philip Axelroth Complaint Properly States an Illegal Exaction Claim.

Pulaski County asks the Court to dismiss, at the pleadings stage, Plaintiff Phillip Axelroth's illegal exaction claim based on several different, but related grounds. All of Pulaski County's arguments, however, are premised on a mischaracterization of Mr. Axelroth's claim, alleging that he is challenging the imposition, assessment, and collection of a tax. But that is false. Mr. Axelroth is not seeking to challenge any Pulaski County tax at all and, instead, is pursuing his rights under the Arkansas Constitution to challenge the misapplication and illegal *spending* of public funds by Sherwood and Pulaski County, which is termed by the Arkansas

courts a "public funds" type of illegal exaction claim.  *See McCafferty v. Oxford Am. Literary*

*Project, Inc*., 484 S.W.3d 662, 664 (Ark. 2016).  As such, Pulaski County's reliance on the Tax

Injunction Act, 28 U.S.C. § 1341 (the "TIA"), the Supreme Court's decision in *Fair Assessment*

*in Real Estate Ass'n v. McNary*, 454 U.S. 100 (1981), and its progeny completely miss the mark.

More fundamentally, Pulaski County's arguments ignore long-standing Arkansas law that makes

clear that Mr. Axelroth has alleged sufficient facts to support his claim for illegal exaction under

the Arkansas Constitution, Art. 16, § 13.

> An illegal exaction is any exaction that is not authorized by law or is contrary to law.

> Two types of illegal-exaction cases can arise under article 16, section 13: "public funds" cases, where the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent, and "illegal-tax" cases, where the plaintiff asserts that the tax itself is illegal.

*McCafferty*, 484 S.W.3d at 664.  A "public funds" type of illegal exaction claim can proceed

where plaintiff has alleged that "monies from tax dollars or arising from taxation are being

misapplied or illegally spent."  *Id*.; *Bowerman v. Takeda Pharms. U.S.A*., 442 S.W.3d 839,

843 (Ark. 2014); *Starnes v. Sadler*, 237 Ark. 325, 330 (1963) ("[A] misapplication by a public

official of funds arising from taxation constitutes an exaction from the taxpayers and empowers

any citizens to maintain a suit to prevent such misapplication of funds.").  In the Complaint,

Mr. Axelroth asserts a "public funds" type illegal exaction claim.  Compl. ¶¶ 7, 15, 173-175. [7]

At no point does Mr. Axelroth's illegal exaction claim question or challenge the imposition,

assessment, or collection of taxes by Pulaski County.

---

[7] The only standing requirements under the Arkansas Constitution to bring a public funds case are that plaintiff is a citizen and has contributed tax money to the public treasury. *See, e.g.*, *Ghegan & Ghegan, Inc. v. Weiss*, 338 Ark. 9, 13-16 (1999).  The amount of public funds that are illegally spent can be *de minimis* yet still confers standing on a taxpayer. *Chapman v. Bevilacqua*, 344 Ark. 262, 271 (2001) (payment of city's employee salaries to conduct illegal program sufficient); *Starnes v. Sadler*, 237 Ark. 325, 329-30 (1963); *see* Compl. ¶¶ 23, 175; *see also Booth v. Hvass*, 302 F.3d 849, 851-52 (8th Cir. 2002) (municipal taxpayer has standing to sue municipality to enjoin illegal disposition of taxes).

Plaintiffs allege that, as a result and as a part of Defendants' illegal debt collection scheme through the Sherwood District Court, individuals are being unconstitutionally imprisoned in the Pulaski County Jail for non-payment of court costs, fines, and fees despite their inability to pay those debts and without any inquiry into whether they can pay.  *Id.* ¶¶ 7, 10, 58-60, 175.  With respect to each of the four named class representatives (the other named Plaintiffs), Plaintiffs allege that each of them has been illegally incarcerated in the Pulaski County Jail as a result of this illegal debt collection scheme.  *See id.* ¶¶ 88-89, 92-95 (Charles Dade); *id.* ¶¶ 102-105 (Nakita Lewis); *id.* ¶¶ 115-16 (Nikki Petree); *id.* ¶¶ 125-127 (Lee Robertson).  Plaintiffs further allege that Pulaski County spends taxpayer funds to illegally hold these individuals in the Pulaski County Jail as part of and as a result of this illegal scheme. *Id.* ¶¶ 7, 59-60, 84, 175.  As such, Mr. Axelroth alleges that Sherwood and Pulaski County misapply and illegally spend public funds, pursuant to Defendants' illegal scheme, to incarcerate these individuals in violation of their Constitutional rights.  *Id.*

Mr. Axelroth also alleges that Pulaski County is improperly expending public funds to support and perpetuate the pervasive, illegal collection and enforcement scheme detailed in the Complaint.  First, Defendants are systemically violating Plaintiffs' rights through this scheme. *See, e.g.*, *id.* ¶¶ 28-32 (illegally closing the courtroom); *id.* ¶¶ 52, 55-56 (failing to provide defendants adequate due process); *id.* ¶¶ 51-62 (enforcing an illegal and unauthorized collection scheme); *id.* ¶ 80 (through its Hot Check Program, funnels hot check cases to the Sherwood District Court); ¶ 83 (directing the imposition of certain fees).  Second, Pulaski County is using its taxpayer-generated general fund to support this illegal scheme, specifically paying to illegally incarcerate individuals in the Pulaski County Jail for failure to pay court costs, fines and fees despite their inability to do so and without any inquiry into whether they could pay.  *See id.* ¶¶ 5,

7, 25, 73, 80, 84, 175. Pulaski County also provides financial support for a "hot check administrator" and three "hot check accounting clerks," as well as numerous other staff who support the Sixth Judicial District Public Prosecutor's Hot Check Unit, operating in the Sherwood District Court. *See* Ark. Code Ann. §§ 16-21-1102(a)(1), 16-21-1102(b)(4); *see also id.* § 16-21-1106 (Pulaski County Quorum Court must appropriate at least $182,250 to support the Pulaski County Division of the Public Prosecutor), *id.* § 16-21-119 (payment of Public Prosecutor office expenses). On a motion for judgment on the pleadings, the Court must assume these allegations are true. *Haney*, 2016 U.S. App. LEXIS 17287, at *10. The Complaint alleges that "the expenditure of public funds to support the [Defendants' illegal scheme] would be a misapplication of public funds" and, thus, sufficiently state a cause of action for illegal exaction. *McGhee v. Ark. State Bd. of Collection Agencies*, 360 Ark. 363, 372 (2005).

      B.      <u>The Tax Injunction Act Does Not Apply to Plaintiffs' Illegal Exaction Claims.</u>

Ignoring these allegations, the County argues that the Court is barred by the TIA from exercising jurisdiction over Mr. Axelroth's illegal exaction claim. Cty. Br. at 15. The TIA provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341. The illegal exaction claim, however, does not challenge in any way the "assessment, levy or collection" of any of the taxes paid to either Sherwood or Pulaski County. Instead, Mr. Axelroth's illegal exaction claim is based on the illegal and improper ***spending*** of public funds by Pulaski County on, *inter alia*, incarcerating individuals in the Pulaski County Jail for failure to pay court costs, fines and fees despite their inability to do so. Thus, the TIA simply does not apply.

> Plaintiffs correctly assert[] that a constitutional challenge to a revenue ***spending program*** may proceed in federal court if the challenge does not also seek to "enjoin, suspend or restrain the assessment, levy or collection" of the tax.

*Concerned Citizens of Belle Haven, v. Belle Haven Club*, 2001 U.S. Dist. LEXIS 25161, at *2 (D. Conn. Sept. 24, 2001) (emphasis added) (quoting *Hoohuli v. Ariyoshi*, 741 F.2d 1169, 1177 (9th Cir. 1984) ("[T]he [TIA] does not deprive federal courts from providing relief from allegedly unconstitutional state ***spending*** programs." (emphasis added)); *see also City of Jefferson City v. Cingular Wireless LLC*, 531 F.3d 595, 603-04 (8th Cir. 2008); *R.J. Reynolds Tobacco Co. v. Bonta*, 272 F. Supp. 2d 1085, 1092 n.6 (E.D. Cal. 2002); *accord Levy v. Parker*, 346 F. Supp. 897, 898 (E.D. La. 1972), *aff'd*, 411 U.S. 978 (1973). Thus, by its express terms, the TIA does not apply to Mr. Axelroth's claims.[8]

For the same reasons, Pulaski County's reliance on *Northwest Arkansas Home Builders Association v. City of Rogers*, 2008 U.S. Dist. LEXIS 19772 (W.D. Ark. Mar. 3, 2008), is misplaced. In that action, the plaintiff brought an illegal exaction claim alleging that the defendants illegally charged access and hook-up fees for new installations of water and sewer services. The illegal exaction claim in *City of Rogers* was an "illegal tax"-type claim, not a "public funds"-type case as alleged in this action. *See id*. at *2. Because the plaintiff in *City of Rogers* was challenging the imposition and collection of a fee, which the Court equated to a tax for purposes of the TIA, *id*. at *6-10, the Court properly found that it lacked jurisdiction to hear that claim. But, Mr. Axelroth's illegal exaction claim here is based on the improper spending of public funds, not the imposition and collection of a tax and, therefore, *City of Rogers* is simply inapplicable.

---

[8] Pulaski County tries to raise the specter that, if this court allows Plaintiff Axelroth's illegal exaction claim to proceed, "the assessment, levy and collection of Pulaski County taxes will be restrained" and that a "ruling in favor of Plaintiffs would place the hands of the federal government into the tax coffers of the Pulaski County." Cty. Br. at 16. Pulaski County offers no basis or support for these contentions, and Plaintiffs seek no such relief here.

Pulaski County next argues that the District Court should decline jurisdiction over Mr. Axelroth's illegal exaction claim under the principles of comity stated in the decisions *Levin v. Commerce Energy, Inc*., 560 U.S. 413 (2010), *Fair Assessment in Real Estate Association v. McNary*, 454 U.S. 100 (1981), and *Kraemer v. Minnesota. Department of Revenue*, 2002 U.S. Dist. LEXIS 18158 (D. Minn. Sept. 24, 2002).  Each of those decisions, however, involved a challenge to a state tax assessment and collection system.  *Levin*, 560 U.S. at 417; *McNary*, 454 U.S. at 101; *Kraemer*, 2002 U.S. Dist. LEXIS 18158, at *5.  In *Levin*, the Court held that "comity precludes the exercise of original federal-court jurisdiction in cases of the kind presented here," *i.e*., in a challenge to a state tax collection system.  560 U.S. at 422 n.2, 423-26; *see McNary*, 454 U.S. at 110-11;[9] *Kraemer*, 2002 U.S. Dist. LEXIS 18158, at *10-11.  As described above, however, Mr. Axelroth's illegal exaction claim in this case is not challenging a state tax collection system and, therefore, the unique comity considerations addressed in *Levin*, *McNary*, and *Kraemer* simply do not apply.[10]

Pulaski County then argues—without citation to authority—that "[a]s a logical proposition, the illegal exaction claim brought by Plaintiffs cannot be the type of claim contemplated by Article 16, section 13 of the Arkansas Constitution."  Cty. Br. at 19.  Again, Pulaski County is mistaken.

> With little limitation, almost any misuse or mishandling to public funds may be challenged by a taxpayer action.  Even paying too much for cleaning public outhouses had been held by our courts as a basis for a taxpayer's right to relief.

---

[9] Later cases have limited *McNary* to addressing when a § 1983 claim can be brought to challenge a state tax collection system, rather than a general statement of how comity applies when a federal court reviews a state tax collection system.  *See Nat'l Private Truck Council v. Okla. Tax Comm'n*, 515 U.S. 582, 589-90 (1995).

[10] In its brief Pulaski County also quotes from *Younger v. Harris*, 401 U.S. 37, 44 (1971), to provide a general definition of "comity."  Cty. Br. at 17.  As explained in further detail in Plaintiffs' Memorandum in Opposition to Defendant Larry Jegley's Motion to Dismiss, *Younger* has not barred civil rights challenges brought against other debtor prison systems around the country that are similar to that at issue in this action.  *See* Plaintiffs' Response in Opposition to Motion to Dismiss by Defendant Larry Jegley, dated Nov. 21, 2016, at Sec. V.

*Nelson v. Berry Petroleum Co.*, 242 Ark. 273, 277 (1967) (citing cases); *Farrell v. Oliver*,

146 Ark. 599, 602 (1921).

> We have explained that citizens have standing to bring a public funds case because they have a vested interest in ensuring that the tax money they have contributed to the state treasury is lawfully spent. Thus, the only standing requirements we have imposed in public funds cases is that the plaintiff be a citizen and that he or she have contributed tax money to the general treasury. We have not required the plaintiff to trace his or her individual tax contribution to the tax money that is allegedly being spent in an illegal manner, nor have we required the plaintiff to establish a significant tax contribution to the state treasury. Hence, in public-funds cases we have given the word "interested" as used in the Article 16, Section 13, a very broad construction.

*Ghegan & Ghegan, Inc.*, 338 Ark. at 16; *accord Bowerman v. Takeda Pharms. U.S.A.*,

442 S.W.3d 839, 843 (Ark. 2014) ("**_Any_** arbitrary or unlawful action exacting taxes or tax

revenue may be restrained and annulled by a taxpayer affected by such procedure."); *McGhee*,

360 Ark. at 371-72 (same); *cf. Nichols v. City of Rehoboth Beach*, 836 F.3d 275, 280 (3d Cir.

2016) (municipal taxpayers have standing to challenge municipal expenditures under Article III).

Pulaski County tries to suggest that, if Mr. Axelroth's claim is upheld, "violation of an

individual's constitutional rights by a government office would render the entire governmental

framework illegal and subject to an illegal exaction." Cty. Br. at 19. Again, Pulaski County

misstates Mr. Axelroth's claim and overstates its potential effect. Mr. Axelroth is only seeking

disgorgement and a refund of specific county expenditures that result directly from the illegal

debt collection scheme, such as the specific amounts spent to incarcerate individuals who failed

to pay fines and fees despite their inability to pay.

Finally, Pulaski County argues that, if Mr. Axelroth succeeds on his illegal exaction

claim, he can only recover those monies expended subsequent to the filing of the original

complaint in this action. It bases this argument, however, on an illegal exaction case involving a

challenge to an illegal tax, in which the Arkansas Supreme Court held that, in a suit challenging

an illegal tax, any tax payments made prior to suit being filed are deemed to have been voluntarily paid and, therefore, cannot be recovered.  *See Weiss v. Chavers*, 357 Ark. 607, 614 (2004) (challenging tax collection scheme as violation of Commerce Clause and Equal Protection Clause).  This rule is based on the common law rule that, when challenging an illegal tax, a plaintiff cannot recover voluntarily paid taxes.  *See Mertz v. Pappas*, 320 Ark. 368, 370 (1995); *City of Little Rock v. Cash*, 277 Ark. 494, 503-05 (1982).  Plaintiff Axelroth here, however, does not challenge the assessment and collection of an illegal tax; rather he has brought an illegal exaction claim based on the improper and illegal use of public funds by Pulaski County.  In a "public funds" type illegal exaction claim, the Arkansas courts apply a three-year statute of limitations to determine what funds may be subject to an equitable refund or disgorgement.  *Parker v. Laws*, 249 Ark. 632, 636-37 (1970); *Ward v. Farrell*, 221 Ark. 363, 366-67 (1952); *see Green v. Jones*, 164 Ark. 118, 122-23 (1924).  Under *Parker*, Mr. Axelroth may seek not only injunctive relief, but also may seek a refund for improper expenditures of public funds during the three-year period prior to the filing of the original complaint.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that Pulaski County's motion for judgment on the pleadings be denied.

Dated: November 21, 2016
By:  /s/ *J. Alexander Lawrence*
Bettina E. Brownstein
**BETTINA E. BROWNSTEIN LAW FIRM**
904 West 2nd Street
Little Rock, AR 72201
Tel:  (501) 920-1764
bettinabrowstein@gmail.com

J. Alexander Lawrence
Jayson L. Cohen

**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, NY 10019
Tel:  (212) 336-8638
Fax:  (212) 468-7900
ALawrence@mofo.com
JCohen@mofo.com

Reggie Koch
**THE KOCH LAW FIRM**
2024 Arkansas Valley Drive, Suite 707
Little Rock, AR 72212
Tel: (501) 223-5310
Fax: (501) 223-5311
reggie@reggiekoch.com


Hallie N. Ryan
**LAWYERS COMMITTEE FOR
CIVIL RIGHTS UNDER THE LAW**
1401 New York Avenue, N.W., Suite 400
Washington, D.C. 20005
Tel: (202) 662-8359
HRyan@lawyerscommittee.org

*Attorneys for Plaintiffs*


TO:

David M. Fuqua
Fuqua Campbell, P.A.
3700 Cantrell Road, Suite 205
Little Rock, AR 72202
Tel: (501) 374-0200
dfuqua@fc-lawyers.com

*Attorneys for Pulaski County*

Michael Mosley
Post Office Box 38
North Little Rock, AR  72115
Tel: (501) 978-6131
mmosley@arml.org

John Wesley Hall, Jr.

1202 Main Street, Suite 210
Little Rock, Arkansas 72202-5057
Tel:  (501) 371-9131
ForHall@aol.com

*Attorney for City of Sherwood and*
*Honorable Milas H. Hale, III*


Leslie Rutledge, Attorney General
By:   Patrick Hollingsworth, Assistant
        Attorney General
323 Center Street, Suite 200
Little Rock, AR  72201-2610
Tel:  (501) 682-1051
Patrick.hollingsworth@arkansasag.gov

*Attorneys for Larry Jegley, in his official*
*capacity as Prosecuting Attorney for the*
*Sixth Judicial District*

## <u>CERTIFICATE OF SERVICE</u>

I, Jayson L. Cohen, certify that on November 21, 2016, I filed the foregoing

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE**

**PLEADINGS BY PULASKI COUNTY, ARKANSAS,** using the Court's CM/ECF system,

whereby all counsel of record were served.


 /s/ *Jayson L. Cohen*             
Jayson L. Cohen