IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| CHARLES DADE, NAKITA LEWIS, NIKKI PETREE, LEE ANDREW ROBERTSON, and PHILIP AXELROTH, individually and on behalf of all others similarly situated | PLAINTIFFS |
| VS.       CASE NO. 4:16CV602 JM | |
| CITY OF SHERWOOD, ARKANSAS; PULASKI COUNTY, ARKANSAS; LARRY JEGLEY, in his official capacity; and HONORABLE MILAS H. HALE, III; in his official and individual capacities | DEFENDANTS |

**REPLY IN SUPPORT OF MOTION FOR JUDGMENT
ON THE PLEADINGS BY SEPARATE DEFENDANT,
PULASKI COUNTY, ARKANSAS**

Plaintiffs contend their claims survive Pulaski County's Motion for Judgment on the Pleadings because they have successfully pleaded a Pulaski County custom that violated their constitutional rights, their claims are not barred by *Heck v. Humphrey* or the *Rooker-Feldman* doctrine, and this Court has jurisdiction over their illegal exaction claim. For the following reasons, Plaintiffs are incorrect and the Amended Complaint should be dismissed as to Pulaski County.

I.      **The Amended Complaint Fails to Allege a Pulaski County Policy or Custom**

Plaintiffs argue Pulaski County failed to assert the proper standard when deciding the issue of a municipal policy or custom and, accordingly, ignored allegations in the Amended Complaint that successfully assert a Pulaski County policy or custom. Plaintiffs are correct that Pulaski County approached the official policy claims as claims of official conduct on the part of Pulaski County employees or officials because Plaintiffs did not allege the existence of an unconstitutional ordinance or law but of policy decisions made by County officials. Official policy claims are by their nature claims of official custom, which derive from actions of individuals that have the force of law. The only reasonable interpretation of Plaintiffs' allegations is that they involve claims derived from actions of County officials or employees.

Liability on the basis of custom attaches only when there has been a "pattern of 'persistent and widespread' unconstitutional practices which became so 'permanent and well settled' as to have the effect of force and law." *Jane Doe "A" v. Special Sch. Dist.*, 901 F.2d 642, 646 (8th Cir. 1990) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). To sustain an official custom or usage claim, the following must be proven:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) The plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

2

*Id*. Plaintiffs allege the following unconstitutional misconduct on the part of Pulaski County:

- A 1975 agreement among Pulaski County municipal judges to channel misdemeanor hot check cases to Sherwood District Court;

- The detention of individuals at the Pulaski County Regional Detention Facility ("PCRDF") whose constitutional rights were violated in Sherwood District Court;

- PCRDF's active participation in the jail docket of the Sherwood District Court;

- Pulaski County's involvement in the imposition, collection and disbursement of fees related to debt collection charges and failure to appear charges;

- Pulaski County's funding of the Pulaski County Prosecutor's Office; and

- Pulaski County's operation of the Pulaski County Prosecutor's website.

For multiple reasons, these allegations fail to establish a claim of unconstitutional custom, usage, or practice.

The alleged 1975 agreement, assuming its existence to be true, cannot establish an unconstitutional custom because nominating one court to handle one particular type of case is not a violation of the constitution. District and circuit courts alike often handle one type of case in an attempt to streamline the dockets of all courts in a single jurisdiction. Furthermore, Plaintiffs have presented no evidence that this agreement from over 40 years ago is the moving force behind any constitutional violation attributed to the Sherwood court. Plaintiffs also allege that Pulaski County gains a substantial financial benefit due to this agreement because of county jail fees collected. What Plaintiffs do not seem to understand, however, is that, for the purposes of obtaining county jail fees, it does not matter if hot check prosecutions occur in Sherwood District Court or any other Pulaski County district court. Pulaski County

collects county jail fees from each of the Pulaski County district courts pursuant to Ark. Code Ann. § 12-41-505.

PCRDF's detention of individuals ordered detained by the Sherwood District Court does not constitute unconstitutional misconduct. Plaintiffs' argument – that the County is responsible for unconstitutional court sentences – ignores a sheriff's core responsibility as a jailer. "Neither a county sheriff nor another keeper or administrator of a jail shall refuse to accept any prisoner lawfully arrested or committed within the jurisdiction of the supporting agency of the jail except as necessary to limit prisoner population in compliance with subsection (a) of this section." Ark. Code Ann. § 12-41-503(b). Plaintiffs turn the law on its head by suggesting the County must look behind a sentence to determine if it were constitutionally rendered. Were Plaintiffs correct in their assumptions about the role of jail employees, the logic would require a pre-admission trial or probable cause hearing for all arrestees and committees when a person is presented for detention. This is not the law even for someone arrested without a warrant on the basis of probable cause. Courts determine who should be held in jail, and the jail holds them.

PCRDF's active participation in Sherwood District Court's jail docket also cannot be evidence of an official unconstitutional custom. Jail dockets – the process of giving arrestees their first appearance before a court after arrest – are not unconstitutional. In fact, quite the opposite is true: jail dockets occur in order to protect the rights of individual detainees. Once an individual is arrested, he has a constitutional right to appear before a judge to determine whether detention may continue pending trial. Jail dockets ensure an arrestee's prompt appearance before a judge and, of course, require

4

the cooperation of the courts to effect detainee appearances. And again, Plaintiffs fail to plead facts plausibly establishing jail dockets as the moving force behind the alleged constitutional violations.

The Plaintiffs appear to assert that Pulaski County's assessment of a $25.00 prosecuting attorney hot check fee and a $20.00 county jail fee on hot check defendants establishes an unconstitutional custom. Both fees are specifically authorized by statute – Ark. Code Ann. §§ 5-37-304(b)(2) & 12-41-505. Other than their bare allegations, Plaintiffs make no plausible allegations of fact suggesting or raising a reasonable inference that the collection of these statutory fees by Pulaski County is the moving force behind the alleged constitutional violations.

Pulaski County admits that it provides funding to the Pulaski County Prosecutor's Office. This funding, however, is applied to the facilities, office supplies, and support staff of the office. Pulaski County does not fund the salaries of the Pulaski County Prosecutor or the deputy prosecutors. Such funding is not unconstitutional, as it is mandated under Arkansas law. Further, the funding of facilities, office supplies, and support staff cannot be separated between expenditures necessitated by the existence of the Sherwood court and necessitated by all other aspects of the Prosecutor's office. No plausible inference rises from Plaintiffs' allegations suggesting this funding is the moving force behind the alleged constitutional violations.

The Pulaski County Prosecutor's Office administers a website that gives information on the Hot Check Unit of the Pulaski County Prosecutor's Office. Regarding hot checks, the website states, in its entirety:

> The Hot Checks Unit of the Office of the Prosecuting Attorney serves
> merchants throughout the district in the prosecution and collection of hot

checks, forged checks and related matters. This unit educates merchants on prevention of hot check offenses and on effective prosecution or collection of hot checks. Educational presentations are also available. Call (501) 340-8096.

Pulaski County, Pulaski County Prosecuting Attorney, http://pulaskicounty.net/pulaski-county-law-enforcement/ (last visited December 8, 2016.). Operation of the website itself is not unconstitutional conduct and such an informational website cannot be the moving force behind the alleged constitutional violations. One can hardly imagine how the existence of this website caused anything to happen to Plaintiffs.

II.   The Plaintiffs' Claims Are Barred by *Heck v. Humphrey* and the *Rooker-Feldman* Doctrine

Plaintiffs assert that they seek only to have the system of hot check prosecutions declared unconstitutional, and, therefore, they are not challenging the underlying convictions and sentences. By challenging the system under which they were convicted, however, the Plaintiffs are asserting that their convictions and sentences are fundamentally and constitutionally flawed and must be set aside.

Citing *Wilkinson v. Dotson*, 544 U.S. 74 (2005), Plaintiffs mistakenly argue that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars only claims that would necessarily result in immediate or speedier release for the prisoner. Plaintiffs are confusing the *Heck* bar with the *Preiser* bar. In *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973), the Supreme Court concluded that § 1983 actions that would necessarily result in immediate or speedier release are barred. Such a claim, however, is not the only § 1983 claim that is barred by judicial precedent. The *Heck* bar is an *additional* bar. *Heck* bars actions that would render a conviction or sentence invalid. 512 U.S. at 487. The *Wilkinson* Court speaks to *Heck*: "The [*Heck*] Court pointed to 'the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal

6

judgments.' And it held that where 'establishing the damages claim necessarily demonstrates the invalidity of the conviction' a § 1983 action will not lie 'unless . . . the conviction or sentence has already been invalidated.'" 544 U.S. at 80.[1]

The *Heck* bar applies to Plaintiffs' claims because a finding that Plaintiffs' constitutional rights were violated requires that the convictions and sentences be set aside.[2] Importantly, each plaintiff is likely to have multiple convictions – the original hot check conviction and various failure to appear and contempt of court (for failure to pay fines and costs) convictions. Failure to appear is a violation of Ark. Code Ann. § 5-54-120 and ranges anywhere from an unclassified misdemeanor to a class C felony. Contempt of court is a violation of Ark. Code Ann. § 16-10-108 and is a class C misdemeanor. Plaintiffs indicate throughout the Amended Complaint that their original convictions often resulted in multiple subsequent charges of failure to appear and contempt of court. Amended Complaint, ¶¶ 5, 25, 36, 53- 54, 59-60, 71, 76-77, 82, 87, 91-94, 100, 108, 111-114, 120-121, 124, 130, 158, 162, 165, 170-171. Any post-judgment constitutional violation, particularly ones regarding the Plaintiffs' right to counsel and due process rights, would require that the resulting conviction and sentence be vacated. Plaintiffs' argument to the contrary is one of convenience to forestall dismissal in face of the obvious infirmity of their Amended Complaint.

---

[1]Plaintiffs state that Pulaski County suggests habeas corpus is the proper channel for relief. Pulaski County never suggests such. Habeas corpus relief is not available to Plaintiffs because they are not currently incarcerated. The Eighth Circuit has held, however, that even in cases where habeas relief is not available, the *Heck* bar still applies.  *See Newmy v. Johnson*, 758 F.3d 1008, 1010-1011 (8th Cir. 2014).

[2]In their Response, Plaintiffs seem to ignore the fact that they have requested declaratory relief against the Defendants. The Amended Complaint specifically requests declaratory judgments that the Plaintiffs' constitutional rights were violated in the Sherwood District Court proceedings.

Plaintiffs concede in their Response that the relief they seek could result in "new hearings to consider a Plaintiff's ability to pay the fines, fees, and court costs assessed by the Sherwood District Court and, if and when a Plaintiff is found unable to pay, require further proceedings consistent with the finding." Plaintiffs' Response in Opposition to Motion for Judgment on the Pleadings by Pulaski County, Arkansas, pp. 14-15. Such hearings are only necessary if prior proceedings were unconstitutional. For example, if a court determines in one of these hearings that the individual is indigent and cannot afford the fines assessed, the court may vacate the previous sentence.

Plaintiffs further assert that "*Balisok* expressly held that state prisoners can use § 1983 to seek prospective relief – the relief sought in this action." They are correct that *Balisok* allowed for prospective injunctive relief. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). That conclusion, however, was based solely on the individual facts of Balisok's case where the plaintiff requested that prison officials date-stamp witness statements at the time received. *Id*. As to this requested relief the court said, "a prayer for *such prospective relief* will not 'necessarily imply' the invalidity of a previous loss of good-time credits, and so may properly be brought under § 1983." *Id.* (emphasis added). This is not a blanket statement that all prospective injunctive relief is allowed. The prospective relief must not imply the invalidity of the lower court's prior conviction or sentence.

Here, as in *Balisok*, the Court must determine if the prospective injunctive relief requested invalidates Plaintiffs' convictions. Plaintiffs ask this Court to permanently enjoin the Defendants from enforcing and carrying out unconstitutional policies and

practices. The policies and practices they allege, among others, are: failure to provide counsel, failure to obtain a knowing and intelligent waiver of counsel, and denial of due process. If this Court finds that the policies and practices are indeed unconstitutional, then it cannot stop at providing only prospective injunctive relief. The convictions obtained pursuant to such unconstitutional policies and practices must be set aside.[3]

Essentially, Plaintiffs ask this Court to review the constitutional *bona fides* of the Defendants' actions in light of Plaintiffs' history in the Sherwood court and use their histories to declare past proceedings unconstitutional and prospectively enjoin any further similar institutional action. A finding that past actions by the Defendants were unconstitutional as to Plaintiffs must necessarily invalidate their convictions. The question here is whether Plaintiffs' claims are barred by *Heck* not whether this Court can grant prospective relief. Without saying as much, Plaintiffs seem to argue that the correct course for this Court is to hold the convictions invalid but not invalidate them except prospectively, certainly to the extent a former conviction might be used to justify a future charge of failure to pay or failure to appear. Only in a lawyer's imagining is this not an invalidation of a prior conviction.

Plaintiffs' claims are equally barred by the *Rooker-Feldman* doctrine, which prevents federal courts from reviewing a state court's final judicial determination. "Under the legislation of Congress, no court of the United States other than this Court

---

[3]There is also a question of whether these Plaintiffs have standing to bring claims for prospective injunctive relief. Upon information and belief, it appears that their cases are no longer in front of Judge Milas H. Hale, III. Some of the charges against the Plaintiffs may also have been dismissed.

[can] entertain a proceeding to reverse or modify the [state court] judgment." *Rooker et al. v. Fidelity Trust Co. et al.*, 263 U.S. 413, 416 (1923).

> In determining whether *Rooker-Feldman* applies in a particular case, a federal court must determine whether the claim before it is "inextricably intertwined" with the claim already decided in the state court. "A claim brought in federal court is inextricably intertwined with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it.'" "Where the district court must hold that the state court was wrong in order to find in favor of the plaintiff, the issues . . . are inextricably intertwined."

*Silverman v. Silverman*, 338 F.3d 886, 893 (8th Cir. 2003) (internal citations omitted).

Plaintiffs argue that they seek only to have the hot check prosecution system declared unconstitutional and that, such a declaration will have no effect on their convictions. The reason Plaintiffs' claims cannot survive a *Rooker-Feldman* challenge are the same reasons they cannot survive a *Heck* challenge – the end result of their success in this litigation would be a finding that they were convicted in the Sherwood court under unconstitutional conditions. The correct avenue for Plaintiffs' challenges was and is an appeal through the Pulaski County Circuit Court where they are entitled to a trial *de novo*.

### III.   Failure to State An Illegal Exaction Claim

Plaintiffs assert that Pulaski County mischaracterizes the illegal exaction claim, stating that the claim is not an illegal tax claim, but rather an illegal spending claim. Plaintiffs maintain that because their claim is one of illegal spending, the Tax Injunction Act and general principles of comity do not apply and their claims should move forward.

Pulaski County recognized in its Motion for Judgment on the Pleadings that the claim was one of illegal spending. Indeed, Pulaski County argued the absurdity of

Plaintiffs' claim as requiring an apportionment of tax monies spent between legal and illegal governmental action and the *reductio ad absurdum* possibility inherent in Plaintiffs' claim that an illegal act by a government official or employee could require a pro rata refund of salary.

The TIA states that district courts "shall not enjoin, suspend or *restrain* the assessment, levy or *collection* of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341 (emphasis added). The TIA bars a claim of illegal taxation in federal court when the state has a remedy available. Plaintiffs' claim that tax monies were illegally spent is, at its core, a claim that the tax that produced those monies was illegal. A tax levied to fund unconstitutional action is illegal. Further, the result and remedy of an illegal tax claim and an illegal spending claim are the same: refund taxes paid to the taxpayers. The United States Supreme Court has prohibited tax suits that would take tax monies from state and local governments. In *Hibbs v. Winn*, 542 U.S. 88, 106 (2004), the Court referenced cases decided pursuant to the TIA, stating, "Like [*California v. Grace Brethren Church*, 457 U.S. 393 (1982)], all of them fall within [TIA's] undisputed compass: All involved plaintiffs who mounted federal litigation to avoid paying state taxes (*or to gain a refund of such taxes*). Federal-court relief, therefore, would have operated to reduce the flow of state tax revenue." (emphasis added). In *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 425 (2010), the Court stated, "The [TIA], we explained, restrain[ed] state taxpayers from instituting federal actions to contest their [own] liability for state taxes,' suits that, if successful would *deplete state coffers*."

(emphasis added). If Plaintiffs are successful here a refund will diminish the County's tax coffers.

Restrictions on a federal court's exercise of jurisdiction over an illegal exaction case are even broader under principles of comity. The general principle of comity prevents claims that will potentially disrupt a state's tax administration. *Levin*, 560 U.S. at 417. Plaintiffs ask this Court to dictate, that is administer, when and how Pulaski County spends its tax revenues. They also ask that the Court take monies from Pulaski County tax coffers and return it to citizens of Pulaski County.[4] In doing this, the Court would step into a supervisory role, even if only briefly, over the use of Pulaski County tax revenue. The general principle of comity prohibits such action.

Plaintiffs further challenge Pulaski County's logical proposition that the illegal exaction claim brought by Plaintiffs cannot be the type of claim contemplated by the Arkansas Constitution, stating that Pulaski County fails to support its assertion with citation or authority. Plaintiffs fail to recognize that citation and authority are not necessary when asserting a logical proposition. The support of the proposition is the logic itself, and logic dictates that Plaintiffs' claim cannot be the type provided for under Arkansas law. Certainly Plaintiffs are aware that lawsuits asserting constitutional violations, whether frivolous or not, are filed practically every day against state and local governments. Arkansas' illegal exaction law was surely not meant to allow allegations of illegal exaction to accompany every lawsuit alleging a constitutional violation. Whether a claim were frivolous or not, local governments would be left to

---

[4]The Plaintiffs assert in their Response that they do not seek money from Pulaski County's tax coffers. Their Amended Complaint proves otherwise as they specifically request a refund of taxes paid to Pulaski County.

second-guess public spending or to not spend tax money for fear of having to refund money because of unforeseen events. Plaintiffs also cite to Arkansas cases that have espoused the breadth of the illegal taxation language in the Arkansas Constitution. None of these cases, however, are the type of illegal exaction case brought by Plaintiffs, which asserts a novel theory – a legal expenditure (funding a court, jail, or prosecuting attorney's office) can be simultaneously illegal.

Plaintiffs are incorrect that they are entitled to a refund of monies spent illegally three years prior to the filing of this suit. The Arkansas Supreme Court was very clear in *Weiss v. Chavers*, 357 Ark. 607, 614 (2004), that "[T]axes paid before the filing of an illegal-exaction complaint are considered to have been voluntarily paid" and cannot be recovered. The *Weiss* Court did not restrict its holding to illegal-exaction complaints based on illegal taxation. The holding applies to all illegal exaction complaints. Indeed, the Court's reasoning applies equally to illegal spending and illegal taxation cases:

> When taxes are paid to a government they are deposited into that government's general revenues and ordinarily are spent within that tax year. However, when the government is put on notice that it may be required to refund those taxes, it can make the appropriate allowance for a possible refund. If we were to allow refunds for taxes voluntarily paid in previous years, it would jeopardize current and future governmental operations because current and future funds might be necessary for the refund.

357 Ark. at 614-615, 184 S.W.3d at 441. Plaintiffs cite to multiple cases to support their conclusion that they are entitled to refunds for three years prior to the institution of this lawsuit: *Parker v. Laws*, 249 Ark. 632, 636-637 (1970); *Ward v. Farrell*, 221 Ark. 363, 366-367 (1952); and *Green v. Jones*, 164 Ark. 118, 122-123 (1924). None of those cases, however, are applicable to the issue of determining damages or refunds in illegal spending cases. The three-year time period referenced in *Parker* and *Ward* was

13

the three-year statute of limitations that governed the timeliness of the lawsuit. In *Ward*, the Court stated, "The three year *statue of limitations* applies here, as contended by appellee." 221 Ark. at 367 (emphasis added). *Green* does not even address the three-year statute of limitations, and it is not clear why the case was cited. If successful on their illegal exaction claim, Plaintiffs may only recover monies spent subsequent to the filing of the instant action.

Furthermore, Plaintiffs' illegal exaction claim fails as a matter of law because the monies allegedly spent illegally by Pulaski County were spent pursuant to state law. In *Sullins v. Central Arkansas Water*, 2015 Ark. 29, *4-5, the Court stated: "First, and foremost, an illegal exaction is an exaction that is either not authorized by law or is contrary to law. *Stromwall v. Van Hoose*, 371 Ark. 267, 265 S.W.3d 93 (2007). Where the expenditure is authorized by statute, no illegal exaction occurs." All of the tax monies spent by Pulaski County were spent pursuant to statute. Arkansas Code Annotated § 16-21-156 requires Arkansas counties to provide funding for "facilities, equipment, supplies, salaries and benefits of existing support staff, and other office expenses for elected prosecuting attorneys and deputy prosecuting attorneys." Arkansas Code Annotated § 16-21-1106 states: "The Pulaski County Quorum Court shall appropriate not less than one hundred eighty-two thousand two hundred fifty dollars ($182,250) in funds for the maintenance and operations account of the Pulaski County Division of the office of the Prosecuting Attorney of the Sixth Judicial District." Expenditures on the Pulaski County Prosecutor's Office are therefore mandated by the state of Arkansas and cannot be the subject of an illegal exaction claim. Arkansas law also requires counties to operate and fund county jails:

- "There shall be erected in each county, at its established seat of justice, a good and sufficient courthouse and jail." Ark. Code Ann. § 14-19-108(a).

- "County sheriffs and other keepers or administrators of jails within the State of Arkansas are responsible for managing the populations and operations of their respective facilities in compliance with the laws of the Arkansas Constitution and within the requirements of the United States Constitution." Ark. Code Ann. § 12-41-503(a).

- "Every person who may be committed to the common jail of the county by lawful authority for any criminal offense or misdemeanor, if he or she shall be convicted, shall pay the expenses in carrying him or her to jail and also for his or her support from the day of his or her initial incarceration for the whole time he or she remains there." Ark. Code Ann. § 12-41-505(a)(1).

- "A person convicted of a felony or a Class A misdemeanor shall be assessed a booking and administration fee of twenty dollars ($20.00). . . . The booking and administration fee assessed under subdivision (b)(1) of this section shall be deposited into a special fund within the county treasury to be used exclusively for the maintenance, operation, and capital expenditures of a county jail or regional detention facility." Ark. Code Ann. § 12-41-505(b)(1) & (3).

Expenditures on PCRDF are mandated by the state of Arkansas and cannot be the subject of an illegal exaction claim.

<u>CONCLUSION</u>

Plaintiffs fail to state claims for which relief can be granted and make allegations over which this Court lacks jurisdiction. Pulaski County is entitled to judgment as a matter of law dismissing all claims in the First Amended Complaint.

**Fuqua Campbell, P.A.**
Attorneys at Law
3700 Cantrell Road, Suite 205
Little Rock, Arkansas 72202
501-374-0200
Attorneys for Pulaski County

By: David M. Fuqua
Ark. Bar No. 80048
E-mail: dfuqua@fc-lawyers.com

**/s/ Patrick Spivey**
By: Patrick Spivey
Ark. Bar No. 2002089
Email: pspivey@fc-lawyers.com

**/s/ Annie Depper**
By: Annie Depper
Ark. Bar No. 2009267
E-mail: adepper@fc-lawyers.com

## CERTIFICATE OF SERVICE

I, David M. Fuqua, hereby certify that I filed the foregoing on the Court's CM/ECF system and served counsel of record on December 8, 2016:

Michael Mosley, Esq. (mmosley@arml.org)

Bettina E. Brownstein, Esq. (bettinabrownstein@gmail.com)

J. Alexander Lawrence, Esq. (alawrence@mofo.com)

Reggie Koch, Esq. (reggie@reggiekoch.com)

Hallie N. Ryan, Esq. (hryan@lawyerscommittee.org)

David M. Fuqua